## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JERRY HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  10 CV 07649 |
| -v- | ) | |
| | ) | Judge Joan Lefkow |
| DOMINIC CAPPELLUTI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF RESPONSE TO DEFENDANTS
## MERMEL, WALLER, PAVLETIC AND LAKE COUNTY'S MEMORANDUM IN
## SUPPORT OF THEIR MOTION TO DISMISS CERTAIN COUNTS OF
## PLAINTIFF'S THIRD AMENDED COMPLAINT

Dated: October 12th, 2011

By:  ___/s/ Kathleen T. Zellner___
Kathleen T. Zellner, attorney No. 6184574,
One of the Attorneys for Plaintiff, Jerry
Hobbs.

Kathleen T. Zellner
Douglas H. Johnson
Anne Z. Nolte
KATHLEEN T. ZELLNER & ASSOCIATES
1901 Butterfield Road
Suite #650
Downers Grove, Illinois 60515
(630) 955-1212

# TABLE OF CONTENTS

LEGAL STANDARD..................................................................................1

ARGUMENT.........................................................................................2

I.    PLAINTIFF'S COERCED CONFESSION CLAIM (COUNT I) IS TIMELY, STATES A VALID CAUSE OF ACTION, AND DEFENDANTS ARE NOT ENTITLED TO PROSECUTORIAL IMMUNITY......................................................................2

    A.    Count I is Timely.......................................................................2

    B.    Count I is Distinct From Counts II and III.............................................2

    C.    Count I States a Proper Claim Against the State's Attorney Defendants...........3

        1.    "Group-pleading," does not constitute grounds for dismissal, nor does the complaint contain "group-pleading."...............................................3

        2.    Count I properly alleges personal involvement on the part of Defendant Prosecutors..................................................................3

    D.    Count I is Not Barred by Defendants' Assertion of Prosecutorial Immunity........4

        1.    Determination of immunity is improper at this stage of litigation............4

        2.    Prosecutors are not entitled to absolute immunity when they act as investigators, rather than advocates............................................5

        3.    Defendant Prosecutors engaged in a number of investigative acts..........6

            a.    Defendants were task force members and engaged in the investigation well before Jerry was arrested..........................7

            b.    Defendants advised law enforcement..............................................8

            c.    Defendants sought corroborative evidence before having probable cause to arrest...............................................................9

            d.    Defendants were complicit in the constitutional violations..........9

            e.    Defendants destroyed exculpatory evidence..........................10

        4.    The cases relied on by Defendants are distinguishable from this Case....10

II.     PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM (COUNT III) IS TIMELY, PROPERLY STATES A CAUSE OF ACTION, AND IS NOT BARRED BY PROSECUTORIAL IMMUNITY....................................................................14

      A.     Count III is Timely...........................................................................14

      B.     Count III States a Claim Against the State's Attorney Defendants..................15

      C.     Count III is Not Barred By Principles of Absolute Prosecutorial Immunity.......15

III.     PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS TIMELY AND STATES A PROPER CAUSE OF ACTION; THE DEFENDANTS ARE EQUITABLY ESTOPPED FROM MAKING A STATUTE OF LIMITATIONS CLAIM AND ARE NOT ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY............................15

      A.     Count IV Is Timely...........................................................................15

      B.     Plaintiff States a Proper Cause of Action for Failure to Intervene.................15

           1.     Defendant Prosecutors are sufficiently named...............................15

           2.     The Complaint properly alleges a failure to intervene.......................16

      C.     Defendants Are Not Entitled to Prosecutorial Immunity............................18

IV.     PLAINTIFF HAS TIMELY AND PROPERLY STATED A CAUSE OF ACTION FOR FEDERAL CONSPIRACY; DEFENDANTS ARE EQUITABLY ESTOPPED FROM CLAIMING STATUE OF LIMITATIONS AND ARE NOT ENTITLED TO ABSOLUTE IMMUNITY........................................................................18

      A.     Count V is Timely............................................................................18

      B.     Plaintiff Has Properly Stated a Cause of Action.....................................18

      C.     § 1985 Subsection Clarification..........................................................19

      D.     Defendants Are Not Entitled to Absolute Immunity.................................20

V.     MALICIOUS PROSECUTION (COUNT VI) .................................................21

VI.     PLAINTIFF HAS PROPERLY PLED AN "ACCESS TO COURTS" CLAIM (COUNT X); DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY, AND THE CLAIM IS NOT BARRED BY QUALIFIED IMMUNITY.................................21

VII.   PLAINTIFF'S STATE LAW CLAIMS AGAINST THE STATE'S ATTORNEY
       DEFENDANTS ARE NOT SUBJECT TO DISMISSAL.................................22

       A.   Defendant Prosecutors Are Not Absolute Immune from Liability for Malicious
            Prosecution (Count XI).................................................................22

       B.   Plaintiff's IIED Claim (Count XII) is Timely and Defendant Prosecutors Are Not
            Absolutely Immune.....................................................................24

            1.   Plaintiff's IIED claim is timely..............................................24

            2.   Defendants are not entitled to absolute immunity.........................24

       C.   Plaintiff's State Law Conspiracy Claim (Count XIII) is Properly Pled and
            Defendants Are Not Entitled to Prosecutorial Immunity...........................24

            1.   Count XIII sufficiently pleads the elements of conspiracy.................24

            2.   Defendants are not entitled to absolute immunity.........................25

       D.   Plaintiff's False-Light Claim Is Not Barred by Absolute Privilege and Adequately
            States a Claim..........................................................................26

            1.   Waller's press conference is not absolutely privileged.....................26

            2.   Waller's statement, "I do not believe law enforcement did anything
                 wrong" is not a constitutionally protected opinion.........................27

VIII.  DEFENDANTS MERMEL, WALLER, AND PAVLETIC ARE NOT ENTITLED TO
       SOVEREIGN IMMUNITY AND ELEVENTH AMENDMENT PROTECTION.........28

            1.   Defendants acted outside the scope of their authority and their actions are
                 not ordinarily within their normal functions of the State...................29

            2.   The cases relied on by Defendants are inapplicable here...................30

IX.    THERE IS NO BASIS FOR DISMISSAL OF THE CLAIMS AGAINST LAKE
       COUNTY...................................................................................31

       A.   Count XVI ("Indemnification")......................................................31

       B.   Count XVII ("Respondeat Superior")...............................................31

       CONCLUSION .............................................................................32

Cases

Abdullahi v. City of Madison,
 423 F.3d 763 (7th Cir. 2005) ..................................................................................... 20

Aboufariss v. City of De Kalb,
 305 Ill. App. 3d 1054, 713 N.E.2d 804 (1999) ............................................... 29, 30

Alvarado v. Litscher,
 267 F.3d 648 (7th Cir. 2001) ........................................................................................ 5

Andrews v. Burge,
 660 F. Supp. 2d 868 (N.D. Ill. 2009) ........................................... 10, 13, 15, 16

Atkinson v. Affronti,
 369 Ill. App. 3d 828 , 861 N.E.2d 251 (2006) ......................................................... 32

Auriemma v. Montgomery,
 860 F.2d 273 (7th Cir. 1988) ........................................................................................ 6

Beaman v. Souk,
 10-CV-1019, 2011 WL 832506 (C.D. Ill. Mar. 3, 2011) .............................. 19, 24, 30

Berger v. United States,
 295 U.S. 78 , 55 S. Ct. 629, 79 L. Ed. 1314 (1935) ............................................... 22

Bridges v. Gilbert,
 557 F.3d 541 (7th Cir. 2009) ..................................................................................... 27

Brooks v. Ross,
 578 F.3d 574(7th Cir. 2009) .......................................................................... 3, 4, 39

Buckley v. Fitzsimmons,
 509 U.S. 259 , 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)................................... passim

Burns v. Reed,
 500 U.S. 478 , 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991) ................................ 7, 10, 11

Byrd v. Brishke,
 466 F.2d 6 (7th Cir. 1972) ................................................................................... 21, 22

Carrillo v. Chambers,
 05 C 0686, 2006 WL 1444890 (N.D. Ill. May 18, 2006) ....................................... 24

Christopher v. Harbury,
 536 U.S. 403 , 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) ..................................... 27

E.E.O.C. v. Concentra Health Services, Inc.,
 496 F.3d 773 (7th Cir. 2007) ................................................................................. 2, 3

Fields v. City of Chicago,
 10 C 1168, 2011 WL 1326231 (N.D. Ill. Apr. 4, 2011) .............................. 37, 38, 40

Forrester v. White,
 484 U.S. 219 , 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)............................................. 7

Fox v. DeSoto,
 489 F.3d 227 (6th Cir. 2007) ..................................................................................... 26

Fox v. Tomczak,
 04 C 7309, 2006 WL 1157466 (N.D. Ill. Apr. 26, 2006) ............................................. 5

