## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JERRY HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  10 CV 07649 |
| -v- | ) | |
| | ) | Judge Joan Lefkow |
| DOMINIC CAPPELLUTI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO THE JOINT MEMORANDUM OF ALL LAW ENFORCEMENT DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS CERTAIN COUNTS OF THE THIRD AMENDED COMPLAINT OF THE PLAINTIFF

Dated: October 12th, 2011

By:     /s/ Kathleen T. Zellner
        Kathleen T. Zellner, attorney No. 6184574,
        One of the Attorneys for Plaintiff, Jerry
        Hobbs.

Kathleen T. Zellner
Douglas H. Johnson
Anne Z. Nolte
KATHLEEN T. ZELLNER & ASSOCIATES
1901 Butterfield Road
Suite #650
Downers Grove, Illinois 60515
(630) 955-1212

# TABLE OF CONTENTS

FACTUAL CLARIFICATION................................................................... 2

LEGAL STANDARD.......................................................................... 3

ARGUMENT.................................................................................4

I.  PLAINTIFF'S CLAIMS ARE TIMELY.............................................4

    A.  THE DEFENDANTS ARE EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE OF LIMITATIONS AS A DEFENSE............................4

        1.  The Federal Doctrine of Equitable Estoppel Controls...........................5

    2.  Defendants' Deliberate and Blameworthy Conduct Equitably Estops them from Asserting the Statute of Limitations as a Defense.....................................6

        1.  Additionally, the Doctrines of Equitable Tolling and Equitable Estoppel Combine to Make Jerry's Federal Claims Timely...............................9

        a.  The change in law occasioned by *Wallace v. Kato* equitably tolled Jerry's claim until February 21, 2007. ...................................... 9

        b.  Defendants are equitably estopped from asserting the statute of limitations for the time between February 21, 2007 and August 4, 2010, because they actively prevented Jerry from learning of *Wallace*. ....................... 11

        c.  Alternatively, Jerry's claims were equitably tolled until his release...... 13

    B.  IF JERRY'S OTHER FEDERAL CLAIMS ARE TIME-BARRED, HIS COERCED CONFESSION CLAIM DID NOT ACCRUE UNTIL THE CRIMINAL PROCEEDINGS AGAINST HIM TERMINATED ON AUGUST 4, 2010.................................................................14

        1.  Rules of accrual clarified by the *Wallace* Court.............................15

        2.  Jerry's coerced confession claim is analogous to the tort of malicious prosecution; therefore, it did not accrue until August 4, 2010............. 16

        3.  Defendants' application of *Wallace* is contrary to the precedent of the Seventh Circuit and Northern District of Illinois.............................17

    C.  IF JERRY'S OTHER FEDERAL CLAIMS ARE TIME-BARRED, JERRY'S FOURTH AND FIFTEENTH AMENDMENT CLAIM (COUNT III) FOR THE

COURTROOM USE OF HIS COERCED CONFESSION ON DECEMBER 2, 2008 IS TIMELY ................................................................... 18

II. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) CLAIM ACCRUED WHEN THE STATE CRIMINAL PROCEEDINGS WERE TERMINATED; THEREFORE, IT IS TIMELY ............................................ 21

III. JERRY'S FOURTEENTH AMENDMENT CLAIM (COUNT I) IS NOT DUPLICATIVE OF COUNTS II AND III BECAUSE IT IS A DISTINCT CLAIM ARISING FROM A SEPARATE SET OF FACTS AND WITH SEPARATE INJURIES ............................................................ 24

IV. JERRY'S SUBSTANTIVE DUE PROCESS CLAIM (COUNT II) SHOULD NOT BE DISMISSED BECAUSE IT STANDS ON ITS OWN MERIT, AND NO OTHER CONSTITUTIONAL AMENDMENT OR STATE LAW CLAIM CAN PROVIDE ADEQUATE RELIEF ............................................................ 26

A. THE MANNER IN WHICH DEFENDANTS COERCED JERRY'S CONFESSION CONSTITUTES A SUBSTANTIVE DUE PROCESS VIOLATION BECAUSE IT WAS SHOCKING TO THE CONSCIENCE ........ 26

B. JERRY'S SUBSTANTIVE DUE PROCESS CLAIM STANDS ON ITS OWN BECAUSE NO OTHER CONSTITUTIONAL AMENDMENT PROVIDES ADEQUATE RELIEF FOR THE PARTICULAR CONDUCT ALLEGED ...... 28

C. THE SEVENTH CIRCUIT HAS LONG RECOGNIZED THAT SUBSTANTIVE DUE PROCESS CLAIMS MAY COEXIST WITH THEIR STATE LAW ANALOGS ................................................................ 31

V. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFF'S FIFTH AMENDMENT CLAIM (COUNT III) BECAUSE PLAINTIFF'S RIGHT NOT TO HAVE A COERCED CONFESSION USED AGAINST HIM WAS CLEARLY ESTABLISHED LAW ........................................................ 33

## TABLE OF AUTHORITIES

### Cases

Anderson v. Creighton,
   483 U.S. 635 (1987)...................................................................................... 34

Armstrong v. Squadrito,
   152 F.3d 564 (7th Cir. 1998) ....................................................................... 27

Beaman v. Souk,
   2011 WL 832506 (C.D. Ill. 2011)................................................................ 22

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)....................................................................................... 3

Bergstrom v. McSweeney,
   294 F. Supp. 2d 961 (N.D. Ill. 2003) .......................................................... 21

Bissessur v. Indiana Univ. Bd. Of Trustees,
   2008 WL 4274451 (S.D. Ind. 2008) ...........................................................27

Brooks v. Ross,
   578 F.3d 574 (7th Cir. 2009) .......................................................... 17, 21-23

Brown v. Mississippi,
   297 U.S. 278 (1936)..................................................................................... 34

Bublitz v. Cottley,
   327 F.3d 485 (7th Cir. 2003) ....................................................................... 27

Burnett v. New York Cent. R. Co.,
   380 U.S. 424 (1965)....................................................................................... 4

Cada v. Baxter Healthcare Corp.,
   920 F.2d 446 (7th Cir. 1992) ........................................................................ 5

Carroccia v. Anderson,
   249 F. Supp. 2d 1016 (N.D. Ill. 2003) ........................................................ 21

Chavez v. Martinez,
   538 U.S. 760 (2003)............................................................................... 19, 35

Clay v. Kuhl,
  727 N.E.2d 217 (Ill. 2000) ................................................................... 10, 13

Cook v. City of Chicago,
  2008 WL 1883437 (N.D. Ill. Apr. 25, 2008) ...................................... 6,7

Dickerson v. United States,
  530 U.S. 428 (2000) ........................................................................ 25, 29

Donald v. Cook County Sheriff's Dep't,
  95 F.3d 548 (7th Cir. 1996) .................................................................. 10

Duncan v. Nelson,
  466 F.2d 939 (7th Cir. 1972) ................................................................ 24

E.E.O.C. v. Concentra Health Serv., Inc.,
  496 F.3d 773 (7th Cir. 2007) ................................................................. 3

Feltmeier v. Feltmeier, 798 N.E.2d 263, 278 (Ill. 2003) ......................... 23

Flight Attendants Against UAL Offset (FAAUO) v. C.I.R.,
  165 F.3d 572 (7th Cir. 1999) ................................................................ 12

Gibson v. City of Chicago,
  910 F.2d 1510 (7th Cir.1990) ................................................................. 3

Guenther v. Holmgreen,
  738 F.2d 879 (7th Cir. 1984) .......................................................... 31, 32

Gvozden v. Mill Run Tours, Inc.,
  2011 WL 1118704 (N.D. Ill. Mar. 28, 2011) ................................... 22, 23

Hargroves v. City of New York,
  694 F. Supp. 2d 198 (E.D.N.Y. 2010) .................................................. 11

Harlow v. Fitzgerald,
  457 U.S. 800 (1982) .................................................................. 33, 35, 36

Heard v. Sheahan,
  253 F.3d 316 (7th Cir. 2001) ................................................................ 19

Heck v. Humphrey,
  512 U.S. 477 (1994) ............................................................... 13, 14, 16

Hentosh v. Herman M. Finch Univ. of Health Sciences / The Chicago Med. Sch.,
  167 F.3d 1170 (7th Cir. 1999) .............................................................. 12

<u>Higazy v. Templeton,</u>
    505 F.3d 161 (2d Cir. 2007)................................................................. 36

<u>Hill v. City of Chicago,</u>
    2007 WL 1424211 (N.D. Ill. 2007) ................................................... 18

<u>Hill v. City of Chicago,</u>
    2009 WL 174994 (N.D. Ill. Jan. 26, 2009) ................................. 33, 34

<u>Hoeft v. Anderson,</u>
    2010 WL 2720002 (W.D. Wis. 2010) ...............................................34

<u>Hollander v. Brown,</u>
    457 F.3d 688 (7th Cir. 2006)...............................................................6

<u>Hughes v. McCann,</u>
    521 F.Supp.2d 750 (N.D. Ill. 2007) ................................................. 13

<u>Husband v. Turner,</u>
    2008 WL 2002737 (W.D. Wis. 2008) ............................................... 34

<u>Jay E. Hayden Found. v. First Neighbor Bank, N.A.,</u>
    610 F.3d 382 (7th Cir. 2010) ............................................................ 11

<u>Johnson v. Dossey,</u>
    515 F.3d 778 (7th Cir. 2008) ...........................................................17

<u>Kelly v. City of Chicago,</u>
    4 F.3d 509 (7th Cir. 1993)................................................................ 19

<u>King v. E. St. Louis Sch. Dist. 189,</u>
    496 F.3d 812 (7th Cir. 2007) ............................................................ 27

<u>Kucharski v. Leveille,</u>
    526 F. Supp. 2d 768 (E.D. Mich. 2007).......................................... 11

<u>Lanza v. City of Chicago,</u>
    2009 WL 1543680 (N.D. Ill. 2009) ................................... 19, 20, 29

<u>Lee v. Young,</u>
    533 F.3d 505 (7th Cir.2008) ............................................................ 34

<u>McCullah v. Gadert,</u>
    344 F.3d 655 (7th Cir. 2003) ........................................................... 31