Fritz v. Johnston,
 209 Ill. 2d 302, 807 N.E.2d 461 (2004) .................................................................. 31

Gardunio v. Town of Cicero,
 674 F. Supp. 2d 976 (N.D. Ill. 2009) ................................................................ 23, 24

Gibson v. City of Chicago,
    910 F.2d 1510 (7th Cir. 1990) ................................................................ 2

Gordon v. Devine,
    08 C 377, 2008 WL 4594354 (N.D. Ill. Oct. 14, 2008) ...................... 20, 30

Healy v. Vaupel,
    133 Ill. 2d 295, 549 N.E.2d 1240 (1990) ........................................ 35, 36

Hildebrandt v. Illinois Dept. of Natural Res.,
    347 F.3d 1014 (7th Cir. 2003) ............................................................ 4

Horstman v. County of DuPage,
    284 F. Supp. 2d 1125 (N.D. Ill. 2003) ............................................... 29

Houston v. Partee,
    978 F.2d 362 (7th Cir. 1992) ............................................................ 6

Hunt v. Jaglowski,
    926 F.2d 689 (7th Cir. 1991) ................................................. 13, 14, 15

Jackson v. Kane County,
    09 C 4154, 2010 WL 333695 (N.D. Ill. Jan. 26, 2010) ........................ 27

Jinkins v. Lee,
    209 Ill. 2d 320, 807 N.E.2d 411 (2004) .............................................. 35

Johnson v. Dossey,
    515 F.3d 778 (7th Cir. 2008) ............................................................ 8

Johnson v. Saville,
    575 F.3d 656 (7th Cir. 2009) ........................................................... 26

Kalina v. Fletcher,
    522 U.S. 118 , 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997) ...................... 7

Kitchen v. Burge,
    781 F. Supp. 2d 721 (N.D. Ill. 2011) ........................................... 13, 16

Levenstein v. Salafsky,
    164 F.3d 345 (7th Cir. 1998) ............................................................ 6

Masters v. Gilmore,
    663 F. Supp. 2d 1027 (D. Colo. 2009) ............................................... 13

Moriarty v. Greene,
    315 Ill. App. 3d 225, 732 N.E.2d 730 (2000) ..................................... 34

Orange v. Burge,
    04 C 0168, 2005 WL 742641 (N.D. Ill. Mar. 30, 2005) ........................ 12

Ortiz v. Downey,
    561 F.3d 664 (7th Cir. 2009) ........................................................... 27

Parker v. Evans,
    350 F. App'x 77 (7th Cir. 2009) ....................................................... 28

Patterson v. Burge,
    03 C 4433, 2010 WL 3894438 (N.D. Ill. Sept. 27, 2010) ............. 13, 16, 17

Patterson v. Burge,
    328 F. Supp. 2d 878 (N.D. Ill. 2004) ................................................. 17

People v. Cochran,
    313 Ill. 508 , 145 N.E. 207 (1924) ..................................................... 21

Price v. State,
    354 Ill. App. 3d 90, 820 N.E.2d 104 (2004) ....................................... 39

Putman v. Gerloff,
   639 F.2d 415 (8th Cir. 1981) .................................................................................... 22

Redd v. Dougherty,
   578 F. Supp. 2d 1042 (N.D. Ill. 2008) ............................................................... 38, 39

Reiser v. Residential Funding Corp.,
   380 F.3d 1027 (7th Cir. 2004) .................................................................................... 5

Rose v. Hollinger Int'l, Inc.,
   383 Ill. App. 3d 8, 889 N.E.2d 644 (2008) .............................................................. 34

Smith v. Power,
   346 F.3d 740 (7th Cir. 2003) ...................................................................................... 7

Sneed v. Rybicki,
   146 F.3d 478 (7th Cir. 1998) .................................................................................... 28

Solaia Tech., LLC v. Specialty Pub. Co.,
   221 Ill. 2d 558 , 852 N.E.2d 825 (2006) .................................................................. 35

Swick v. Liautaud,
   169 Ill. 2d 504 , 662 N.E.2d 1238 (1996) ................................................................ 28

Taylor-Hudgins v. Spurgeon,
   1:02-CV-1130-LJM-WTL, 2004 WL 828093 (S.D. Ind. Mar. 3, 2004) .............. 24, 25

U.S. Gypsum Co. v. Indiana Gas Co., Inc.,
   350 F.3d 623 (7th Cir. 2003) ...................................................................................... 5

Van Guilder v. Glasgow,
   588 F. Supp. 2d 876 (N.D. Ill. 2008) ....................................................................... 36

Ware v. Carey,
   75 Ill. App. 3d 906, 394 N.E.2d 690 (1979) ............................................................ 21

Welch v. Illinois Supreme Court,
   322 Ill. App. 3d 345, 751 N.E.2d 1187 (2001) .................................................... 36, 37

White v. City of Chicago,
   369 Ill. App. 3d 765, 861 N.E.2d 1083 (2006) ........................................................ 39

Wilkinson v. Ellis,
   484 F. Supp. 1072 .................................................................................................... 22

Williams v. Valtierra,
   00 C 5734, 2001 WL 686782 (N.D. Ill. June 18, 2001) ............................................ 8

Wilson v. Price,
   624 F.3d 389 (7th Cir. 2010) ................................................................................ 2, 14

Yang v. Hardin,
   37 F.3d 282 (7th Cir. 1994) ................................................................................ 20, 21

Yarris v. County of Delaware,
   465 F.3d 129 (3d Cir. 2006) ..................................................................................... 13

Young v. Rogers,
   06 C 6772, 2008 WL 5235366 (N.D. Ill. Dec. 15, 2008) .................................... 38, 39

## Rules

Fed. R. Civ. P. 12(b)(6)........................................................................................... 2, 5

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JERRY HOBBS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 10 C 7649** |
| | ) | |
| DOMENIC CAPPELLUTI, CHARLES SCHLETZ | ) | **Honorable Joan Lefkow** |
| and WILLIAM VALKO, of the Waukegan Police | ) | |
| Department; CITY OF WAUKEGAN; ANDREW | ) | **Magistrate Judge** |
| JONES, of the Vernon Hills Police Department; | ) | **Geraldine Soats Brown** |
| VILLAGE OF VERNON HILLS; KEVIN HARRIS, | ) | |
| of the Zion Police Department; CITY OF ZION; | ) | |
| Lake County State's Attorney MICHAEL WALLER; | ) | |
| Assistant Lake County State's Attorney, MICHAEL | ) | |
| MERMEL; Assistant Lake County State's Attorney | ) | |
| JEFF PAVLETIC; Assistant Lake County State's | ) | |
| Attorney, COUNTY OF LAKE; Laboratory Director | ) | |
| GARTH GLASSBURG, Analyst KELLY | ) | |
| LAWRENCE, NORTHEASTERN ILLINOIS | ) | |
| REGIONAL CRIME LABORATORY and | ) | |
| UNKNOWN POLICE OFFICERS, | ) | |
| | ) | |
|     Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS MERMEL, WALLER, PAVLETIC AND LAKE COUNTY'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS CERTAIN COUNTS OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Now Comes Plaintiff, JERRY HOBBS, by and through his attorneys, Kathleen T. Zellner & Associates, responding in opposition to Defendants MERMEL, WALLER, PAVLETIC AND LAKE COUNTY'S (hereinafter referred to collectively as "Defendants")Rule 12(b)(6) motion to dismiss. In support thereof, Plaintiff states as follows:

### LEGAL STANDARD

At the motion to dismiss stage, courts must "construe the complaint in the light most

favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." Wilson v. Price, 624 F.3d 389, 391 (7th Cir. 2010). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). A complaint is sufficient if it provides "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 12(b)(6). This language imposes "two easy-to-clear hurdles." E.E.O.C. v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint's factual allegations must give the defendant adequate notice of the plaintiff's claim. Id. Second, the complaint must plausibly suggest plaintiff has a right to relief. Id.

## ARGUMENT

I. **PLAINTIFF'S COERCED CONFESSION CLAIM (COUNT I) IS TIMELY, STATES A VALID CAUSE OF ACTION, AND DEFENDANTS ARE NOT ENTITLED TO PROSECUTORIAL IMMUNITY.**

### A. Count I is Timely.

Defendants' contention that Count I is time-barred is without merit. The doctrines of equitable estoppel and equitable tolling excuse any delay in filing suit (*See* Pl.'s Resp. to Law Enforcement Defs.' Mot. to Dismiss, hereafter referred to as "Resp. to Joint Mem.," 4–11), and Count I did not accrue until the date of the *nolle prosequi* on August 4, 2010, which was well within the two year limitations period (*See* Resp. to Joint Mem. 11–16).

### B. Count I is Distinct From Counts II and III.

Defendants' argument that Count I of Jerry's complaint (coerced confession) is duplicative of Counts II and III is without merit. Count I is not duplicative of Counts II and III because it is a distinct claim arising from a separate set of facts (*See* Resp. to Joint Mem. 21–23).