Mitchell v. Donchin,
  286 F.3d 447 (7th Cir. 2002) ............................................................... 12

Order of Railroad Telegraphers v. Railway Express Agency,
  Inc., 321 U.S. 342 .............................................................................. 20, 21

Parish v. City of Elkhart,
  614 F.3d 67 (7th Cir. 2010) ....................................................................23

Parks v. Kownacki,
  737 N.E.2d 287 (Ill. 2000) ...................................................................... 5

Pavilion Hotel Corp. v. Koch,
  2000 WL 51817 (N.D. Ill. Jan. 14, 2000) .............................................. 24

Payne v. State of Ark.,
  356 U.S. 560 (1958)................................................................................ 24

Phelan v. Village of Lyons,
  531 F.3d 484 (7th Cir. 2008) ................................................................. 33

Reiser v. Residential Funding Corp.,
  380 F.3d 1027 (7th Cir. 2004) .............................................................. 3, 4

Rochin v. California,
  342 U.S. 165 (1952)............................................................................ 26, 27

Rodrigue v. Olin Employees Credit Union,
  406 F.3d 434 (7th Cir. 2005) ................................................................. 19

Saucier v. Katz,
  533 U.S. 194 (2001)................................................................................ 33

Scott v. City of Chicago,
  2010 WL 1433313 (N.D. Ill. 2010) .............................................. 25, 29, 30

Sheets v. Indiana Dept. of Corr.,
  656 F. Supp. 733 (S.D. Ind. 1986) ......................................................... 31

Shropshear Corp. Counsel of Chicago,
  275 F.3d 593 (7th Cir. 2001) ........................................................... 5, 6, 12

Smith v. City of Chicago Heights,
  951 F.2d 834 (7th Cir. 1992) ................................................................ 4, 5

Snodderly v. R.U.F.F. Drug Enforcement Task Force,
   239 F.3d 892 (7th Cir. 2001) ............................................................ 17

Sornberger v. City of Knoxville,
   434 F.3d 1006 (7th Cir. 2006) ................................................ 16, 18, 34

Stephan v. Goldinger,
   325 F.3d 874 (7th Cir. 2003) ............................................................ 20

Stoot v. City of Everett,
   582 F.3d 910 (9th Cir. 2009) ............................................................ 35

Swick v. Liautaud,
   662 N.E.2d 1238 (Ill. 1996) ..................................... 16, 17, 31, 32

Tinker v. Beasley,
   429 F.3d 1324 (11th Cir. 2005) ........................................................ 28

Treece v. Village of Naperville,
   903 F.Supp. 1251 (N.D. Ill. 1995) .................................................... 21

United States Gypsum Co. v. Indiana Gas Co.,
   350 F.3d 623 (7th Cir. 2003) .............................................................. 3

Viilo v. Eyre,
   547 F.3d 707 (7th Cir. 2008) .................................................... 33, 35

Walden v. City of Chicago,
   755 F. Supp. 2d 942 (N.D. Ill. 2010) ......................................... 17, 18, 22

Wallace v. Chicago,
   440 F.3d 421 (7th Cir. 2006) ...................................................... 24, 25

Wallace v. City of Zion,
   No. 11 C 2859, 2011 WL 3205495 (N.D. Ill. July 28, 2011) ..................... 22

Wallace v. Kato,
   549 U.S. 384 (2007).......................................................... 9-15; 17, 18

Washington v. Summerville,
   127 F.3d 552 (7th Cir. 1997) .................................................. 10, 12, 15

Weatherly v. Illinois Human Rights Comm'n,
   788 N.E.2d 1175 (Ill. App. Ct. 2003) .......................................... 10, 11

West v. Kalicmi,
 2008 WL 4542987 (N.D. Ill. 2008) ................................................................. 13

Wheeldon v. Monon Corp.,
 946 F.2d 533 (7th Cir. 1991) ........................................................................ 13

Wiley v. Chicago,
 361 F.3d 994 (7th Cir. 2004) ............................................................ 10, 11, 12

Williams v. City of Chicago,
 2011 WL 2637238 (N.D. Ill. 2011) .............................................................. 20

Wilson v. O'Brien,
 2011 WL 759939 (N.D. Ill. 2011) ...................................................... 15, 16, 17

Wilson v. Price,
 624 F.3d 389 (7th Cir. 2010) ......................................................................... 3

Wudtke v. Davel,
 128 F.3d 1057 (7th Cir. 1997) ................................................................ 31, 32

Xechem, Inc., v. Bristol-Meyers Squibb, Co.,
 372 F.3d 899 (7th Cir. 2004) .................................................................... 3, 19

Zinermon v. Burch,
 494 U.S. 113 (1990) ..................................................................................... 31

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 3, 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 7649 |
| | ) | |
| DOMENIC CAPPELLUTI, CHARLES SCHLETZ | ) | Honorable Joan Lefkow |
| and WILLIAM VALKO, of the Waukegan Police | ) | |
| Department; CITY OF WAUKEGAN; ANDREW | ) | Magistrate Judge |
| JONES, of the Vernon Hills Police Department; | ) | Geraldine Soat Brown |
| VILLAGE OF VERNON HILLS; KEVIN HARRIS, | ) | |
| of the Zion Police Department; CITY OF ZION; | ) | |
| Lake County State's Attorney MICHAEL WALLER; | ) | |
| Assistant Lake County State's Attorney, MICHAEL | ) | |
| MERMEL; Assistant Lake County State's Attorney | ) | |
| JEFF PAVLETIC; Assistant Lake County State's | ) | |
| Attorney, COUNTY OF LAKE; Laboratory Director | ) | |
| GARTH GLASSBURG, Analyst KELLY | ) | |
| LAWRENCE, NORTHEASTERN ILLINOIS | ) | |
| REGIONAL CRIME LABORATORY and | ) | |
| UNKNOWN POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO THE JOINT MEMORANDUM OF
ALL LAW ENFORCEMENT DEFENDANTS IN SUPPORT OF THEIR
MOTIONS TO DISMISS CERTAIN COUNTS OF THE
THIRD AMENDED COMPLAINT OF THE PLAINTIFF**

Now Comes Plaintiff, JERRY HOBBS, by and through his attorneys, Kathleen T. Zellner

& Associates, responding in opposition to Defendants KEVIN HARRIS, CITY OF ZION,

DOMENIC CAPPELLUTI, WILLIAM VALKO, CHARLES SCHLETZ, CITY OF

WAUKEGAN, ANDREW JONES, and VILLAGE OF VERNON HILLS' Rule 12(b)(6) motion

to dismiss, as further set forth in their Joint Memorandum of All Law Enforcement Officers in

Support of Their Motions to Dismiss Certain Counts of the Third Amended Complaint of the

Plaintiff (hereinafter referred to as "Joint Memorandum" and cited as "Joint Mem."). In support thereof, Plaintiff states as follows:

## FACTUAL CLARIFICATION

In their Joint Memorandum, Defendants provide a "Summary of Allegations of the Third Amended Complaint" (Joint Mem. at 2–3) and an overview of "Plaintiff's Allegations" with respect to equitable estoppel (Joint Mem. at 14–15). Plaintiff requests that this Court disregard Defendants' summaries and refer exclusively to the Third Amended Complaint ("3d Am. Compl.") for any factual information, as the Defendants have made a number of key omissions or misrepresentations, which are noted and rebutted throughout this Response. Most significantly, Defendants only identified two instances where it is alleged in the Third Amended Complaint that they threatened Jerry during his interrogation (Joint Mem. 14). As described below and in the Complaint, Jerry was threatened no less than seven times. Paragraph 121 of the Complaint in and of itself alleges that Defendant Jones threatened to kill Jerry if he responded to Jones' physical attacks, and that he would return to physically attack Jerry if he did not cooperate with the other officers (3d Am. Compl. ¶ 121). Defendants also threatened to inflict physical harm on Jerry (3d. Am. Compl. ¶¶ 119–120, 124, 128, 134); to subject Jerry to the death penalty (3d Am. Compl. ¶ 140); to arrest his long-time girlfriend and mother of his child (3d Am. Compl. ¶ 139); and to kill Jerry (3d Am. Compl. ¶¶ 106, 121). Defendants told Jerry that he "was going to wish he had never come to Zion" (3d Am. Compl. ¶ 105). Defendants inaccurately state that "Plaintiff does not allege that [defense attorney] Grant's alleged intimidation has anything to do with Plaintiff's alleged fear of filing a lawsuit" (Joint Mem. 15 n.1). On the contrary, the Complaint alleges that Grant told Jerry "it is not safe for you to testify

at the suppression hearing" (3d Am. Compl. ¶ 157). Whether such a statement would lead a person to be fearful of filing suit is a question of fact to be determined by a jury.

## LEGAL STANDARD

At the motion to dismiss stage, courts must "construe the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). A complaint is sufficient if it provides "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 12(b)(6). This language imposes "two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint's factual allegations must give the defendant adequate notice of the plaintiff's claim, and second, the complaint must plausibly suggest plaintiff has a right to relief. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need to anticipate or attempt to counter any affirmative defenses. *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Therefore, the existence of an affirmative defense "is rarely a good reason" to dismiss. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). In fact, "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc., v. Bristol-Meyers Squibb, Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Defendants' affirmative defenses are far from "impenetrable" and require discovery and factual inquiry. Therefore, dismissal is improper at this stage.

## ARGUMENT

I.    **PLAINTIFF'S CLAIMS ARE TIMELY.**

In their Joint Memorandum, Defendants argue, *inter alia*, that all of Jerry's federal claims are barred by the statute of limitations. For the following reasons, Jerry's federal claims are timely: (A) the doctrines of equitable estoppel and equitable tolling excuse any delay in filing suit, (B) Jerry's Fourteenth Amendment coerced confession claim did not accrue until he was released on August 4, 2010, which was well within two years of the filing of this lawsuit; and (C) Jerry's Fifth and Fourteenth Amendment coerced confession claim for the in-court use of his coerced confession on December 2, 2008, was also filed within the two-year limitations period.