**C.    Count I States a Proper Claim Against the State's Attorney Defendants**

    **1.    "Group-pleading," does not constitute grounds for dismissal, nor does the complaint contain "group-pleading."**

Defendants' assertion that the complaint should be dismissed because of "group pleading" (Mem. in Support of Defs. Waller, Mermel, Pavletic, and Lake County's Mot. to Dismiss, hereinafter referred to as "Prosecutors' Mem." 6) is without merit. First, the primary case relied on by Defendants, Beaman v. Souk, does not state that a complaint must be dismissed due to "group pleading." No. 10-CV-1019, 2011 WL 832506, at *5 (C.D. Ill. March 3, 2011). Instead, the court merely stated that it thought the law should require dismissal. Id. The court cited no authority in support of that proposition, and indeed, did not dismiss the complaint on "group-pleading" grounds. Id.

Further, in Brooks v. Ross, the only other case cited by Defendants in support of this argument, the court held, "[Plaintiff] adequately pleads personal involvement, because he specifies that he is directing this allegation at all of the defendants." Brooks v. Ross, 578 F.3d 574, 582 (7th Cir. 2009), reh'g denied (Oct. 23, 2009). In Plaintiff's complaint, at the beginning of each count, the complaint specifies to which of the defendants the particular count is directed. Additionally, each count reincorporates all the previous allegations in the complaint, which allege acts carried out by each individually named defendant. Thus, the complaint clearly "put[s] the defendants on notice of what exactly they might have done to violate [Jerry's] rights under the Constitution, federal law, or state law." Id. at 582.

    **2.    Count I properly alleges personal involvement on the part of Defendant Prosecutors.**

Defendants quote Hildebrandt v. Illinois Dept. of Natural Res., 347 F.3d 1014 (7th Cir. 2003), for the proposition that a defendant "must have participated directly in the constitutional

violations" to be held liable. (Prosecutors' Mem. 7). In <u>Hildebrant</u>, the Seventh Circuit held that a defendant has personal involvement in unconstitutional conduct if he "kn[ew] about the conduct, facilitat[ed] it, approve[d] it, [and] condone[d] it." <u>Hildebrant</u>, 347 F.3d at 1039. Here, Plaintiff's Third Amended Complaint (hereinafter referred to as "the complaint" and cited as "3d Am. Compl.") clearly alleges all of these: the prosecutors were fully informed of the coercive interrogation and Plaintiff's refusal to cooperate (3d Am. Compl. ¶ 138), advised and coached the officers on how to better perform it (3d Am. Compl. ¶ 138) and then had knowledge of the destruction of evidence of the coercive techniques (3d Am. Compl. ¶¶ 140, 142). Notably, the prosecutors advised the police to threaten Jerry that they would charge his long-time girlfriend and mother of his slain child if he did not cooperate (3d Am. Compl. ¶138). Defendants attempt to diffuse this allegation by stating that "it is not unlawful to seek a confession from a defendant by threatening to prosecute a spouse, *where probable cause exists for the spouse's threatened prosecution*" (Prosecutors' Mem. 7) (emphasis added). There was no probable cause for the prosecution of Jerry's girlfriend. In sum, under the law, the prosecutors were direct participants in the interrogation.

### D.  Count I is Not Barred by Defendants' Assertion of Prosecutorial Immunity.

#### 1.  Determination of immunity is improper at this stage of litigation.

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint does not need to anticipate or attempt to counter affirmative defenses. <u>U.S. Gypsum Co. v. Indiana Gas Co., Inc.</u>, 350 F.3d 623, 626 (7th Cir. 2003). Therefore, the existence of an affirmative defense "is rarely a good reason" to dismiss. <u>Reiser v. Residential Funding Corp.</u>, 380 F.3d 1027, 1030 (7th Cir. 2004). Particularly, because the affirmative defense of official immunity requires a fact-driven inquiry based on a developed record, "dismissal at the pleading stage is inappropriate."

4

<u>Alvarado v. Litscher</u>, 267 F.3d 648, 651 (7th Cir. 2001). Indeed, "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal." <u>Id.</u> at 652 (citations and quotations omitted); <u>see also</u>, e.g., <u>Fox v. Tomczak</u>, 04 C 7309, 2006 WL 1157466, at *5 (N.D. Ill. Apr. 26, 2006)(Darrah, J.) (denying a motion to dismiss even though "some of [defendants'] actions could ultimately be found to be entitled to absolute or qualified immunity"); <u>Levenstein v. Salafsky</u>, 164 F.3d 345 (7th Cir. 1998)(noting that the existence of a disputed fact with respect to immunity requires denial of a motion to dismiss); <u>Patterson v. Burge</u>, 328 F. Supp. 2d 878, 893 (N.D. Ill. 2004)(Gottschall, J.) (holding that dismissal is improper where defendants characterize their conduct differently than the plaintiff). Plaintiff's complaint alleges several instances in which the prosecutors are not entitled to absolute immunity. Therefore, deciding the immunity issue at this stage is improper.

**2. Prosecutors are not entitled to absolute immunity when they act as investigators, rather than advocates.**

Absolute immunity "is of a rare and exceptional character." <u>Auriemma v. Montgomery</u>, 860 F.2d 273, 275 (7th Cir. 1988). Therefore, "there is a presumption against granting government officials absolute immunity." <u>Houston v. Partee</u>, 978 F.2d 362, 368 (7th Cir. 1992). To overcome the presumption, a prosecutor must carry his burden of showing that the application of absolute immunity is justified for his actions. <u>Burns v. Reed</u>, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991). Courts have been instructed to look "to the nature of the function performed, not the identity of the actor" when determining if an official has carried this burden. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)(quoting <u>Forrester v. White</u>, 484 U.S. 219, 229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)). Thus, a "prosecutor is shielded by absolute immunity when he acts as an 'advocate for the State' but not when his acts are investigative and unrelated to the preparation and initiation of judicial

5

proceedings." Smith v. Power, 346 F.3d 740, 742 (7th Cir. 2003).

Courts have held that a prosecutor is not entitled to absolute immunity when he gives advice to police during a criminal investigation, Burns, 500 U.S. at 496; makes statements to the press, Buckley, 509 U.S. at 277; acts as a complaining witness in support of a warrant application, Kalina v. Fletcher, 522 U.S. 118, 132, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997); fabricates or manufactures evidence, Buckley, 509 U.S. at 273; engages in a conspiracy to target a criminal suspect, Johnson v. Dossey, 515 F.3d 778, 783 (7th Cir. 2008); investigates and seeks corroboration for evidence before an arrest, Buckley, 509 U.S. at 273–76; or partakes in coercing a false confession, Patterson, 328 F. Supp. 2d at 892; Williams v. Valtierra, 00 C 5734, 2001 WL 686782, at *2 (N.D. Ill. June 18, 2001)(Kennelly, J.). Key to determining whether a prosecutor acted in the role of an advocate or investigator is the existence of probable cause, for: "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Buckley, 509 U.S. at 274. Because the Defendants never had probable cause to arrest Jerry (3d Am. Compl. ¶¶ 28, 113), they were acting as investigators, not advocates prior to his arrest and are not entitled to absolute immunity.

### 3.  Defendant Prosecutors engaged in a number of investigative acts.

Defendants Mermel, Waller, and Pavletic were, at all relevant times, members of the Lake County Major Crimes Task Force ("task force") that conducted the abusive interrogations of Jerry (3d Am. Compl. ¶¶ 47–49). Defendants Waller and Pavletic arrived at the interrogation site almost eight hours *before* Jerry was arrested (3d Am. Compl. ¶¶ 138, 147). There, they received all the details of Jerry's interrogation (3d Am. Compl. ¶ 138). There was no evidence linking Jerry to the crime (3d Am. Compl. ¶¶ 70, 143, 154). And although he signed a false confession drafted by the officers (3d Am. Compl. ¶ 135), he only did so after extensive coercion

6

(*see* 3d Am. Compl. ¶¶ 79–135), and he repeatedly denied the so-called confession's validity (3d Am. Compl. ¶¶ 137, 138). The police had no written, video, or audio evidence to indicate that the written confession was voluntary (3d Am. Compl. ¶ 138). In other words, there was no probable cause for Jerry's arrest or prosecution (3d Am. Compl. ¶¶ 28, 143).

Recognizing this lack of probable cause, the defendant prosecutors and officers sought corroborative evidence. Specifically, the Defendant prosecutors spent several hours coaching and advising the police officers how to coerce Jerry into giving a confession that would appear voluntary (3d Am. Compl. ¶ 138). They told the officers to threaten that they would prosecute Jerry's family if he did not cooperate and advised the officers to make Jerry read a pre-written confession in front of a video-recorder (3d Am. Compl. ¶ 138). When the first attempt at a video confession resulted in Jerry refusing to confess, at which time a police officer violently assaulted him, the prosecutors were involved with and/or had knowledge of the destruction and suppression of the existence of that video (3d Am. Compl. ¶¶140–142). As explained below, these acts make it clear that Defendants assumed the role of investigators, rather than advocates, and are therefore not entitled to prosecutorial immunity.