### A.    THE DEFENDANTS ARE EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE OF LIMITATIONS AS A DEFENSE.

The statute of limitations exists to provide fairness to defendants. *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 428 (1965). This purpose "is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights." *Id.* Accordingly, federal courts apply two doctrines that permit plaintiffs to file suit past the limitations bar: equitable estoppel and equitable tolling. As explained below, the former precludes defendants whose wrongdoing caused the plaintiff to delay filing suit from asserting the statute of limitations as a defense and the latter excuses a plaintiff's delay in filing suit if it was caused, in part, by "extraordinary circumstances." Determination of whether these doctrines apply to a particular case involves a fact-based inquiry requiring a developed record. *Smith v. City of Chicago Heights*, 951 F.2d 834, 842 (7th Cir. 1992) (explaining that "the scant record" available at the motion to dismiss stage "makes it inappropriate for [a court] to make [an equitable tolling or estoppel] determination"). Therefore, dismissal under 12(b)(6) is improper. *See id.*; *Reiser v. Residential Funding, Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) (holding that determination of

4

"[w]hether the sins of a [defendant] may be used to extend the period available to sue a [plaintiff]" was improper because "[a]ll we have to go on is the complaint"). Further, it is clear that both doctrines apply to make Plaintiff's claims timely.

## 1. The Federal Doctrine of Equitable Estoppel Controls.

The doctrine of equitable estoppel bars a defendant from asserting the statute of limitations if he took "active steps to prevent plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1992). While the doctrine is widely accepted, standards for its application vary between jurisdictions. Compare *Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000) (stating that the Illinois doctrine requires the plaintiff to establish six elements to succeed in an estoppel argument) with *Shropshear Corp. Counsel of Chicago*, 275 F.3d 593, 598 (7th Cir. 2001) (explaining that the federal doctrine does not impose the same requirements as Illinois, and that any deliberate conduct by a defendant that causes the plaintiff to delay filing suit may satisfy the federal standard). Thus, determination of whether the federal or state doctrine of equitable estoppel applies is important, if not dispositive.

The law in the Seventh Circuit is clear: Federal courts adopting a state statute of limitations for a federal claim must "apply the *federal* doctrine of equitable estoppel." *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (1992) (emphasis added); *see also Shropshear*, 275 F.3d at 598 ("Our court has held that in a case such as this, where the federal court is applying a (borrowed) state statute of limitations, the federal doctrine of equitable estoppel, not the state doctrine, controls."). Because Jerry's § 1983 claims adopt the statute of limitations period for personal-injury torts in Illinois, the federal doctrine of equitable estoppel controls. *Smith*, 951 F.2d at 841.

Defendants' reliance on *Hollander v. Brown* for the proposition that the Illinois doctrine of equitable estoppel applies here (Joint Mem. at 15) is misplaced. *Hollander* was a state law claim filed in federal court pursuant to diversity jurisdiction; the court was required by *Erie* to forego federal law and apply the Illinois doctrine of equitable estoppel. 457 F.3d 688, 694 (7th Cir. 2006). Nothing in *Hollander* purports to affect the clear rule that the federal doctrine of equitable estoppel controls in federal actions adopting a state statute of limitations. Therefore, all of Defendants' arguments pertaining to equitable estoppel, which rely *solely* upon Illinois law, do not bear on this Court's decision.

### 2. Defendants' Deliberate and Blameworthy Conduct Equitably Estops them from Asserting the Statute of Limitations as a Defense.

Under the federal doctrine of equitable estoppel, "[a]ny deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline can be the basis for a defense of equitable estoppel." *Shropshear*, 275 F.3d 593 at 597 (7th Cir. 2001). *Cook* is an on point illustration of the doctrine. *Cook v. City of Chicago*, 2008 WL 1883437 (N.D. Ill. Apr. 25, 2008) (Gettleman, J.). There, defendant police officers beat and tortured the plaintiff in front of his family. *Cook*, 2008 WL 1883437, at *1. When the plaintiff tried to call 9-1-1 for help, the defendants further assaulted him and exclaimed, "You don't want to fuck with us, you'll go to prison, you'll lose your job." *Id.* Days later, an investigator went to the plaintiff's home. *Id.* He told the plaintiff that if he pursued a police complaint the defendant officers would cause him to lose his job. *Id.* Plaintiff feared that if he filed a lawsuit the police would arrest him, plant drugs on him, or have him fired. *Id.* As a result, he refrained from filing suit until after the defendants were arrested and placed in prison, by which time the statute of limitations had expired. *Id.* The court estopped the defendants from relying on the statute of limitations because the defendants' and investigator's acts and threats against plaintiff

6

constituted "sufficiently blameworthy conduct for plaintiff to rely on equitable estoppel to avoid the statute of limitations." *Id.* at *2 (citing *Cook v. City of Chicago*, No. 06 C 5930 (N.D. Ill. June 11, 2007)(Gettleman, J.)).

Likewise, Defendants here engaged in deliberate and blameworthy conduct that caused Jerry to delay filing suit. Jerry arrived at the interrogation already exhausted, for he had not slept the preceding 24 hours (3d Am. Compl. ¶ 81). He was completely traumatized upon finding the two mutilated bodies (3d Am. Compl. ¶ 81). He repeatedly broke down crying over the course of the interrogation and was in need of medical care for his own mental health and physical well being (3d Am. Compl. ¶ 81). During the 24-hour interrogation (3d Am. Compl. ¶ 73), Defendant police officers produced graphic photos of the girls' dead bodies showing their multiple wounds and blood-soaked clothing (3d Am. Compl. ¶ 98); shoved a picture of his daughter Laura's battered and stabbed face into Jerry's face (*Id.*); grabbed Jerry by the neck and forced him to look at an additional crime scene photograph, throwing him onto the floor (3d Am. Compl. ¶ 99); forced Jerry to look at a photo of Laura's face that he described as not having a face because it was so mutilated (3d Am. Compl. ¶ 99); made obscene suggestions about the girls' genitalia and underwear (3d Am. Compl. ¶ 105); asked Jerry "did you stab them in the pussy?" (3d Am. Compl. ¶ 105); asked "Did you see their panties?" (105); forced Jerry to take all of his clothes off and wear a see-through paper suit (3d Am. Compl. ¶ 115); told Jerry his family had not even called about him and had abandoned him (3d Am. Compl. ¶ 118); punched Jerry in the side of the head, slamming it against the wall (3d Am. Compl. ¶ 121); told Jerry he'd get "the death penalty for sure" (3d Am. Compl. ¶ 140); destroyed an exculpatory videotape (3d Am. Compl. ¶ 140); accused Jerry of killing the two little girls (3d Am. Compl. ¶ 96); deprived Jerry of sleep although he had arrived at the station exhausted (3d Am. Compl. ¶ 124); and repeatedly beat him

(3d Am. Compl. ¶ 124). The Defendants refused to allow Jerry to consult with an attorney, despite his repeated requests to do so. They told Jerry he had "gotten all the lawyers he was getting" (3d Am. Compl. ¶ 104), and continuously physically and emotionally assaulted him (3d Am. Compl. ¶ 124).

In this context, Defendants made repeated threats to Jerry. They threatened to subject Jerry to the death penalty (3d Am. Compl. ¶ 140); to arrest his long-time girlfriend and mother of his children and have her charged with the murder (3d Am. Compl. ¶ 139); to continue their physical and emotional assaults; and more than once, to shoot Jerry (3d Am. Compl. ¶¶ 106, 121). Defendants also told Jerry that he "was going to wish he had never come to Zion" (3d Am. Compl. ¶ 105). They subsequently reiterated their threats through a third party, Keith Grant, who told Jerry that it "wasn't safe" for him to assert his rights in court (3d Am. Compl. ¶ 185). *Cf. Cook*, 2008 WL 1883437, at *1 (noting that an investigator visited the plaintiff's home to reiterate the threats made by the defendants). Jerry was so intimidated and terrorized by Defendants that he did not even testify at his own suppression hearing (3d Am. Compl. ¶ 157).

Thus, this case is directly analogous to *Cook*. In both cases, by physically and emotionally terrorizing the plaintiff, defendant law enforcement officers clearly exhibited to the plaintiff that they were above the law, capable of truly horrific acts, and willing to go to exceptional lengths to ruin his life. The defendants then threatened the plaintiff with tremendous harm if he did not succumb to their pressure or if he challenged their power. Defendant Schletz suggested Jerry may want to take the detective's gun and then Defendant Schletz would have justification to kill Jerry (3d Am. Compl. ¶ 106); Defendant Cappelluti told Jerry there was another officer outside the room who was not happy about what Jerry had done to the girls and that Jerry would not want him to come in (3d Am. Compl. ¶ 119); that was Defendant Jones,

who then came into the room and slammed Jerry's head into the wall and told Jerry if he responded to the beating, then Jones would kill Jerry (3d Am. Compl. ¶ 121); and as Jones left the room, he threatened Jerry, saying "don't make me have to come back in here" (3d Am. Compl. ¶ 121). Any distinguishable facts reflect the even more horrific and blameworthy nature of Defendants' acts against Jerry. In addition to being threatened with incarceration, Defendants also threatened Jerry's life and his family, which was not the case in *Cook*. Additionally, unlike in *Cook*, Defendants maintained complete domination over Jerry by incarcerating him in isolation, controlling his communications (3d Am. Compl. ¶ 240), and intimidating his attorneys (3d Am. Compl. ¶ 157). No reasonable person would challenge a group with such unchecked power and authority until his safety was assured and he was free from their control. Defendants' threats and actions caused Jerry to delay filing suit until he was free from that control and safely back home in Texas (3d Am. Compl. ¶¶ 121, 185). Therefore, there is no doubt that the Defendants' conduct constituted "sufficiently blameworthy conduct for [Jerry] to rely on equitable estoppel to avoid the statute of limitations." At the very least, resolution requires a more complete factual record.

**1. Additionally, the Doctrines of Equitable Tolling and Equitable Estoppel Combine to Make Jerry's Federal Claims Timely.**

*Wallace v. Kato* changed the law of the Seventh Circuit in such a way that Jerry could not have brought suit until it was decided, thereby equitably tolling his claims until 2007. Defendants are estopped from asserting the statue of limitations because they took active steps to prevent Jerry from knowing he had an cognizable claim once *Wallace* was decided.