### a. Defendants were task force members and engaged in the investigation well before Jerry was arrested.

As stated above, Defendants Mermel, Pavletic, and Waller were, at all relevant times, part of the task force assigned to the investigation of the murders of Krystal Tobias and Laura Hobbs. Both Waller and Pavletic arrived at the interrogation site approximately eight hours before Jerry was arrested (3d Am. Compl. ¶¶ 138, 147). These two facts, in and of themselves, weigh heavily against dismissal on the grounds of prosecutorial immunity, particularly at this stage in the litigation. *See* <u>Andrews v. Burge</u>, 660 F. Supp. 2d 868 (N.D. Ill. 2009)(Zagel, J.) (noting that whether a prosecutor was part of a task force similar to the one here is a fact which

distinguishes claims against prosecutors that are allowed to proceed and those that are not); Buckley, 509 U.S. at 274("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.").

**b.    Defendants advised law enforcement.**

A prosecutor is not entitled to absolute immunity when he gives advice to police during a criminal investigation. *See* Burns, 500 U.S. at 496. Burns v. Reed is directly analogous Supreme Court precedent. There, police interviewed a woman about the murder of her sons. Id. at 481–82. The police officers wanted to use hypnosis as an interrogation technique, but were unsure whether it would be acceptable to do so. Id. at 482. The officers contacted a prosecutor, who advised them that they could proceed with the hypnosis, and they did. Id. The officers then contacted the prosecutor with the information they obtained, and the prosecutor advised them that they "probably" had probable cause to arrest. Id. The Court held that the prosecutor was not entitled to absolute immunity from a § 1983 claim, reasoning:

> [I]t is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice. Ironically, it would mean that the police, who do not ordinarily hold law degrees, would be required to know the clearly established law, but prosecutors would not.

Id. at 495. Here, Defendant Prosecutors arrived at the interrogation site almost eight hours before Jerry was arrested. (3d Am. Compl. ¶¶ 138, 147). At that time, the Complaint clearly alleges that the officers apprised the prosecutors of the details of the interrogation (3d Am. Compl. ¶ 138), and then the prosecutors began advising and coaching the police on how to best continue their investigation (3d Am. Compl. ¶ 138). The prosecutors even advised the officers to threaten Jerry with the prosecution of his girlfriend if he refused to provide a videotaped confession (3d Am. Compl. ¶ 138). Thus, like in Burns, Defendants advised the police during

8

the investigation and are not immune from this § 1983 claim. Indeed, it would be "incongruous" to grant the officers qualified immunity for conducting Jerry's coercive interrogation but to allow the prosecutors to be absolutely immune for advising them during the coercive interrogation.

### c.   Defendants sought corroborative evidence before having probable cause to arrest.

A prosecutor is not entitled to absolute immunity where he seeks corroborative evidence prior to probable cause and an arrest. Buckley, 509 U.S. at 273–76. Here, before Jerry was arrested, the prosecutors sought documentary evidence to corroborate the false confession Jerry signed against his will (3d Am. Compl. ¶ 138). Specifically, they advised and coached the police to obtain a video confession (3d Am. Compl. ¶ 138). These acts occurred before there was probable cause for his arrest and prior to the arrest. Therefore, Defendants Waller and Pavletic are clearly not absolutely immune from liability. See id. at 275(noting that there is "[no] authority that supports an argument that a prosecutor's fabrication of false evidence during the preliminary investigation of an unsolved crime was immune from liability at common law.")

### d.   Defendants were complicit in the constitutional violations.

Orange v. Burge is dispositive precedent from the Northern District of Illinois. Orange v. Burge, 04 C 0168, 2005 WL 742641 (N.D. Ill. Mar. 30, 2005) (Holderman, J.). There, the court held that a prosecutor who is "complicit" in the commission and cover-up of a coerced confession "cannot assert absolute prosecutorial immunity to defeat [a plaintiff's] complaint at [the motion to dismiss] stage in the litigation." Id. at *19. Defendants were complicit in the commission and cover-up of Jerry's coerced confession. They knew the details of the interrogation (3d Am. Compl. ¶ 138). They personally watched the abusive techniques by videotape (3d Am. Compl. ¶ 142). And they actually told the officers what type of threat to use in their interrogation (3d Am. Compl. ¶ 138). Therefore, the Complaint provides no basis for the

9

Defendants to be cloaked with absolute immunity.

### e. Defendants destroyed exculpatory evidence.

In Yarris v. County of Delaware, the United States Court of Appeals for the Third Circuit stated that "destroying exculpatory evidence is not related to a prosecutor's prosecutorial function. . . . Accordingly, [prosecutors] are not entitled to absolute immunity from suit for constitutional violations caused by their alleged deliberate destruction of exculpatory evidence." Yarris v. County of Delaware, 465 F.3d 129, 136 (3d Cir. 2006); accord Masters v. Gilmore, 663 F. Supp. 2d 1027, 1039 (D. Colo. 2009)–40 (D. Col. 2009). Here, Defendants Waller and Pavletic took part in and had knowledge of the destruction of a highly exculpatory video (3d Am. Compl. ¶¶ 140, 142). Therefore, they are not entitled to absolute immunity.

### 4. The cases relied on by Defendants are distinguishable from this case.

In their Memorandum in Support of their Motion to Dismiss, Defendants rely on Hunt v. Jaglowski, 926 F.2d 689 (7th Cir. 1991); Kitchen v. Burge, 781 F. Supp. 2d 721 (N.D. Ill. 2011)(Bucklo, J.); Patterson v. Burge, 03 C 4433, 2010 WL 3894438 (N.D. Ill. Sept. 27, 2010)(Gottschall, J.) (hereinafter referred to as "Patterson II") and Andrews, 660 F. Supp. 2d 868(Zagel, J.) for the proposition that "nothing [the prosecutors] did was both 'investigatory' and 'unrelated to the preparation and initiation of the judicial proceedings'" (Prosecutors' Mem. 10). As a preliminary matter, an investigatory act is itself "unrelated to the preparation of the judicial proceedings," and therefore precludes defendants from being entitled to absolute immunity. See Buckley, 509 U.S. at 273 ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the

10

investigative functions . . . it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'"). Defendants' use of the conjunction "and" between "investigatory" and "unrelated" is misleading. Additionally, the cases cited by Defendants do not support their proposition because they are distinguishable from the instant case.

Defendants first rely on Hunt v. Juglowski. There, the court determined that a prosecutor was absolutely immune and affirmed a motion for a directed verdict in his favor. Hunt, 926 F.2d at 690. The Hunt court based its decision on a fully developed record and was not required to accept the plaintiff's allegations as true. Id. at 693–94 (discussing the testimony of various witnesses and noting that some of the allegations in the complaint were "without support in the record and is thus without merit"). In contrast, in the instant case, the Court must "construe the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." Wilson, 624 F.3d, 391. The procedural posture alone makes *Hunt* inapplicable.

Additionally, in Hunt, the court found that (1) the prosecutor "was not present at the time [the defendant] was arrested," (2) the prosecutor "was not present when [the defendant] claim[ed] he was beaten," and (3) that the prosecutor "was called after [the plaintiff] had confessed and the police were seeking review of and approval or disapproval of the charges [the police officers] were detaining him on." Hunt, 926 F.2d at 693. Here, by contrast, (1) defendants Pavletic and Waller arrived at the interrogation site approximately eight hours before Jerry was arrested (3d Am. Compl. ¶¶ 138, 147), (2) the Complaint clearly alleges that defendants Pavletic and Waller were at the interrogation site during abusive interrogations (3d Am. Compl. ¶¶ 138–142), (3) Pavletic and Waller were well aware of the abusive techniques that

11

had been used throughout the interrogation (3d Am. Compl. ¶ 138), and (4) that Pavletic and Waller actually watched and listened to interrogations where Defendant Law Enforcement agents threatened and physically abused Jerry (3d Am. Compl. ¶ 142). The defendant prosecutors took an active investigative role in obtaining a false and coerced confession from Jerry. Rather than merely "review and approve[]" the charges for which Jerry was being detained, Defendant Prosecutors advised and coached the police on how to elicit Jerry's cooperation (3d Am. Compl. ¶ 138). Hunt is therefore distinguishable from this case.