**a. The change in law occasioned by *Wallace v. Kato* equitably tolled Jerry's claim until February 21, 2007.**

In contrast to equitable estoppel, federal courts generally rely on state equitable tolling doctrine to cases borrowing state statutes of limitations. *See Wallace v. Kato*, 549 U.S. 384 (2007). In Illinois, equitable tolling excuses a plaintiff's delay in filing suit "if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000); *Weatherly v. Illinois Human Rights Comm'n*, 788 N.E.2d 1175, 1180 (Ill. App. Ct. 2003). The doctrine of equitable tolling permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 557 (7th Cir. 1996).

In *Washington v. Summerville*, the Seventh Circuit held that § 1983 claims, which, "if successful, would necessarily imply the invalidity of a *potential* conviction on the [charge] against [the plaintiff]" do not accrue until the day on which the criminal charge is dismissed. *Washington v. Summerville*, 127 F.3d 552, 555 (7th Cir. 1997) *accord Wiley v. Chicago*, 361 F.3d 994, 996 (7th Cir. 2004). Because there was no physical evidence linking Jerry to the crime, and Jerry's § 1983 claims are challenging the validity of the confession which formed the premise of his arrest and prosecution, this § 1983 lawsuit would have clearly implied the invalidity of his potential conviction for the murders of Laura and Krystal. *See Wiley*, 361 F.3d at 996 (holding that a § 1983 claim asserting that the evidence which formed the premise of the prosecution was fabricated by the police would imply the invalidity of a potential conviction). Thus, under *Wiley* and *Summerville*, Jerry's claims would not have accrued until his release in 2010. *See id.*

The Defendants assert that *Wallace v. Kato* overruled these cases. *Wallace* was not decided until February 21, 2007, almost two years after Jerry was incarcerated. *Summerville* and *Wiley* prohibited Jerry from filing his lawsuit until *Wallace* changed the law. Therefore, *Wallace* was an "extraordinary circumstance" that equitably tolled his § 1983 claims until February 21, 2007. *See Hargroves v. City of New York*, 694 F. Supp. 2d 198, 213 (E.D.N.Y. 2010) (explaining that the intervening change in law created by *Wallace* was "precisely the sort of extraordinary circumstances in which equitable tolling should operate to save Plaintiff's claim"); *accord Kucharski v. Leveille*, 526 F. Supp. 2d 768, 775 (E.D. Mich. 2007).

**b.** **Defendants are equitably estopped from asserting the statute of limitations for the time between February 21, 2007 and August 4, 2010, because they actively prevented Jerry from learning of *Wallace*.**

The Seventh Circuit has held that "[a] defendant who prevents a plaintiff from obtaining information that he needs in order to be able to file a complaint that will withstand dismissal is forbidden, under the rubric of equitable estoppel, to plead the statute of limitations for the period in which the inquiry was thwarted." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010). As explained above, *Wallace* created a cause of action that Jerry did not previously have in the Seventh Circuit. Therefore, Jerry needed to know of *Wallace* in order to act on a claim that would otherwise have been dismissed under prior case precedent. Defendants actively prevented Jerry from learning of the *Wallace* decision until he was released in 2010. Thus, Defendants are precluded from claiming that the statute of limitations bars Jerry's federal claims.

When *Wallace* was decided, Jerry was in the Lake County Jail, like a prisoner of war, where he ended up spending four and a half years in total isolation (3d Am. Compl. ¶ 184). He was never given a cell mate or permitted to interact with any other inmates (3d Am. Compl. ¶

184). There was an internal jail memo issued on May 18, 2005, that instructed the correctional officers to keep Jerry in total isolation due to the high publicity of his case, the seriousness of the allegations against him and to keep lawyers away from him (3d Am. Compl. ¶ 184). Defendants kept Jerry in isolation in order to "keep him away from lawyers" who could inform him, among other things, that the law had changed (3d Am. Compl. ¶ 184). The only attorney Defendants allowed Jerry to speak to was Keith Grant, a public defender who was only assigned to represent Jerry in his criminal trial and actually communicated threats to Jerry from Defendants (3d Am. Compl. ¶ 185). Further, Defendants denied Jerry access to the law library and legal materials such that his ability to know that the law had changed since his incarceration was completely deprived (3d Am. Compl. ¶ 187, 240). Therefore, Defendants are equitably estopped from relying on the statute of limitations.

This case is distinguishable from the Seventh Circuit cases denying equitable estoppel as a defense to the statute of limitations. Defendants did not merely deny liability. *Cf. Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002). Nor did Jerry have the ability to learn of *Wallace* through some other source. *Cf. Flight Attendants Against UAL Offset (FAAUO) v. C.I.R.*, 165 F.3d 572, 577 (7th Cir. 1999). A non-party was not the principle cause of the delay. *Cf. Shropshear v. Corporation Counsel of City of Chicago*, 275 F.3d 593, 597 (7th Cir. 2001). And the facts that form the basis of Jerry's complaint are not the same as those in his equitable estoppel defense. *Cf. Hentosh v. Herman M. Finch Univ. of Health Sciences / The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999). Once Jerry became aware of his injury, Defendants actively prevented him from obtaining information necessary to file a claim that would survive dismissal. There is no doubt that Jerry's reliance on *Summerville* and *Wiley* was appropriate in light of Defendants' affirmative denial of his ability to know of *Wallace*. Thus, Defendants are

equitably estopped from asserting the statute of limitations as a defense. *See Wheeldon v. Monon Corp.*, 946 F.2d 533 (7th Cir. 1991) (holding that a defendant who had control of information necessary for the plaintiff to file a viable suit could not avoid liability by preventing the plaintiff from obtaining the information until after the limitations period had run).

### c. Alternatively, Jerry's claims were equitably tolled until his release.

Defendants and Jerry's jailors precluded Jerry from learning of *Wallace v. Kato* during his incarceration, which "prevented [Jerry] from asserting [his] rights in some extraordinary way." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000). Therefore, his claim was equitably tolled until his release on August 4, 2010. Unlike those cases denying equitable tolling to plaintiffs claiming isolation as the source of delay in filing suit, *see e.g., West v. Kalicmi*, 2008 WL 4542987, *3 (N.D. Ill. 2008)(Der-Yeghiayan, J.); *Hughes v. McCann*, 521 F.Supp.2d 750, 755 (N.D. Ill. 2007)(Bucklo, J.), Jerry was consistently denied access to legal counsel for his civil claim (3d Am. Compl. ¶¶ 184–85), interaction with fellow inmates (3d Am. Compl. ¶ 184), and legal materials for the entirety of his detention (3d Am. Compl. ¶ 240). No amount of due diligence on his part did or could have revealed the accrual of his claim under *Wallace*. Therefore, the doctrine of equitable tolling dictates that Defendants' Motion to Dismiss should be denied.

### B. IF JERRY'S OTHER FEDERAL CLAIMS ARE TIME-BARRED, HIS COERCED CONFESSION CLAIM DID NOT ACCRUE UNTIL THE CRIMINAL PROCEEDINGS AGAINST HIM TERMINATED ON AUGUST 4, 2010.

In their Joint Memorandum, Defendants argue that *Wallace v. Kato* bars Jerry from bringing his Fourteenth Amendment coerced confession claim (Joint Mem. at 4–5, 7–8). Under *Wallace*, accrued § 1983 claims that would necessarily impugn a potential conviction are no longer barred *Heck v. Humphrey* and its progeny. *Wallace*, 549 U.S. at 393–94. Only § 1983

claims that would impugn an actual conviction are so barred. *Id.* at 393. Defendants argue that Jerry's claim accrued on the day the coerced false confession was first used in court, which was over two years before he filed suit, and that *Heck* did not prevent him from bringing suit prior to his release (Joint Mem 7–8). In doing so, Defendants spend an exceptional amount of time explaining *Wallace*'s affect on the "delayed accrual" rule of *Heck* (Joint Mem. 6–14). But they fail to apply the rules clarified by *Wallace* for determining the accrual date of a § 1983 claim. *See Wallace*, 549 U.S. at 387–91. These rules actually dictate that Jerry's coerced confession claim did not accrue until the charges against him were dropped, regardless of the applicability of the *Heck* bar. This is true because Jerry's claim has a common law analogue in malicious prosecution, and that cause of action does not accrue until the criminal charges against a plaintiff are terminated in his favor.

### 1. Rules of accrual clarified by the *Wallace* Court.

In *Wallace*, the Supreme Court clarified the doctrine for determining the accrual date of § 1983 claims. *See Wallace*, 549 U.S. at 387–392. The Court began by noting, as a basic rule, "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* at 388. However, the Court explained, where the plaintiff's § 1983 claim is sufficiently analogous to a common law tort claim, the former is subject to any specific accrual rules designated for the latter. *See id.* at 388–89 (applying the rules of accrual for the § 1983 claim's "closest analogy" in common law tort); *see also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (applying the accrual rules for malicious prosecution to a cause of action because it "provides the closest analogy to claims of the type considered").

In its application of these principles, the Court determined that the petitioner's Fourth Amendment false arrest claim was analogous to the common law cause of action for false

14

imprisonment, reasoning that "[t]he sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process, and the allegations before [the Court arose] from respondents' detention of petitioner without legal process in January 1994." *Id.* at 389. Therefore, any specific accrual rules for the tort of false imprisonment also applied to the § 1983 false-arrest claim. *Id.* The accrual of a false imprisonment tort claim "is subject to a distinctive rule . . . : Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." *Id.* (internal quotations omitted). False imprisonment ends, and a cause of action is complete, "once the victim becomes held pursuant to [legal process]." *Id.* at 389 (emphasis omitted). Thus, the plaintiff's false arrest claim accrued when he appeared before an examining magistrate and was bound over for trial rather than at the point he was arrested without a warrant, which would have been the accrual date had it been based on when he had a "present cause of action." *Id.* at 391.

### 2. Jerry's coerced confession claim is analogous to the tort of malicious prosecution; therefore, it did not accrue until August 4, 2010.