Andrews v. Burge is also distinguishable from this case. There, the court relied on the fact that the prosecutor was *not* "part of a task force co-managed by the Sheriff and the State's Attorney." Andrews, 660 F. Supp. 2d at 878. Defendant Prosecutors Mermel, Waller, and Pavletic, on the other hand, were members of the task force that conducted Jerry's abusive and coercive interrogations (3d Am. Compl. ¶¶ 47–49). Further, in *Andrews* the court emphasized the fact that although the prosecutor was "involved in the formal recordation of a confession," the complaint failed to assert any "plausible allegation that the prosecutor knew or should have known that the confession was coerced by police outside his or her presence." Id. at 877. Here, the complaint clearly alleges that Defendants Pavletic and Waller were well aware that Jerry's confession was coerced by physical and emotional abuse (3d Am. Compl. ¶¶ 138, 142). The facts of Andrews are inapposite to those at bar.

In Kitchen v. Burge, the court made no note of any allegation in the complaint that the prosecutor had coached or advised the police officers how to convince the plaintiff to agree to what they wanted. *See generally,* Kitchen, 781 F. Supp. 2d 721. In fact, the court indicated that where a "prosecutor was alleged to have gone beyond merely taking the plaintiff's statement," he is not absolutely immune from liability. Id. By coaching and advising the police, witnessing

12

police officers abuse Jerry before he was arrested, and taking part in the destruction of a videotape demonstrating Jerry's refusal to admit to the murders, Defendants Pavletic and Waller went well beyond merely "taking the plaintiff's statement." (3d Am. Compl. ¶¶ 138, 140, 142).

Patterson v. Burge (Patterson II) is similarly distinct. First, Patterson II was a decision on a motion for summary judgment. Patterson II, 2010 WL 3894438, at *2. Unlike here, the court was able to make the fact-bound determination of absolute immunity based on a developed record, gathered evidence and at a different procedural stage. Id. Further, Defendants characterize Patterson II as a case where a "state's attorney . . . did not participate in alleged torture and was not present during the interrogation, but . . . later wrote a statement memorializing a confession he believed to be false and illegally coerced" (Prosecutors' Mem. 10). Here, Defendants Waller and Pavletic were at the interrogation site, witnessed police abuse, advised how to continue with the coercive interrogation, and otherwise participated in the investigation for eight hours prior to Jerry's arrest (3d Am. Compl. ¶¶ 138, 140, 142). Thus, the allegations in Jerry's complaint are analogous to those in the complaint in Patterson I, which the court previously held sufficient to survive a motion to dismiss. Patterson, 328 F. Supp. 2d, 893 (holding that, based on the complaint, the prosecutor was not entitled to absolute immunity). The Patterson II court granted summary judgment because the evidentiary record did not support the allegations. Patterson II, 2010 WL 3894438, at *11 ("[T]he *summary judgment evidence* shows that [the prosecutor] was acting in his role as advocate when he drafted Plaintiff's statement." (emphasis added)).  Defendant Prosecutors will have the opportunity, like in Patterson II, to elicit evidence to attempt to disprove the pleadings through discovery and bring a motion for summary judgment if they so chose. But dismissal at this stage is improper.

13

In sum. Defendants "characterize their conduct during and after [Jerry's] interrogation as that of prosecutors interviewing a witness and evaluating evidence presented to them by police officers in preparation for initiating criminal proceedings." However, the complaint alleges that Defendants Waller and Pavletic became part of the investigation well before Jerry was arrested, were complicit with the commission and cover-up of Jerry's coerced confession, advised and coached the police officers on how to coerce Jerry to create a more voluntary appearing confession, took part in the destruction of a videotape that evidenced Jerry's innocence, and played an active role in the investigation as members of the task force (3d Am. Compl. ¶¶ 138, 140, 142). All of these actions occurred without the existence of probable cause for an arrest (3d Am. Compl. ¶¶ 28, 113). In the course of this conduct, the Defendants were not acting in their role as advocates of the state, and as such, it would be an unnatural extension of the law to shield Defendant Prosecutors with absolute immunity and Defendant Police Officers with only qualified immunity for performing the same conduct. Buckley, 509 U.S. at 259("When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.") Defendants' motion to dismiss on the grounds of prosecutorial immunity should be denied.

## II. PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM (COUNT III) IS TIMELY, PROPERLY STATES A CAUSE OF ACTION, AND IS NOT BARRED BY PROSECUTORIAL IMMUNITY.

### A. Count III is Timely

For the same reasons as discussed *supra* in Section I.A., Count III is timely.

### B. Count III States a Claim Against the State's Attorney Defendants

For the same reasons as discussed *supra* in Section I.C., Defendants' "group-pleading" argument is meritless, and Jerry has properly pled a procedural due process claim against

Defendant Prosecutors. The complaint provides sufficient notice to defendants of the conduct for which they are being sued and makes clear that the prosecutors knew about, facilitated, and condoned the constitutional violations, including unjustified violence, *Miranda* violations, and denial of access to legal counsel. Additionally, the complaint provides sufficient notice with regards to Count III as to how the coerced statements were used against Jerry.

### C.    Count III is Not Barred By Principles of Absolute Prosecutorial Immunity.

For the same reasons as discussed *supra* in Section I.D., Defendants are not entitled to absolute prosecutorial immunity while acting as investigators, rather than advocates of the state. Namely, they are not entitled to absolute immunity for being a part of, and complicit with, the coercive interrogation and false confession that resulted in a violation of Jerry's procedural due process.

### III.    PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS TIMELY AND STATES A PROPER CAUSE OF ACTION; THE DEFENDANTS ARE EQUITABLY ESTOPPED FROM MAKING A STATUTE OF LIMITATIONS CLAIM AND ARE NOT ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY

### A.    Count IV Is Timely

For the same reasons discussed *supra* in Section I. A., Count IV is timely.

### B.    Plaintiff States a Proper Cause of Action for Failure to Intervene.

#### 1.    Defendant Prosecutors are sufficiently named.

For the same reasons as discussed *supra* in Section I. C., Defendants' "group-pleading" argument is meritless. Unlike in <u>Beaman v. Souk</u>, Jerry's complaint does "show that a [defendants had] reason to know that a constitutional violation [was] occurring and that [they] had] a reasonable opportunity to intervene." <u>Beaman v. Souk</u>, 10-CV-1019, 2011 WL 832506, at *12 (C.D. Ill. Mar. 3, 2011). The complaint sets forth specific acts by the named defendants; it does not rely on mere conclusions.

## 2. The Complaint properly alleges a failure to intervene.

It is well established that a law enforcement officer who is present and fails to intervene while other officers are infringing the constitutional rights of citizens is liable under § 1983 if that officer (1) had reason to know that any constitutional violation had been committed by a law enforcement official, and (2) had a realistic opportunity to intervene to prevent the harm from occurring. Abdullahi v. City of Madison, 423 F.3d 763 (7th Cir. 2005)(quoting Yang v. Hardin, 37 F.3d 282 (7th Cir. 1994)). A realistic opportunity to intervene exists whenever the defendant could have at least cautioned the officer to stop. Id. The allegations in the complaint make clear that Defendant Prosecutors were fully aware of the unconstitutional interrogation of Jerry and had a reasonable opportunity to intervene (3d Am. Compl. ¶¶ 138, 140, 142). This point is undisputed. The issue then, is whether the prosecutors may be liable for failing to intervene. The answer is yes.

Although Defendants accurately note that the Seventh Circuit Court of Appeals and the Northern District of Illinois have never held a prosecutor liable for failing to intervene, they present no case indicating that such a claim is precluded. In fact, cases not extending failure to intervene actions to prosecutors have done so because the plaintiffs in those cases did not make an argument to that effect. See Gordon v. Devine, 08 C 377, 2008 WL 4594354, at *17 (N.D. Ill. Oct. 14, 2008)(Aspen, J.) ("[Plaintiff] does not cite any cases from any court recognizing this claim."); Fields v. City of Chicago, 10 C 1168, 2011 WL 1326231, at *11 (N.D. Ill. Apr. 4, 2011) (dismissing a failure to intervene claim against prosecutors because plaintiff failed to argue for such an extension, not because doing so was precluded by law). Plaintiff hereby argues that a prosecutor is liable for failing to intervene when he has a reasonable opportunity to prevent

a citizen's constitutional rights from being encroached by other state actors as was the case for him.

Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972), is "the seminal case in this circuit on the duty of an officer to intervene." Yang, 37 F.3d at 285. In Brishke, the court explained that a failure to intervene claim is premised on the fact that "one who is given a badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." Byrd, 466 F.2d at 11. Prosecutors are the "leader[s] of the law enforcement community." Ware v. Carey, 75 Ill. App. 3d 906, 394 N.E.2d 690, 696 (1979). It would be paradoxical to impose a duty to intervene on police officer subordinates but not on these "leaders."