In *Wilson v. O'Brien*, the court applied the accrual principles in *Wallace* to a § 1983 coerced confession claim alleging facts legally indistinguishable from those in Jerry's coerced confession claim. *Wilson v. O'Brien*, 2011 WL 759939 (N.D. Ill. Feb. 25, 2011)(Kocoras, J.). There, plaintiff alleged that:

> (1) Defendants violated [the plaintiff's] Fifth Amendment right to be free from compelled self-incrimination by coercing him to make a confession that was later introduced against him at trial; (2) the use of that statement led to his conviction for a crime that he did not commit; and (3) Defendants' actions proximately caused [the plaintiff] damages for the full duration of his imprisonment.

*Id.* at *7. The court concluded that the plaintiff's claim "targets the wrongful institution of legal process against him and requests damages for the full duration of his imprisonment. In short,

[the plaintiff's] action's closest common-law analogue is not false arrest but malicious prosecution." *Id.*

Count I of Jerry's Third Amended Complaint is a Fourteenth Amendment coerced confession claim. In it, Jerry alleges, explicitly and by reincorporation, that Defendants coerced Jerry to signing and reading a false confession (3d Am. Compl. ¶ 195–96), the confession was used in a criminal case to his detriment (3d Am. Compl. ¶ 197), Defendants created false police reports (3d Am. Compl. ¶ 153) and falsely testified at Jerry's criminal proceedings (3d Am. Compl. ¶ 156), and Defendants' actions caused Jerry to be detained for over five years (3d Am. Compl. ¶¶ 183–84, 197). Jerry's Fourteenth Amendment coerced confession claim does not assert false-arrest in violation of the Fourth Amendment or claim damages for his unlawful detention prior to being held over for legal process. Therefore, like the claim in *Wilson*, Jerry's coerced confession claim "targets the wrongful institution of legal process against him and requests damages for the full duration of his imprisonment." *Wilson*, 2011 WL759939, at *7. It is therefore analogous to the common-law claim of malicious prosecution. *Id.*

A malicious prosecution claim is subject to a specific accrual rule: "the criminal proceedings [against the plaintiff] must have terminated in favor of the accused" before a claim is cognizable. Restatement (Second) of Torts § 658 (1977); *accord Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *see also Swick v. Liautaud*, 662 N.E.2d 1238, 1243 (Ill. 1996). The lack of conviction in this case is therefore irrelevant because Jerry's coerced confession claim *did not exist* until it *accrued upon his release*, making discussion of the *Heck* bar unnecessary. Further, the fact that Jerry's coerced confession was used in pre-trial proceedings rather than at trial, as was the case in *Wilson*, makes no constitutional difference. *See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1024 (7th Cir. 2006). Therefore Jerry's coerced confession claim is directly

16

analogous to the one in *Wilson* and did not accrue until the *nolle prosequi* was entered on August 4, 2010. *See Swick*, 662 N.E.2d at 1243. Seventh Circuit precedent aligns with this conclusion. *See Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ("[C]laims resembling malicious prosecution do not accrue until the prosecution has terminated in the plaintiff's favor." (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896 (7th Cir. 2001)).

### 3. Defendants' application of *Wallace* is contrary to the precedent of the Seventh Circuit and Northern District of Illinois.

Defendants recognize that *Wallace* was a Fourth Amendment false arrest claim, but argue that "there exists no principled reason for not extending its holding to the unconstitutional confession claims being asserted in this case. They are, after all, unconstitutional detention claims, and the detention became unconstitutional when those confessions were used" (Joint Mem. at 7–8). However, "Defendant makes no argument as to why *Wallace* should be extended to cover a Fifth Amendment violation such as in this case, and cites no cases in which a court has done so." *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 956 (N.D. Ill. 2010)(Castillo, J.). Based upon this precedent, the *Wallace* Fourth Amendment accrual rule should not be applied to Plaintiff's Fifth Amendment claim.

In fact, the *Wallace* Court "expressly limited [its] grant of certiorari to [a] Fourth-Amendment false arrest claim." *Wallace*, 549 U.S. at 387 n.1. And Jerry's coerced confession claim does not just challenge the constitutionality of his detention, but also the institution of legal process. *Supra*, at 14–15. Further, the Seventh Circuit has refused to apply *Wallace* to claims not asserting false arrest. *See, e.g., Johnson*, 515 F.3d 778, 782 (7th Cir. 2008) ("[Wallace] deals with the accrual date of a § 1983 claim for false imprisonment which, the court said, was the date on which the defendant appeared before a magistrate and was bound over for trial. A *Brady* claim, on the other hand, is not controlled by *Wallace*."). Thus, contrary to Defendants'

assertions, the Seventh Circuit has *not* "signaled that it would adopt the Defendants' view of the issue" (Joint Mem. at 8). Finally, the Northern District of Illinois has repeatedly held that *Wallace* is limited to Fourth Amendment claims. *See, e.g., Walden*, 755 F. Supp. 2d at 956 (citing *Evans v. Pokson* for the proposition that "discussion of the applicability of *Wallace* to Section 1983 claims has been limited to Fourth Amendment claims"); *Hill v. City of Chicago*, 2007 WL 1424211, *3 (N.D. Ill. 2007)(St. Eve, J.) ("The *Wallace* Court limited its holding to Fourth Amendment claims.").

In sum, the date of accrual for Jerry's coerced confession claim is not controlled by the *Wallace* holding. Instead, "[t]he date of accrual [must be] considered in relation to the nature of the specific constitutional violation alleged." *Walden*, 755 F. Supp. 2d at 955. As described in the preceding section, the accrual date for the specific constitutional claim in Count I is August 4, 2010.

**C.    IF JERRY'S OTHER FEDERAL CLAIMS ARE TIME-BARRED, JERRY'S FOURTH AND FIFTEENTH AMENDMENT CLAIM (COUNT III) FOR THE COURTROOM USE OF HIS COERCED CONFESSION ON DECEMBER 2, 2008 IS TIMELY.**

Defendants assert that Jerry's Fifth and Fourteenth Amendment Due Process claim (Count III) accrued when his coerced false confession was first used to deny bail (Joint Mem. at 5). This simply cannot be true. In *Sornberger*, the Seventh Circuit held that the "courtroom use" of a coerced confession obtained in violation of *Miranda* violates an individual's privilege against self-incrimination and gives rise to § 1983 liability. *Sornberger*, 434 F.3d at 1024. Here, Jerry's coerced and non-Mirandized confession was used against him during criminal proceedings on at least three occasions:  (1) the bond hearing on May 11, 2005 (3d Am. Compl. ¶¶ 149, 151); (2) the hearing on Jerry's Motion to Suppress (3d Am. Compl. ¶ 156); and (3) the hearing on Jerry's Motion for Review of his Bond on December 2, 2008 (3d Am. Compl. ¶ 175).

Jerry remained incarcerated as a result of these uses. Thus, his coerced, false confession was used against him every day for five years to sustain murder charges against him, and prolong his incarceration. It would have been unreasonable for Jerry to bring a claim for each day he was incarcerated as a result of the uses of his coerced confession. Therefore, Count III constitutes a continuing violation and did not accrue until he was released on August 4, 2010. *See, Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (holding that the continuing violation doctrine applies where a defendant's actions, or lack thereof, cause the plaintiff to suffer increased injury every day, reasoning that it would be unreasonable for the plaintiff to bring a claim for the harm caused each day, and unreasonable for courts to hear such repeated claims).

However, *Lanza* held that such a claim does not constitute a continuing violation. *Lanza v. City of Chicago*, 2009 WL 1543680 (N.D. Ill. 2009)(Anderson, J.). If this Court finds *Lanza* persuasive, then Defendants' courtroom uses of the coerced confession must have amounted to a "series of discrete acts, each of which is independently actionable." *See Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005). Because each courtroom use is a distinct constitutional violation and therefore independently actionable, each is subject to its own date of accrual. *See Xechem, Inc. v. Bristol-Meyers Squibb, Co.*, 372 F.3d 899, 902 (7th Cir. 2004) ("Each discrete act with fresh adverse consequences starts its own period of limitations."). A § 1983 claim accrues when the plaintiff "knows or should know that his or her constitutional rights *have been violated.*" *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993) (emphasis added). Jerry's coerced and non-Mirandized confession was used at the hearing on Jerry's Motion for Review of his Bond on December 2, 2008 (3d Am. Compl. ¶ 175). There is no way Jerry could have known of that courtroom use before it occurred. Jerry filed suit less than two years later on December 1, 2010. Therefore, even if this Court refuses to apply the

continuing violation doctrine, his claim for the courtroom use of his coerced confession on December 2, 2008 date is timely.

Any reliance on *Lanza* in this respect would be misplaced because none of the courtroom uses at issue in that case occurred within the limitations period. *See* Plaintiff's Response to Defendants' Motion to Dismiss at 5, *Lanza v. City Of Chicago*, No. 08 C 5103, Dckt. No. 32 (Mar. 23, 2009) ("Even if Plaintiff's coerced confession was not introduced as evidence against him in his court proceeding during the two years before September 2008, his Fifth Amendment claim is not time-barred"). *Williams v. City of Chicago* is also not applicable to the argument that the December 2, 2008 use of Jerry's statement is independently actionable. *Williams v. City of Chicago*, 2011 WL 2637238 (N.D. Ill. 2011)(Dow, J.). There, the plaintiff argued that the last courtroom use was the accrual date for all courtroom uses of the plaintiff's false confession. *Id.* at \*4.

While the argument set forth in *Williams* is persuasive, Plaintiff also argues that, in the event that this Court follows *Williams* (and *Lanza*), the December 2, 2008 use is an independent cause of action from the other two uses, and accrued on December 2, 2008 at the absolute earliest. Therefore, regardless of this Court's ruling on any other statute of limitations issues, Jerry's claim for the harm arising from the December 2, 2008 in-court use of his coerced and non-Mirandized confession must survive Defendants' Motion to Dismiss.

The statute of limitations exists to provide fairness to the defendant. *Stephan v. Goldinger*, 325 F.3d 874, 876 (7th Cir. 2003). "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* (quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49

(1944)). By using Jerry's coerced confession in a criminal proceeding on December 2, 2008, Defendants violated Jerry's constitutional rights less than two years before he filed suit. They had notice of Jerry's claims within the two year limitations period. Therefore, Defendants' motion to dismiss on this basis should be denied.