Further, prosecutors have ethical duties to ensure that justice is carried out in a constitutional and humane manner. The Illinois Supreme Court has long recognized that a prosecutor has a "duty to safeguard the constitutional rights of the defendant." People v. Cochran, 313 Ill. 508, 526, 145 N.E. 207 (1924); see also Ill. Sup. Ct. R. Prof. Cond. 3.8 (requiring prosecutors to refrain from acts that would violate a defendant's constitutional rights). The United States Supreme Court has likewise held that a prosecutor's duty "is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935). A prosecutor breaches these duties when he sits idly while fully aware that a citizen's constitutional rights are being violated by a fellow state actor during a criminal investigation. See Wilkinson v. Ellis, 484 F. Supp. 1072, 1085–86 (E.D. Penn. 1980) (recognized by Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981)). Such a breach establishes a constitutional violation forming the basis of a § 1983 action, just as it does for police officers. As explained by one court,

> While the prosecutor's function is clearly different from that of a police officer, he is nonetheless a quasi-judicial officer . . . with a duty to seek impartial justice, to see that no innocent man suffers and no guilty man escapes. It is the alleged failure to perform this duty, rather than any failure to supervise the police, that forms the basis for the cause of action.

Id. In other words, a prosecutor, as the leader of law enforcement and protector of justice, "may not ignore the duty imposed by his office and fail to stop other [state actors] who summarily punish a third person in his presence or otherwise within his knowledge." Byrd, 466 F.2d at 11. Because the complaint alleges that Defendant Prosecutors did just that, Plaintiff's complaint states a proper cause of action.

### C.    Defendants Are Not Entitled to Prosecutorial Immunity.

For the same reasons discussed *supra* in Section I.D., Defendants are not entitled to absolute prosecutorial immunity. This is particularly true with respect to Count IV, as sitting idly while fellow government officials physically assault and emotionally terrorize an innocent man can not possibly serve any sort of advocative function.

## IV.   PLAINTIFF HAS TIMELY AND PROPERLY STATED A CAUSE OF ACTION FOR FEDERAL CONSPIRACY; DEFENDANTS ARE EQUITABLY ESTOPPED FROM CLAIMING STATUE OF LIMITATIONS AND ARE NOT ENTITLED TO ABSOLUTE IMMUNITY.

### A.    Count V is Timely

For the same reasons discussed *supra* in Section I.A., Count IV is timely.

### B.    Plaintiff Has Properly Stated a Cause of Action.

Defendants again argue that the complaint should be dismissed because of a "group-pleading" deficiency. For the reasons set forth in Section I.C., this argument is without merit. With respect to Count V, Defendants also argue that the "allegations are vague, conclusory and formulaic, and must be dismissed on those bases." To state a cause of action for conspiracy under the Civil Rights Act, a plaintiff generally must allege that: (1) state official and private

individuals reached an understanding to deprive plaintiff of his constitutional rights, and (2) those individuals were willful participants in joint activity with state or its agents. Gardunio v. Town of Cicero, 674 F. Supp. 2d 976, 986 (N.D. Ill. 2009)(Dow, J.). A plaintiff is required "to allege the parties, the general purpose, and the approximate date of the conspiracy." Id. In other words, the complaint must "enable [the defendant] to prepare his defense or for the district court to determine whether the claim was within the ballpark of possibly valid conspiracy claims." Id.

The individually named Defendant Prosecutors worked with the Defendant Police Officers to obtain a false confession on videotape in deprivation of his Fifth and Fourteenth Amendment rights. The Plaintiff has also alleged that the conspiracy began on May 9, 2005 and continues to the present. These allegations are distinct from those in the cases cited by Defendants. In Beaman, for example, the complaint made "no assertion of what acts were taken or what agreements were made." Beaman, 2011 WL 832506, at *11. And in *Carillo*, the plaintiff "[did] not set out even a simple conclusory allegation that the Defendants conspired or acted in concert against him. Nor [did he] indicate any approximate time of an alleged conspiracy agreement or even mention the word "conspire" or any of its derivative forms." Carrillo v. Chambers, 05 C 0686, 2006 WL 1444890, at *8 (N.D. Ill. May 18, 2006)(Darrah, J.) Because Jerry's complaint does not suffer from such deficiencies, dismissal is not warranted.

## C.    § 1985 Subsection Clarification

Defendants argue, based on their interpretation of Taylor-Hudgins v. Spurgeon, 1:02-CV-1130-LJM-WTL, 2004 WL 828093 (S.D. Ind. Mar. 3, 2004), that their motion to dismiss should be granted because Jerry "fails to allege under which subsection he brings his § 1985 claim." (Prosecutors' Mem. 14). There are three subsections of § 1985. Subsection one (§ 1985(1)) pertains solely to conspiracies to prevent, intimidate, or threaten an officer from performing his

duties; subsection two (§ 1985(2)) pertains to conspiracies obstructing justice and intimidating a party to a case; and subsection three (§ 1985(3)) pertains solely to conspiracies motivated by race, or other class-based discriminatory animus. Because subsection two is clearly the *only* subsection that could apply to this case, Defendants have adequate notice which subsection the claim is brought under.

Defendants cite one case in support of their argument that this claim should be dismissed due to a failure to identify a subsection: Taylor-Hudgins, 2004 WL 828093, at **2-3. In a parenthetical, Defendants state that the Taylor-Hudgins court dismissed the § 1985 claim because the plaintiff "fail[ed] to plead [a] specific subsection or elements of [a] § 1985 conspiracy." (Prosecutors' Mem. 14). This misstates the holding. However, the plaintiff's failure to plead a subsection had nothing to do with the *Spurgeon* court's decision to dismiss. In fact, the court on its own held that the plaintiff pled a particular subsection because it was "the only § 1985 subsection that could arguably apply in the instant case" Taylor-Hudgins, 2004 WL 828093, at *3, and then continued its analysis under that assumption. There is no principled reason for the Court not to do the same here.

## D.    Defendants Are Not Entitled to Absolute Immunity

For the same reasons discussed *supra* in Section I.D., Defendants are not entitled to absolute prosecutorial immunity. Additionally, Defendants took part in the investigation: they were members of the task force (3d Am. Compl. ¶¶ 47–49) and began advising and coaching the police eight hours prior to Jerry's arrest (3d Am. Compl. ¶¶ 138, 147). As explained above, Jerry's complaint properly alleges that the prosecutors conspired with law enforcement officers to target and prosecute Jerry as the murderer, despite an absence of probable cause. Therefore, under Seventh Circuit precedent, Defendants are not entitled to absolute immunity. Johnson, 515

F.3d at 783 (holding that because the defendant "was part of the investigation of the fire and of a conspiracy that targeted [the plaintiff]," he was only entitled to qualified, rather than absolute, immunity).

## V.     MALICIOUS PROSECUTION (COUNT VI)[1]

Plaintiff has asserted a cause of action for malicious prosecution pursuant to § 1983.  As this Court has held, "a federal 'malicious prosecution claim, grounded in the fourth amendment... the parameters of such a claim are uncertain...' See Johnson v. Saville, 575 F.3d 656, 664 (7th Cir. 2009); citing Fox v. DeSoto, 489 F.3d 227, 237 (6th Cir. 2007)," Luster v. Turner, 2011 WL 1002975 at fn3 (N.D. Ill. March 17, 2011)(Lefkow, J.).  While the parameters of a federal malicious prosecution claim are uncertain, Plaintiff has pled this cause of action for preservation, as stated in the complaint.  Further, the Defendants are not entitled to absolute immunity as set forth in I.D. supra.

## VI.    PLAINTIFF HAS PROPERLY PLED AN "ACCESS TO COURTS" CLAIM (COUNT X); DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY, AND THE CLAIM IS NOT BARRED BY QUALIFIED IMMUNITY.

Plaintiff has properly asserted a cause of action for deprivation of access to courts.  Defendants again raise the argument of "group-pleading", stating that Jerry has failed to set forth what the Defendants each specifically did to deny him access to the courts.  Jerry reincorporates his argument supra that this is not grounds for dismissal of this cause of action. The actions of the defendants clearly led to Jerry being held in isolation, which in turn denied him access to the law library, legal material and/or legal counsel.  (3d Am. Compl. ¶¶ 184-85, 187, 238-39). "The Seventh Circuit has established a two-part test for access to court claims: 'First [Plaintiff] must prove that prison officials failed to assist in the preparation and filing of meaningful legal papers

---

[1] The law enforcement defendants have not moved to dismiss this cause of action.

21

.... Second. [Plaintiff] must show some quantum of detriment caused by the challenged conduct of the state officials.'" Jackson v. Kane County, 09 C 4154, 2010 WL 333695 (N.D. Ill. Jan. 26, 2010)(citations omitted). "An inmate, though, will not have a triable claim unless he supplies evidence that prison authorities prevented him from pursuing a nonfrivolous legal action." See Ortiz v. Downey. 561 F.3d 664, 671 (7th Cir. 2009); Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009); Christopher v. Harbury. 536 U.S. 403, 415-16, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002)." Parker v. Evans, 350 F. App'x 77, 79 (7th Cir. 2009). Plaintiff has adequately pled that the actions of the Defendants, in procuring Plaintiff's false confession, deprived him of his constitutional right of access to the courts (3d Am. Compl. ¶¶ 184-185, 237-239). This deprivation of access to counsel, legal materials and the law library caused a "quantum of detriment" because Jerry was unable to file his § 1983 complaint prior to some of the statutes of limitations expiring.