## II. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) CLAIM ACCRUED WHEN THE STATE CRIMINAL PROCEEDINGS WERE TERMINATED; THEREFORE, IT IS TIMELY.

Courts in this district have "consistently held that IIED claims based on facts parallel to claims for malicious prosecution accrue only when state criminal proceedings are terminated." *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003)(Kennelly, J.); *see also, e.g., Treece v. Village of Naperville*, 903 F.Supp. 1251, 1259 (N.D. Ill. 1995)(Williams, J.), *aff'd*, 213 F.3d 360 (7th Cir. 2000)); *Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 969 (N.D. Ill. 2003) (Castillo, J.); *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 962 (N.D. Ill. 2010)(Castillo, J.); *Gvozden v. Mill Run Tours, Inc.*, 2011 WL 1118704, at *10 (N.D. Ill. Mar. 28, 2011)(Dow, J.). In *Bergstrom*, for example, the court held that plaintiff's IIED claim did not accrue until the criminal charges against him were dropped because it "incorporate[d] the conduct underlying his malicious prosecution claim." *Bergstrom*, 294 F. Supp. 2d at 969. Jerry's IIED claim likewise incorporates all the allegations constituting his malicious prosecution claim. (3d Am. Compl. ¶ 249). Therefore, his IIED claim did not accrue until his criminal proceedings were terminated on August 4, 2010, which is well within the one year statute of limitations period of the Illinois Tort Immunity Act.

In cursory fashion, Defendants rely solely on *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) to claim that Jerry's IIED claim is time-barred (Joint Mem. at 20–21). However, the *Brooks* court did not consider the IIED claim with respect to the malicious prosecution claim.

*Brooks*, 578 F.3d at 578–79 (addressing the statute of limitations argument without reference to malicious prosecution). In fact, the plaintiff did not argue that the court should do so. *See* Reply Brief of Plaintiff-Appellant at 4, *Brooks v. Ross*, No. 08-4286, Dckt No. 14 (Apr. 23, 2009). Therefore, *Brooks* does not affect the rule delaying accrual of an IIED claim that is based on facts parallel to a malicious prosecution claim. *See Gvozden*, 2011 WL 118704, at *10 (refusing to follow a Seventh Circuit case similar to *Brooks* because the court did not "consider[] the intentional infliction of emotional distress claim in the context of a malicious prosecution claim"); *Beaman v. Souk*, No. 10-cv-1019, 2011 WL 832506, *13 (C.D. Ill. Mar. 3, 2011) (McDade, J.)(refusing to follow Seventh Circuit precedent because it "did not consider the IIED claim in the context of a malicious prosecution claim"). Significantly, courts in this district have repeatedly reaffirmed and applied the accrual rule after *Brooks* was decided. *See, e.g., Wallace v. City of Zion*, No. 11 C 2859, 2011 WL 3205495, at *5 (N.D. Ill. July 28, 2011)(St. Eve., J.) ("Because Plaintiffs' IIED claim is based on the facts that support Plaintiffs' malicious prosecution claim, Plaintiffs' IIED claim did not accrue until the charges against them were dismissed."); *Walden*, 755 F. at 962 (stating the plaintiff's IIED claim did not accrue until he was pardoned because "it relates to the underlying claim of malicious prosecution"); *Gvozden*, 2011 WL 1118704, at *10 (same).

*Gvozden* is a post-*Brooks* case directly on point. There, the plaintiff was indicted and imprisoned based on an officer's false reports and grand jury testimony, even though a reasonable investigation by the police would have demonstrated her innocence. *Gvodzen*, 2011 WL 111708, at **1–2. The plaintiff was eventually acquitted of all charges and filed suit shortly thereafter. *Id.* at *2. The defendants claimed that the plaintiff's IIED claim was time-barred because the last overt acts engaged in by law enforcement occurred when officers provided grand

22

jury testimony and signed criminal complaints, which occurred more than one year prior to plaintiff filing suit. *Id.* at *9. This is the same argument put forth by Defendants, and relies on the same Illinois Supreme Court language that was quoted in *Brooks*. *Compare Brooks*, 578 F.3d at 579 (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 263, 278 (Ill. 2003)) *with Gvodzen*, 2011 WL 11708, at *10 (quoting the same *Feltmeier* language). In *Gvodzen*, the court rejected the defendants' argument and held plaintiff's IIED claim to be timely, reasoning that her "allegations of intentional infliction of emotional distress are intertwined with the allegations forming her malicious prosecution claim." *Gvodzen*, 2011 WL 1118704, at *10. The court noted that recent Seventh Circuit precedent supported its decision. *Id.* (citing *Parish v. City of Elkhart*, 614 F.3d 67 (7th Cir. 2010)).

Here, Jerry alleges that Defendants drafted a false confession (3d Am. Compl. ¶¶ 70, 130–135), mentally and physically coerced Jerry into signing and recording the false confession (3d Am. Compl. ¶¶ 70, 79–135) , and gave false testimony at judicial proceedings (3d Am. Compl. ¶ 156), all of which led to Jerry being indicted and imprisoned for over five years even though a reasonable investigation would have revealed Jerry's innocence (*see* 3d Am. Compl. ¶¶ 1–15, 69–70, 245) (describing the complete lack of physical evidence or probable cause, and explaining what a reasonable investigation would have revealed). These facts are alleged as part of Jerry's malicious prosecution and intentional infliction of emotional distress claims (*see* 3d Am. Compl. ¶¶ 244, 249). Therefore, regardless of when the law enforcement Defendants' "last overt act" was, Jerry's "allegations of intentional infliction of emotional distress are intertwined with the allegations forming [his] malicious prosecution claim." *Gvodzen*, 2011 WL 111708, at *10. His IIED claim is therefore timely and should not be dismissed.

### III. JERRY'S FOURTEENTH AMENDMENT CLAIM (COUNT I) IS NOT DUPLICATIVE OF COUNTS II AND III BECAUSE IT IS A DISTINCT CLAIM ARISING FROM A SEPARATE SET OF FACTS AND WITH SEPARATE INJURIES.

In their Memorandum in Support of their Motion to Dismiss, Defendants argue that Jerry's coerced confession claim is duplicative of his "shocks the conscience" and self-incrimination claims. A court may find two counts duplicative if they contain the same factual allegations *and* the same injury. *Pavilion Hotel Corp. v. Koch*, 2000 WL 51817, at *1 (N.D. Ill. Jan. 14, 2000)(Kocoras, J.). However, two counts alleging separate claims are not duplicative, even though their factual allegations may overlap somewhat. *Id.* at *2.

Count I alleges that Defendants used "unjust violence…in an attempt to coerce Jerry to confess to a crime he did not commit." (3d Am. Compl. ¶ 195). Thus, Count I is alleging what courts have long held to be a violation of the Due Process Clause of the Fourteenth Amendment. *E.g.*, *Payne v. State of Ark.*, 356 U.S. 560, 568 (1958).

Count II is not duplicative of Count I because it rests upon a distinct, constitutionally-recognized claim. Count II alleges that Defendants, "through the use of force and the threat of physical violence," forced Jerry to give a false confession "in a manner shocking to the conscience." (3d Am. Compl. ¶ 200). Although Count II, like Count I, alleges a due process violation, that violation sounds in substantive, rather than procedural, due process. Namely, Jerry is complaining of outrageous conduct on the part of Defendants that "shocks the conscience"; while Count I protests the procedural unfairness of Jerry's criminal proceedings due to the introduction of his coerced confession, Count II protests the perverse conduct of the Defendants in and of itself. The United States Supreme Court has long acknowledged that plaintiffs may bring such free-standing due process claims in the face of extraordinary police conduct. *Duncan v. Nelson*, 466 F.2d 939 (7th Cir. 1972); *Wallace v. Chicago*, 440 F.3d 421

(7th Cir. 2006), *aff'd* 549 U.S.. 389 (2007). Although the factual circumstances giving rise to Counts I and II appear somewhat similar, in that they involve both Defendants' coercive interrogation tactics and their conscience-shocking behavior, precedent exists where the court permitted a plaintiff's factual allegations to overlap when pleading distinct legal claims. *Pavilion*, 2000 WL 51817, at *2. Thus, Jerry has pled two separate, constitutionally-recognized claims.

Count III is not duplicative of Count I because it also rests upon a distinct, constitutionally recognized claim that arose out of separate factual circumstances. Count III alleges that Jerry "was not provided any *Miranda* warnings, was denied access to legal counsel . . . . [and] was forced to incriminate himself falsely against his will." (3d Am. Compl. ¶ 204). As opposed to Count I's reference to Defendants' efforts to coerce and use a false confession, Count III points to Defendants' efforts to deprive Jerry of his procedural due process rights by tricking him into signing a *Miranda* waiver (3d Am. Compl. ¶ 79), ignoring his pleas for counsel (3d Am. Compl. ¶¶ 100, 104), and, as a result, forcing Jerry to falsely incriminate himself (3d Am. Compl. ¶¶ 140–41). The United States Supreme Court has recognized that a plaintiff may pursue his coerced confession claim by means of both the Fifth Amendment right against self-incrimination *and* the Due Process Clause of the Fourteenth Amendment. *See Dickerson v. United States*, 530 U.S. 428, 433 (2000). Indeed, there is precedent acknowledging the distinction, finding that such Fifth and Fourteenth Amendment claims are "not identical." *Scott v. City of Chicago*, 2010 WL 1433313, at *6 (N.D. Ill. 2010)(Shadur, J.). Thus, not only has Jerry alleged entirely different factual circumstances from which Counts I and III arise, but has also pled distinct, constitutionally-recognized claims.

Therefore, because Count I is both legally and factually distinct from Counts II and III, this Court should reject Defendants' argument to dismiss it.