The Defendants' actions during the interrogation, as set forth in I.D. *supra*, negate an assertion of absolute immunity. Additionally, the Defendants are not entitled to qualified immunity for their actions.

## VII. PLAINTIFF'S STATE LAW CLAIMS AGAINST THE STATE'S ATTORNEY DEFENDANTS ARE NOT SUBJECT TO DISMISSAL.

### A. Defendant Prosecutors Are Not Absolute Immune from Liability for Malicious Prosecution (Count XI).

To state claim for malicious prosecution under Illinois law, plaintiff must allege that (1) he was subjected to judicial proceedings (2) for which there was no probable cause, (3) that defendants instituted or continued proceedings maliciously, (4) that proceedings were terminated in plaintiff's favor, and (5) that there was an injury. Sneed v. Rybicki, 146 F.3d 478, 480-81 (7th Cir. 1998); Swick v. Liautaud, 169 Ill. 2d 504, 512, 662 N.E.2d 1238 (1996). The Defendants do

not contest that the complaint establishes each of these elements. (Prosecutors' Mem. 16).
Instead, the Defendants attempt to shield themselves behind the argument of absolute immunity.
For the same reasons discussed *supra* in Section I.D., Defendants are not entitled to absolute
prosecutorial immunity.

Further, courts have routinely held that, for Illinois state law claims, pleading and
demonstrating actual malice supports the denial of absolute immunity. Aboufariss v. City of De
Kalb, 305 Ill. App. 3d 1054, 713 N.E.2d 804 (1999) (holding that actions taken by public
officials, including state's attorneys, with malicious motives are not entitled to immunity).
Horstman v. County of DuPage, 284 F. Supp. 2d 1125, 1133 (N.D. Ill. 2003)(Bucklo, J.)
(refusing to grant prosecutors immunity for state law claims because plaintiff alleged malice);
Buckley v. County of DuPage, 88 C 1939, 1996 WL 10899, at *6 (N.D. Ill. Jan. 9, 1996) order
clarified, Buckley v. County of DuPage, 88 C 1939, 1996 WL 238908 (N.D. Ill. May 2,
1996)(Coar, J.) (recognizing that absolute immunity is available to prosecutors only when they
act without malicious motives). The Complaint both pleads malice and alleges acts on the part
of Defendants that constitute malice. *See, e.g.* 3d Am. Compl. ¶¶ 16, 21-28, 138, 140, 142, 149-
152, 154, 158-160, 168-172, 176, 185, 244). Therefore, Defendant Prosecutors are not entitled
to absolute immunity. Further, as of the date of the exclusionary DNA results, at the very latest,
the Defendants no longer had any probable cause (Plaintiff contends they never had probable
cause, however). Without this probable cause, the Defendants were acting without jurisdiction.

In Aboufariss the court held that prosecutors are only entitled to public official immunity,
and therefore subject to the malice caveat described above, while also holding prosecutors acting
within the scope of their prosecutorial duties are entitled to the same immunity as the judiciary.
Aboufariss, 713 N.E.2d 804. The court in Gordon, 2008 WL 4594354(Aspen, J.) criticized

23

Aboufariss because it felt that these two statements were inconsistent. Id., at *16. However, there is nothing inconsistent about the rule established in Aboufarris: public official immunity provides the prosecutor with the same absolute immunity as the judiciary, so long as the prosecutor acts within the scope of his prosecutorial duties; when he acts with malice, he goes beyond those duties and is not entitled to the same protection. Aboufariss, 713 N.E.2d 804. Therefore, Aboufariss and its progeny are controlling and should be applied here. The Defendants cite cases contrary to Aboufariss, but provide "no argument that would resolve this apparent discrepancy within the Illinois state courts and the district courts that have interpreted those decisions. For this reason, these Defendants have not carried their burden of showing that they are entitled to immunity on the state law claims." Beaman, 2011 WL 832506. The same reasoning should be applied to this case.

**B.      Plaintiff's IIED Claim (Count XII) is Timely and Defendant Prosecutors Are Not Absolutely Immune.**

**1.      Plaintiff's IIED claim is timely**

Jerry's IIED claim is based on facts parallel to his claim for malicious prosecution, and therefore accrued when state criminal proceedings against him terminated on August 4, 2010, which was well within the limitations period. Plaintiff incorporates his argument in his Response to Joint Mem. at 19-22.

**2.      Defendants are not entitled to absolute immunity.**

For the same reasons discussed *supra* in Section VII.A., Defendants are not entitled to absolute prosecutorial immunity for Plaintiff's IIED claim.

### C. Plaintiff's State Law Conspiracy Claim (Count XIII) is Properly Pled and Defendants Are Not Entitled to Prosecutorial Immunity.

#### 1. Count XIII sufficiently pleads the elements of conspiracy.

In Illinois, the elements of civil conspiracy are: (1) a combination of two or more persons, (2) for purpose of accomplishing by some concerted action either an unlawful purpose or lawful purpose by unlawful means, (3) in furtherance of which one of conspirators committed an overt tortuous or unlawful act. Fritz v. Johnston. 209 Ill. 2d 302, 807 N.E.2d 461 (2004). In Patterson v. Burge, the plaintiff "identifie[d] each individual defendant as part of the conspiracy and allege[d] that they agreed to violate his constitutional and state law rights and committed overt acts in furtherance of this agreement." Patterson. 328 F. Supp. 2d at 903. In Patterson, like here, the plaintiff also enumerated a number of the overt acts throughout the complaint. Id. That court held that this was sufficient pleading, and denied the defendants' motion to dismiss.

Jerry's claim is analogous to Patterson and sufficiently alleges a state law conspiracy claim. Like in Patterson, the complaint identifies the defendants by name and alleges that each agreed to violate Jerry's constitutional and state law rights (3d Am. Compl. ¶¶ 252-256, see heading of Count XIII). The complaint clearly identifies overt acts taken by Defendant Prosecutors in furtherance of this agreement, including but not limited to (1) taking part in, and being complicit with, the coerced interrogation of Jerry, (2) suppressing the first videotaped confession, (3) knowingly presenting fabricated evidence to initiate judicial proceedings, (4) and prolonging Jerry's incarceration in spite of the existence of exclusionary evidence (3d Am. Compl. ¶¶ 138, 140, 142, 176). These "assertions are more than adequate to place defendants on notice of the charges against them." Patterson, 328 F. Supp. 2d at 903. Therefore, the claim is sufficient, and Defendants' motion to dismiss should be denied.

## 2. Defendants are not entitled to absolute immunity

For the same reasons discussed *supra* in Section VII.A., Defendants are not entitled to absolute prosecutorial immunity.

## D. Plaintiff's False-Light Claim Is Not Barred by Absolute Privilege and Adequately States a Claim.

### 1. Waller's press conference is not absolutely privileged

Illinois has adopted Restatement 2d of Torts § 586 as the rule of law regarding whether statements made by attorneys during a judicial proceeding are absolutely privileged. *See* Atkinson v. Affronti, 369 Ill. App. 3d 828, 832, 861 N.E.2d 251 (2006). The Restatement provides, in relevant part:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another *in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of,* a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement 2d of Torts, § 286 (1977) (emphasis added). This provision applies to prosecutors to the same effect. Id., at comment (b). Defendant Waller's statements to the press were not made preliminary to, or in the institution of, or during the course and as part of a judicial proceeding. Instead, the comments were made to the press *after* the *nolle prosequi* was entered and the charges against Jerry dismissed.

Defendants rely on Patterson v. Burge for the argument that prosecutors are absolutely immune for statements made after a convicted person is released. Patterson, 328 F. Supp. 2d at 885-86. In Patterson, then Governor Ryan pardoned four convicted men on the basis of innocence. The defendant prosecutor thereafter "condemned the pardons of the four men, whom he referred to as 'evil' and 'convicted murderers,' as 'outrageous' and 'unconscionable.'" Id. The court found that these comments were absolutely privileged. However, Patterson is

distinguishable in a very significant manner: the prosecutor in <u>Patterson</u> "threatened to challenge the validity of the pardons in court." <u>Id.</u> at 885. Therefore, these comments were made preliminary to a proposed judicial proceeding and properly determined to be absolutely immune. <u>Id.</u> at 902. Defendant Waller, on the other hand, expressed no intent to challenge the *nolle prosequi*. Indeed, it would be quite absurd for him to do so, considering his office instituted it. Therefore, Waller's comments are not absolutely privileged.

### 2.     Waller's statement, "I do not believe law enforcement did anything wrong" is not a constitutionally protected opinion.