## IV. JERRY'S SUBSTANTIVE DUE PROCESS CLAIM (COUNT II) SHOULD NOT BE DISMISSED BECAUSE IT STANDS ON ITS OWN MERIT, AND NO OTHER CONSTITUTIONAL AMENDMENT OR STATE LAW CLAIM CAN PROVIDE ADEQUATE RELIEF[1]

In their Memorandum in Support of their Motion to Dismiss, Defendants argue that Jerry's substantive due process claim is barred because redress for his Constitutional injuries is available under both his procedural due process and his state law claims. (Joint Mem. at 21). However, contrary to Defendants' assertions, Jerry has stated an independent, substantive due process claim for relief because the psychological and physical coercion that he endured "shocks the conscience" in a constitutional sense. Moreover, the courts have previously held that such a claim is entirely distinct from a Fifth Amendment procedural due process claim. Finally, the Seventh Circuit has long recognized that substantive due process claims may indeed coincide with their state law analogs.

### A. THE MANNER IN WHICH DEFENDANTS COERCED JERRY'S CONFESSION CONSTITUTES A SUBSTANTIVE DUE PROCESS VIOLATION BECAUSE IT WAS SHOCKING TO THE CONSCIENCE.

Defendants initially contend that Jerry's substantive due process claim should be dismissed because he has not alleged conduct on the part of Defendants that is "shocking to the conscience." (Joint Mem. at 23). Defendants argue that "lying, threatening, and insulting a suspect" is not shocking, and that their additional use of force falls within the auspices of a Fourth Amendment use of excessive force claim. (Joint Mem. at 23–24).

When a plaintiff asserts that a government official has violated his right to substantive due process, a court must ask whether the official has abused his power in a way that "shocks the

---

[1] Defendants Cappelluti, Valko, Schletz and City of Waukegan did not raise this in their motion, therefore, this section is not directed towards them.

conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952); *Bissessur v. Indiana Univ. Bd. of Trustees*, 2008 WL 4274451, at *7 (S.D. Ind. 2008), *aff'd*, 581 F.3d 599 (7th Cir. 2009). Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to violate the substantive due process rights of a plaintiff. *Bublitz v. Cottley*, 327 F.3d 485, 491 (7th Cir. 2003).

However, inquiry into whether such conduct shocks the conscience in a given case is necessarily a fact-bound inquiry, and should not be considered a question of law. *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007); *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998). Therefore, dismissal of Jerry's substantive due process claim is inappropriate at this time. Jerry has alleged a necessarily fact-bound claim, which should not be passed upon in a motion to dismiss.

Even if this Court were to review Jerry's claim, it will discover that he has pled facts that exceed the threshold for conscience-shocking conduct. A non-exhaustive listing of Jerry's allegations supports his substantive due process action: Defendant Schletz tricked Jerry into signing a *Miranda* waiver form (3d Am. Compl. ¶ 79); Jerry was interrogated for over 24 hours without breaks, not having slept for 48 hours (3d Am. Compl. ¶ 81); before yanking Jerry out of his chair and throwing him to the ground, Defendant Schletz "grabbed his head and forced him to face the photograph" of his mutilated, blood-soaked daughter (3d Am. Compl. ¶¶ 98–99); Jerry's requests for a lawyer were ignored, and "Defendant Schletz told him that he has 'gotten all the lawyers he was getting'" (3d Am. Compl. ¶¶ 100, 104); Jerry was forced to wear a humiliating, "see-through paper suit" throughout most of the interrogation (3d Am. Compl. ¶ 115); after Defendant Cappelluti told Jerry that a fellow officer was "not happy about what happened to the girls," Defendant Jones entered the room and "punched [Jerry] in the side of the

head, slamming his head into the wall" (3d Am. Compl. ¶¶ 119–121); Defendant Jones

threatened to "make up a story that Jerry had attempted to seize his gun" (3d Am. Compl. ¶ 121);

Jerry signed a false confession only after Defendants threaten to charge the mother of his

children, and in order to escape more physical violence (3d Am. Compl. ¶ 135); and, finally,

Defendants Waller and Pavletic knew that Jerry's confession was psychologically and physically

coerced but used it irrespective of both that fact and hard DNA evidence that excluded Jerry as

the murderer (3d Am. Compl. ¶¶ 138, 142, 154).

This is not a case of "lying to, threatening, or insulting a suspect." *Tinker v. Beasley*, 429

F.3d 1324, 1329 (11th Cir. 2005) (finding such conduct to constitute a "close case" implicating

the plaintiff's right to counsel)). This is not "misconduct that would typically fall under the

explicit principles of a Fourth Amendment excessive use of force claim." (Joint Mem. at 24).

The perverse and cruel psychological abuse to which Jerry was subjected was compounded by

Defendants' many threats and acts of violence. Defendants' combined actions exceed any one

state law or constitutional claim, and rise to the level of a separate substantive due process

violation.

Therefore, because Jerry has alleged sufficient facts to establish a substantive due process

claim, and because the merits of that claim should not be reviewed on a motion to dismiss, this

Court should reject Defendants' argument to the contrary.

**B.      JERRY'S SUBSTANTIVE DUE PROCESS CLAIM STANDS ON ITS
         OWN BECAUSE NO OTHER CONSTITUTIONAL AMENDMENT
         PROVIDES ADEQUATE RELIEF FOR THE PARTICULAR CONDUCT
         ALLEGED.**

Defendants next assert that, because Jerry alleged a Fifth Amendment procedural due

process claim, he may not allege a substantive due process claim. In supporting their argument,

Defendants suggest that *Chavez* hinted at the "possibility" of a plaintiff pursuing a substantive

due process claim *only when* that plaintiff has "no corresponding Fifth Amendment claim." (Joint Mem. at 22). However, courts have previously balked at the suggestion that substantive due process and Fifth Amendment claims are mutually exclusive. *Scott*, 2010 WL 1433313, at *5. In *Scott*, the court held that Fifth and Fourteenth Amendment claims have long been recognized as coexistent, and that *Chavez* simply reaffirmed that substantive due process arguments could be heard *even in the absence* of a Fifth Amendment claim. *Id.; see also Chavez v. Martinez*, 538 U.S. 760, 779 (2003) (rejecting the plaintiff's Fifth Amendment claim, but adding that the plaintiff's "charge of outrageous conduct by the police" could "sound in substantive due process"). Thus, the presence of one claim does not necessarily exclude the other. *Scott*, 2010 WL 1433313, at *5; *see also Dickerson v. United States*, 530 U.S. at 433 (2000).

In arguing that both Plaintiff's constitutional claims arise from and seek redress for "identical misconduct," Defendants rely upon *Lanza v. City of Chicago*, which held that the plaintiff was "essentially repackaging his Fifth Amendment claim as a substantive due process violation." *Lanza*, 2009 WL 1543680, at *4. However, *Lanza* is distinguishable from the present facts because the plaintiff in *Lanza* failed to allege "conscience-shocking" conduct that distinguished his substantive due process claim from his other constitutional claims. There, the plaintiff alleged that the police lied to him in order to obtain a signature on his confession, thereby violating his Fourteenth Amendment substantive due process rights. *Id.* at **1–4. Here, Jerry alleges that he was subjected to brutal psychological and physical coercion that caused him to make "false and fabricated admissions in a manner *shocking to the conscience*." (3d Am. Compl. ¶ 200) (emphasis added). Whereas the plaintiff in *Lanza* merely alleged conduct that fit neatly into a Fourth Amendment claim and did not rise to the level of "conscience-shocking"

conduct, Jerry alleges perverse, coercive tactics that easily meet that standard. Thus, the present facts state a distinct claim that stands apart from other constitutional causes of action.

The present case is analogous to *Scott v. City of Chicago*, in which the court was confronted with a conscience-shocking claim one year after *Lanza*. *Scott* involved similar coercive conduct to the present facts. *See id.* at \*\*1–3. The defendants in that case also relied upon *Lanza*, arguing that the plaintiff's "[f]ourteenth Amendment claims do no more than recast his Fifth Amendment claims." *Id.* at \*5. However, in *Scott* the court noted that the defendants' argument ignored the substance of the plaintiff's due process claim: *"that the very tactics used by [the defendants] to extract a confession from [the plaintiff] were a violation of his substantive due process rights."* *Id.* at \*6 (emphasis added). Viewing the substance of the complaint properly, the court held that the Fifth and Fourteenth Amendment claims were distinct. *Id.* The court reasoned,

> *Albright* refused to expand substantive due process to encompass a claim of arrest without probable cause because the Fourth Amendment already provides an adequate remedy for such claims. [The plaintiff's] claims are not analogous. His claim under the Fifth Amendment—that he was compelled to make a self-incriminating statement that was used against him at trial—is not identical to his claim regarding the deprivation of his liberty caused by [the defendants'] allegedly conscience-shocking conduct.

*Id.*

The same is true here. Therefore, because no other constitutional amendment provides adequate relief for the conscience-shocking behavior that Jerry has alleged, his substantive due process claim may stand on its own merit.

### C. THE SEVENTH CIRCUIT HAS LONG RECOGNIZED THAT SUBSTANTIVE DUE PROCESS CLAIMS MAY COEXIST WITH THEIR STATE LAW ANALOGS

Defendants further argue that, because Jerry alleged malicious prosecution and

intentional infliction of emotional distress ("IIED"), he may not also allege a substantive due process claim. Looking to the Seventh Circuit's decision in *Fox*, 600 F.3d 819, Defendants argue that Jerry's substantive due process and state law claims arise from and seek redress for "identical misconduct." (Joint Mem. at 23).

However, a plaintiff may maintain a substantive due process claim *even though there are state tort remedies available*. *Sheets v. Indiana Dept. of Corr.*, 656 F. Supp. 733, 743 (S.D. Ind. 1986) (citing *Guenther v. Holmgreen*, 738 F.2d 879, 882 (7th Cir. 1984)). The Seventh Circuit has acknowledged that it "has never held that § 1983 is available only for cases with no state analog; indeed, [the Seventh Circuit] has specifically underscored that the contrary is true." *McCullah v. Gadert*, 344 F.3d 655, 660 (7th Cir. 2003) (citing *Zinermon v. Burch*, 494 U.S. 113, 124 (1990) (holding that "overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983")). Post-deprivation remedies cannot substitute for something that is itself a substantive constitutional tort. *Wudtke v. Davel*, 128 F.3d 1057, 1062–63 (7th Cir. 1997).