A statement is constitutionally protected under the First Amendment only if it cannot be reasonably interpreted as stating actual facts. <u>Id.</u> Only statements capable of being prove true or false are actionable; opinions are not. <u>Moriarty v. Greene</u>, 315 Ill. App. 3d 225, 732 N.E.2d 730, 739 (2000). Courts consider several factors in determining whether a statement is actionable (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is objectively verifiable as true or false, and (3) whether the statement's social context signal that it has factual content. <u>Rose v. Hollinger Int'l, Inc.</u>, 383 Ill. App. 3d 8, 889 N.E.2d 644, 648 (2008). Statements made in the form of insinuation, allusion, irony, question, ridicule, or sarcasm may be considered defamatory as positive assertions of fact. <u>Id.</u>

Defendant Waller's statements are actionable statements of fact because they directly impute Jerry's commission of a criminal offense for which he clearly did not commit and he had already been exonerated by D.N.A., and they were made in an environment that provided precise meaning and specific factual context. *See* <u>Solaia Tech., LLC v. Specialty Pub. Co.</u>, 221 Ill. 2d 558, 584, 852 N.E.2d 825 (2006) (holding that a statement that has "no precise meaning" in the abstract is nonetheless actionable when it is given a precise meaning in context).

## VIII.  DEFENDANTS MERMEL, WALLER, AND PAVLETIC ARE NOT ENTITLED TO SOVEREIGN IMMUNITY AND ELEVENTH AMENDMENT PROTECTION.

The Court of Claims Act and principles of sovereign immunity only apply to claims brought against the State.  Defendants argue that because "state's attorneys are state officials . . . a suit against a state's attorney in Illinois is treated as a suit against the State."  Prosecutors' Mem. at 23.  However, whether an action is against an individual or the state "depends *not on the formal identification of the parties* but rather on the *issues involved* and the relief sought."  Healy v. Vaupel, 549 N.E.2d 1240, 1247 (Ill. 1990) (emphasis added).  A suit brought against a state employee is deemed to be against the state only when there are:

> (1) [N]o allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State."

Jinkins v. Lee, 209 Ill. 2d 320, 807 N.E.2d 411, 418 (2004) (quoting Healy v. Vaupel, 133 Ill. 2d 295, 549 N.E.2d 1240, 1247 (1990)).  A state employee acts beyond the scope of his authority when he acts with malice.  Therefore, a lawsuit alleging malice on the part of a state employee is outside the purview of the Court of Claims' jurisdiction.  Welch v. Illinois Supreme Court, 322 Ill. App. 3d 345, 751 N.E.2d 1187, 1195 (2001)("Malice, if well pleaded, is outside the scope of a State employee's authority and must be brought in the circuit court and not the Court of Claims."); *accord* Van Guilder v. Glasgow, 588 F. Supp. 2d 876, 882 (N.D. Ill. 2008)(Castillo, J.).  Likewise, an action alleging that a state employee acted in violation of statutory or constitutional law is beyond the Court of Claims' jurisdiction.  Healy, 549 N.E.2d at 1247.

28

### 1. Defendants acted outside the scope of their authority and their actions are not ordinarily within their normal functions of the State.

Patterson v. Burge is directly on point with respect to jurisdiction and should be followed here. Patterson, 328 F. Supp. 2d at 887. There, "in his claims for false imprisonment, malicious prosecution, intentional infliction of emotional distress, defamation, and conspiracy, [plaintiff] accuse[d] the [State's Attorney defendants] of acting intentionally and maliciously in violation of Illinois state law." Id. The court held that "these allegations, if proven, would establish that the [State's Attorney defendants] acted outside the scope of their authority as state's attorneys, meaning that the state law charges do not belong in the Court of Claims." Id. Jerry alleges the exact same causes of action against the State's Attorney defendants, with the exception of false imprisonment. And every single count in Jerry's complaint against the State's Attorney defendants alleges that the defendants acted intentionally and maliciously in violation of Illinois State law (3d Am. Compl. ¶¶198, 207, 211, 217, 220, 240, 244, 250, 253). These allegations are supported by specific facts throughout the complaint "that, if proved, would show malicious conduct." Welch v. Illinois Supreme Court, 322 Ill.App.3d 345, 751 N.E.2d 1187 (Ill. App. 2001); see also Patterson, 328 F. Supp. 2d at 888(holding that factual allegations supported malice where plaintiff "name[d] and accuse[d] each of these defendants of committing numerous violations of federal and state law and of conspiring with the other individual defendants to deprive [the plaintiff] of his rights and cause him grievous injuries"). Therefore, like Patterson, this lawsuit is not brought against the State and is thereby outside the jurisdiction of the Court of Claims.

Further, in Fields v. City of Chicago, 10 C 1168, 2011 WL 1326231 (N.D. Ill. Apr. 4, 2011), the court held that "[p]rosecutors act beyond the scope of their authority through wrongful acts when" they "knowingly fabricate[ ] evidence and with[hold] exculpatory evidence." Here,

29

the State's Attorney defendants went even further. Hours before Jerry was arrested, the prosecutors sat idly while police officers coerced an innocent man to confess to a crime he did not commit (3d Am. Compl. ¶¶ 138, 142). In fact, the prosecutors encouraged this coercion and advised the officers on how to do it more effectively (3d Am. Compl. ¶ 138). Thus, the prosecutors knew of, and participated in, the fabrication of a false confession. The prosecutors then withheld this exculpatory evidence throughout the course of Jerry's incarceration (3d Am. Compl. ¶ 154). They also withheld the existence and subsequent destruction of an exculpatory videotape, a destruction they took part in well before Jerry was arrested (3d Am. Compl. ¶¶ 138, 142). Then, during the judicial proceedings, Defendants knowingly withheld and misrepresented exclusionary DNA evidence (3d Am. Compl. ¶¶ 159-164, 169-176). In sum, the State's Attorney defendants knowingly fabricated and withheld exculpatory evidence and acted in violation of Illinois and constitutional law and in a manner not ordinarily within their normal function in the State. *Cf.* Patterson, 328 F. Supp. 2d at 887–888; Fields, 2011 WL 1326231. This lawsuit does not fall within the jurisdiction of the Court of Claims and is properly in this Court pursuant to subject matter and diversity jurisdiction.

## 2. The cases relied on by Defendants are inapplicable here.

The Defendants rely on a number of cases to attempt to support their argument that "the state law claims against the State's Attorney Defendants must be dismissed here and brought in the Illinois Court of Claims." (*See* Prosecutors' Mem. at 23, citing Brooks, 578 F.3d, 580; Redd v. Dougherty, 578 F. Supp. 2d 1042, 1056 (N.D. Ill. 2008)(Castillo, J.); Young v. Rogers, 06 C 6772, 2008 WL 5235366 (N.D. Ill. Dec. 15, 2008)(St. Eve, J.); White v. City of Chicago, 369 Ill. App. 3d 765, 861 N.E.2d 1083 (2006); Price v. State, 354 Ill. App. 3d 90, 820 N.E.2d 104 (2004). However, these cases are clearly distinct from the instant action. In contrast to Brooks,

578 F.3d 574. Jerry has properly alleged that Defendants acted in violation of his Due Process and Fifth Amendment rights in Counts I, III, IV, V, VI, and X (3d Am. Compl. pp 42-47, 55-56); his state-law claims are premised on these constitutional violations. In contrast to Redd v. Daughtery, Jerry does not complain that prosecutors merely "interview[ed] a witness in preparation for grand jury testimony [or] fil[ed] a complaint," both of which are within the scope of the duties of a prosecutor. Redd, 578 F. Supp. 2d at 1056. The court in Young v. Rogers held that the plaintiff "failed to present sufficient evidence raising a genuine issue of material fact that [the defendant prosecutor] violated [the plaintiff's] constitutional rights or exceeded his authority as a Cook County Assistant States' Attorney." Young, 2008 WL 5235366, at *5. Plaintiff has no obligation to set forth such evidence at this stage in the litigation; it is enough that the complaint alleges constitutional violations and acts exceeding state law. As set forth above, the procedural posture of this case distinguishes it from Young. Finally, White v. City of Chicago and Price v. State are not binding on this Court until the Illinois Supreme Court holds otherwise. Fields, 2011 WL 1326231. Even if they were, they are easily distinguishable, as neither dealt with allegations of constitutional violations.

## IX. THERE IS NO BASIS FOR DISMISSAL OF THE CLAIMS AGAINST LAKE COUNTY

### A. Count XVI ("Indemnification").

For all the reasons discussed above, Plaintiff's claims against Defendant Prosecutors are not subject to dismissal. Therefore, indemnification is proper, and Lake County is not entitled to dismissal of count XVI.

### B. Count XVII ("*Respondeat Superior*").

Plaintiff has abandoned his claim of Respondeat Superior against Lake County.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion to dismiss, and any and all other relief deemed just.

Respectfully Submitted

/s/ Kathleen T. Zellner
Kathleen T. Zellner, #6184574

Kathleen T. Zellner & Associates
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
(630)955-1212