Even if a substantive due process claim could not lie where a state analog provided an adequate remedy, Defendants' argument that Jerry's state law and substantive due process claims arise from "identical misconduct" is inaccurate. First, like Defendants' argument regarding Jerry's other constitutional claims, discussed *supra* at 26–28, their argument regarding malicious prosecution again fails to distinguish between the conscience-shocking behavior that gave rise to Jerry's substantive due process claim and the Fourth Amendment violations that gave rise to Jerry's separate claim of malicious prosecution. In Illinois, in order to state a claim for malicious prosecution, the plaintiff must allege that a suit was brought maliciously and without probable cause, and that the suit was terminated in his favor. *See, e.g., Swick v. Liautaud*, 662 N.E.2d

1238, 1243 (Ill. 1996). Thus, if Jerry were alleging a substantive due process violation that stemmed from an unlawful detention without sufficient probable cause, that violation would fit neatly within the ambit of the Fourth Amendment. *See Guenther v. Holmgreen*, 738 F.2d 879, 888–89 (7th Cir. 1984). However, Jerry's substantive due process claim does not address that same misconduct; Defendants' psychological and physical coercion itself was sufficient to "shock the conscience," giving rise to an independent constitutional claim without any adequate state analog. Thus, Jerry's allegations of malicious prosecution and substantive due process violations arise from different conduct, and are not analog claims.

Second, Defendants' argument regarding IIED fails because IIED is simply one post-deprivation remedy, and not a substitute for a substantive constitutional tort. *See Wudtke v. Davel*, 128 F.3d 1057, 1062–63 (7th Cir. 1997). In *Wudtke*, the plaintiff alleged threats, sexual harassment, and sexual assault on the part of her superior, a state employee. *Id.* at 1059. She brought, *inter alia*, a substantive due process claim and a state law IIED claim. *Id.* at 1060. The Seventh Circuit rejected the defendants' argument that the plaintiff's constitutional claim should be dismissed simply because she had adequate state law remedies, holding that "[p]ostdeprivation remedies . . . cannot substitute for something that was itself a substantive constitutional tort." *Id.* at 1063. Because the plaintiff "alleged an extreme and outrageous violation of her person committed by a state actor, who she asserts was acting under color of state law," her claim rose to the level of an independent constitutional tort. *Id.*

Therefore, because substantive due process and state law claims may be brought simultaneously, Jerry's substantive due process claim may stand on its own merit and Count II should stand.

V.    **DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFF'S FIFTH AMENDMENT CLAIM (COUNT III) BECAUSE PLAINTIFF'S RIGHT NOT TO HAVE A COERCED CONFESSION USED AGAINST HIM WAS CLEARLY ESTABLISHED LAW.**

Qualified immunity protects government officials from civil liability when their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Viilo v. Eyre*, 547 F.3d 707, 709 (7th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts undertake a two-part inquiry in order to determine whether a government official is entitled to qualified immunity. *Phelan v. Village of Lyons*, 531 F.3d 484, 487 (7th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The first part of that inquiry asks whether the facts, viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. *Id.* The second part of that inquiry asks whether the constitutional right was clearly established at the time of the alleged violation. *Id.*

Defendants concede that Jerry has satisfied the first part of the inquiry. (Joint Mem. at 27) ("For the purposes of this motion, it is undisputed that Count III alleges a Fifth Amendment claim."). However, Defendants focus solely upon their failure to provide Jerry with *Miranda* warnings before obtaining his confession, as well as their subsequent use of his *non-Mirandized* confession in a pretrial proceeding. (Joint Mem. at 25–27). In doing so, Defendants overlook the crux of Jerry's Fifth Amendment claim: Defendants *coerced* false statements from Jerry, and those false statements were intended to be, and ultimately were, used against him in a criminal case. (3d Am. Compl. ¶¶ 202–206). Jerry does not only complain of Defendants' failure to issue *Miranda* warnings, but also Defendants' use of violence to elicit a false confession that was intended to be used against him at trial, and was used against him in pre-trial proceedings.

An individual's constitutional right not to have a coerced confession used against him at a criminal trial has long been clearly established. *See Hill v. City of Chicago*, 2009 WL 174994, at

33

*8 (N.D. Ill. Jan. 26, 2009)(St. Eve, J.) (citing *Brown v. Mississippi*, 297 U.S. 278, 286 (1936))

(holding that the defendant had that right at the time of his confession in 1992 and his criminal

trial in 1994). "[A] reasonable public official interrogating a criminal suspect would recognize[]

that coercing a confession by abusive language and physical contact, along with coaching the

suspect as to the details of the confession, clearly violates the suspect's constitutional right

against self-incrimination." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Lee v.*

*Young*, 533 F.3d 505, 512 (7th Cir.2008)). Thus, the core of Defendants' constitutional violation

does not stem solely from their failure to provide *Miranda* warnings, but rather their elicitation

of a false confession through the use of abusive language (3d Am. Compl. ¶¶ 105–06, 119–121),

physical contact (3d Am. Compl. ¶¶ 98–99, 119–21), and coaching. (3d Am. Compl. ¶ 138) The

heart of Jerry's Fifth Amendment claim is his coerced confession, as well as Defendants'

intention to use that confession against him at trial and the use of the confession at pre-trial

proceedings.

     Therefore, Defendants' reliance upon *Husband v. Turner* and *Hoeft v. Anderson* is

misplaced because those cases only focus upon "a failure to give a *Miranda* warning was not

clearly established as a constitutional violation until *Sornberger* was decided in 2006." *Hoeft v.*

*Anderson*, 2010 WL 2720002, at *5 (W.D. Wis. 2010) (citation omitted), *aff'd*, 409 F. App'x. 15

(7th Cir. 2011); *see also Husband v. Turner*, 2008 WL 2002737, at *4 (W.D. Wis. 2008).

Because the United States Supreme Court has long found the use of a coerced confession against

a defendant at trial to be a constitutional violation, as evidenced by *Brown v. Mississippi*, 297

U.S. at 286 and *Hill*, 2009 WL 174994, at *8, Jerry has properly pled Defendants' violation of a

clearly established constitutional right.

     Defendants also contend that the precise moment that Jerry's false confession was "used"

in his criminal proceedings is dispositive of the success of his Fifth Amendment claim. (Joint Mem. at 27). They argue that, because Jerry's "*non-Mirandized* confession [was used] in pre-trial proceedings," rather than at trial, and because the United States Supreme Court "did [not] decide [in *Chavez*] whether there was a civil cause of action for statements used in pretrial proceedings in criminal cases," Defendants' conduct cannot be considered a "clearly established" constitutional violation. (Joint Mem. at 25–27). However, the Supreme Court has clearly stated that qualified immunity only protects government officials from civil liability when their actions did not violate "clearly established statutory or constitutional rights *of which a reasonable person would have known*." *Viilo v. Eyre*, 547 F.3d 707, 709 (7th Cir. 2008) (emphasis added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As previously stated, coercing an individual's confession for use in a criminal case was a clearly constitutional violation. Therefore, the question is not whether Defendants "could have discerned the precise meaning of 'use' in a criminal case under *Chavez*," but rather whether Defendants elicited the coerced statements *for the purpose of later using it* against Jerry in a criminal case. *Stoot v. City of Everett*, 582 F.3d 910, 927 (9th Cir. 2009).

*Stoot v. City of Everett* is an on-point decision from the Ninth Circuit, and its reasoning is persuasive in the present case. 582 F.3d 910 (9th Cir. 2009). There, the court determined that, in addition to violating the plaintiff's *Miranda* rights, the defendants coerced the plaintiff into giving a false confession which led to him being charged with child molestation. *Id.* at 915–17. After the charges against the plaintiff were dismissed, the plaintiff brought a § 1983 claim against the defendants. *Id.* at 917. The Ninth Circuit began by noting that the Supreme Court assesses whether a government official is entitled to qualified immunity by asking whether he violated "clearly established statutory or constitutional rights *of which a reasonable person*

*would have known.*" *Id.* at 927 (emphasis added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The court stated that, "[a]t the time of the interrogation, [the defendant] was on notice under clearly established law that if he . . . physically or psychologically coerced a statement from [the plaintiff], the use of the confessions *could* ripen into a Fifth Amendment violation." *Id.* However, just because the violation did not, in fact, ripen into a Fifth Amendment violation "does not change this analysis, as [the defendant] had no reason to believe that the statements would not be used against [the plaintiff]." *Id.* Citing the Second Circuit, the court concluded that:

> [T]he reasonableness of a police officer's conduct in such a case depends on whether a reasonable officer in the defendant's position "would have understood that the confession allegedly coerced from [the suspect] would have been used in a criminal case against [the suspect]," in violation of his Fifth Amendment right to be free from compelled self-incrimination.

*Id.* (alteration in original) (quoting *Higazy v. Templeton*, 505 F.3d 161, 174 (2d Cir. 2007)).

The present facts are analogous to *Stoot* with respect to what Defendants should have reasonably known to be a clearly established constitutional violation. There, the Ninth Circuit concluded that the defendants "had no reason to believe that the statements [that they coerced from the plaintiff] would not be used against [the plaintiff]." *Id.* at 927. Here, after a substantial amount of psychological and physical coercion, Defendant police officers videotaped Jerry's false confession at the behest of Defendant prosecutors. (3d Am. Compl. ¶¶ 139–40). In fact, Defendants videotaped Jerry for "[a] few hours," (3d Am. Compl. ¶ 144), doing multiple takes. (3d Am. Compl. ¶ 140). Defendants not only believed, but clearly intended that Jerry's statements would be used against him at trial; otherwise, they would not have prepared such a careful record of the confession. Jerry's confession was used against him multiple times over his five year incarceration. Additionally, Defendants were on notice that, if the confession was used

at trial, Jerry's unconstitutionally coerced confession would ripen into a Fifth Amendment violation.  Therefore, because it was unreasonable to conclude that coercing confession from Jerry and then handing it to prosecutors for use in a criminal case was constitutionally sound, Defendants are not entitled to qualified immunity.


WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion to dismiss, and any and all other relief deemed just.


Respectfully Submitted


/s/ Kathleen T. Zellner
Kathleen T. Zellner, #6184574


Kathleen T. Zellner & Associates
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
(630)955-1212