**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JERRY HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 c 7649 |
| | ) | |
| v. | ) | Honorable Joan Humphrey Lefkow |
| | ) | |
| DOMINIC CAPPELLUTI, et al., | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF PROSECUTOR DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S  THIRD AMENDED COMPLAINT**

**I.     THE COERCED CONFESSION CLAIM IS UNTIMELY, FAILS TO STATE A
CLAIM, AND IS BARRED BY PROSECUTOR IMMUNITY**

**A.     Count I is Time-Barred.**

The Prosecutors adopt the Joint Reply's discussion of untimeliness, and add only that

Plaintiff's contentions about equitable estoppel and tolling are particularly unavailing against the

Prosecutors, who are not plausibly alleged to have delayed this lawsuit by threatening Plaintiff

for suing, or preventing Plaintiff from learning of his cause of action.  (Joint Reply at 1-9, 12-

20.)[1]

**B**.     **Count I Fails to State a Claim Against the Prosecutors.**[2]

Plaintiff incorrectly contends his allegation that "one or more of the Defendants" used

unjust violence and coerced him to confess, is sufficient to state a claim against prosecutors

---

[1]  Plaintiff's incorrect assertion that the notice and plausibility requirements for stating a cause of
action are "easy-to-clear" (Resp., Dkt. 136 at 2) is addressed in the Joint Reply Memorandum of All Law
Enforcement Defendants ("Joint Reply") which the Prosecutors adopt for efficiency (Joint Reply at 1-2).

[2]  The Prosecutors adopt the Joint Reply's discussion (at 20-21) of Count I's duplicative nature.

Waller and Pavletic under *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009). (Resp., Dkt. 136 at 3.)

To the contrary, *Brooks* affirmed the dismissal of similarly vague claims, and explained "[t]he

district court was correct to point out that Brooks often uses this vague phrasing ['one or more of

the Defendants'], which does not adequately connect specific defendants to illegal acts." 578

F.3d at 580. Plaintiff also questions the Prosecutors' reliance on *Beaman v. Souk*, No. 10-CV-

1019, 2011 WL 832506, at *5 (C.D. Ill. Mar. 3, 2011), because the court declined to dismiss

solely on the basis of group pleading, though it plainly recognized that such pleading "is not

sanctioned by Rule 8(a)" and should lead to summary dismissal. *Id*. Rather, the *Beaman* court

looked beyond those inadequate group pleadings in determining that certain allegations directed

at particular defendants were insufficient to state a claim. *Id.* at **7, 11, 12. Here too, whether

this Court relies on improper group pleading, or, as in *Beaman,* the insufficiency of the

allegations directed at the Prosecutors, Plaintiff has failed to sufficiently plead that the

Prosecutors participated in any "violence" which elicited his confession.

In that regard, Plaintiff does not allege the Prosecutors were among the "one or more of

the Defendants" who coerced his confession; rather, he acknowledges they first met with police

officers **after** the officers allegedly used violence to obtain the confession. (TAC ¶138.) This

fact undermines his contention that the Prosecutors were "direct participants in the interrogation"

because they knew about the interrogation and the destruction of evidence, and "advised and

coached" the officers. (Resp., Dkt. 136 at 4.) As a result, Plaintiff attempts to assert that

standards of personal involvement are satisfied if a defendant 'kn[ew] about the conduct,

facilitat[ed] it, approve[d] it, [and condone[d] it.'" (Resp., Dkt. 136 at 4, citing *Hildebrant v.*

*Illinois Dept. of Natural Resources*, 347 F.3d 1014 (7th Cir. 2003).) But this passage from

2

*Hildebrandt* does not help Plaintiff because it refers to the standards that apply to supervisors (347 F.3d at 1039), and Plaintiff does not allege the Prosecutors were the officers' supervisors.[3]

Finally, the Prosecutors did not even directly participate in Plaintiff's post-confession interrogation; they only allegedly "coached and prepared" officers to obtain a videotape of the confession by threatening to charge Plaintiff's girlfriend, though they did not make any threats. (TAC ¶¶138, 139.)  Further, they allegedly "watched and listened" to Plaintiff's two videotaped statements, knew Plaintiff was threatened and punched during the first videotape, and knew the first videotape was destroyed.  (TAC ¶¶140, 142.)  None of these allegations, made only "on information and belief," allege the Prosecutors directly participated in coercing the confession.[4]

### D.    Count I is Barred by Absolute Prosecutorial Immunity

#### 1.   Plaintiff's immunity interpretation would turn *Buckley* into a mere pleading rule.

Plaintiff first contends incorrectly that the Prosecutors' claim to immunity is premature because in *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir. 2001), the Seventh Circuit held that "Rule 12(b)(6) is a mismatch for immunity." (Resp., Dkt. 136 at 4-5.)  Plaintiff's reliance on *Alvarado* is misplaced, however, because that case concerned qualified, not absolute, immunity. With respect to absolute immunity, motions to dismiss are frequently the most appropriate vehicle for resolving such questions, and the Seventh Circuit has had no qualms in affirming

---

[3] Indeed, the Prosecutors initially cited *Hildebrandt* for the liability standard for non-supervisors, which requires that they "must have participated directly in the constitutional violation." (Prosecutors' Opening Brief "Op.Br." at 7.)  *Hildebrandt*'s supervisory standards are no longer viable in light of *Iqbal*'s rejection of supervisory liability based on "knowledge and acquiescence." 129 S. Ct. at 1949; *Vinning-El v. Evans,* 657 F.3d 591, 592 (7th Cir. 2011) (same).

[4] Although "information and belief" allegations were acceptable before *Twombley* and *Iqbal*, the Seventh Circuit has yet to consider whether they still suffice, since those cases have undermined the use of speculative, conclusory and implausible allegations, particularly where (as here) no facts support the "information and belief."

3

Rule 12(b)(6) dismissals for absolute immunity. *See, e.g., Smith v. Power,* 346 F.3d 740 (7th Cir. 2003).[5]

Substantively, Plaintiff's immunity argument is grounded on *Buckley v. Fitzsimmons'* statement that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. 259, 274 (1993). Plaintiff argues that because he was not arrested for hours after the Prosecutors arrived and participated in pre-arrest activities (TAC ¶147), there was no probable cause and thus, no immunity. (*See* Resp., Dkt. 136 at 6, 9.) The fundamental flaw in this argument is that the Prosecutors did not arrive until after Plaintiff had already confessed. To minimize this critical fact, Plaintiff contends the initial confession did not provide probable cause because "Waller and Pavletic were well aware that Jerry's confession was coerced by physical and emotional abuse." (Resp., Dkt. 136 at 12, citing TAC ¶138.) These conclusory allegations, made on information and belief, are simply implausible. Common sense indicates police officers would not tell prosecutors from whom they were seeking approval of criminal charges that they had coerced a false confession. *See Iqbal,* 129 S. Ct. at 1950 (stating plausibility is "a context-specific task" requiring the court "to draw on its judicial experience and common sense"). And for such a counter-intuitive conclusion to be given any credence, Plaintiff needs to provide at least some factual support for the allegation beyond "information and belief."

Second, Plaintiff's focus on the "probable cause" discussion in *Buckley* improperly elevates a useful guideline into a bright-line test for assessing absolute immunity. *Buckley*

---

[5] *Smith v. Power* also refutes Plaintiff's suggestion that he must only show the Prosecutors' conduct was either 'investigatory' *or* 'unrelated to the preparation and initiation of the judicial proceedings,'" in order to circumvent absolute immunity. (Resp., Dkt. 136 at 10-11). To the contrary, *Smith* explained that a prosecutor loses his immunity "when his acts are investigative *and* unrelated to the preparation and initiation of judicial proceedings." *Smith,* 346 F.3d at 742 (emphasis added).

4

emphasized that determinations of absolute immunity require a "a functional approach . . . which looks to the nature of the function performed." 509 U.S. at 269 (citations omitted). *Buckley's* mention of probable cause was in the context of discussing the prosecutors' function as they were investigating a bootprint at a time when they did not have probable cause to arrest the plaintiff. *Id*. at 274. In contrast, in this case the Prosecutors' alleged function on the day of Plaintiff's arrest was to evaluate evidence in the form of a confession obtained by the police officers, document and memorialize Plaintiff's confession, and prepare for initiating and pursuing a criminal prosecution; functions plainly within their role as advocates for the State. *See Buckley*, 509 U.S. at 273. It is equally plain that the Prosecutors here were not "searching for the clues and corroboration that might give [them] probable cause to recommend that a suspect be arrested," a function which would not be entitled to absolute immunity. *Id.*

By attempting to elevate *Buckley*'s "probable cause" guideline into a bright line rule without regard to the "functional approach" context, Plaintiff would whittle *Buckley* into a mere pleading rule. However, the rationales underlying absolute immunity as discussed in *Buckley, Imbler v. Pachtman*, 424 U.S. 409 (1976), and *Burns v. Reed*, 500 U.S. 478 (1991), require a rigorous analysis beyond simply determining whether a plaintiff pleads generally that a prosecutor was involved "before probable cause." A prosecutor's absolute immunity is "immunity from suit," rather than "a mere defense to liability," and is effectively lost if a case is erroneously permitted to proceed to discovery. *See generally*, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, Plaintiff's simplistic "probable cause" argument would effectively eviscerate the functional approach to analyzing absolute immunity claims and open floodgates to suits against prosecutors, since nearly all "coerced confession" cases allege – as Plaintiff asserts here – that police and prosecutors *never* had any probable cause to arrest and prosecute the

plaintiff. If *Buckley* meant what Plaintiff argues, prosecutors in coerced confession cases would never receive absolute immunity, when in fact courts find to the contrary. (Op. Br. at 9-11.)

Plaintiff's allegations present a horrible scenario of unspeakable tragedy. It is even more important that in such a case, the Court avoid the temptation to allow Plaintiff to proceed to discovery against everyone he has chosen to sue, but rather, to rigorously apply the appropriate, functional approach in analyzing absolute immunity. By doing so, Plaintiff's allegations, horrible as they are, demonstrate that the Prosecutors performed only prosecutorial acts and functions, for which they are entitled to absolute immunity.

## 2. Plaintiff's other arguments against absolute immunity also fail.

Plaintiff's contention that the Prosecutors are not absolutely immune because they "advised law enforcement" (Resp. at 7-9) ignores that their "advice" came after the confession, and thus was related to their advocate's role and prosecutorial functions. This critical fact distinguishes Plaintiff's reliance on *Burns v. Reed*, 500 U.S. 478 (1991), which involved a prosecutor's pre-probable cause advice that police could use hypnosis in an interrogation and that the results "probably" provided probable case. (Resp., Dkt. 136 at 8.) Moreover, while Plaintiff alleges the Prosecutors advised police to threaten Plaintiff's girlfriend with prosecution, he does not allege what charge should be threatened, or that there was no probable cause to threaten that charge; without such allegations this Court cannot assume the threat was unlawful or not entitled to absolute immunity. (Op. Br. at 7.)[6]

Plaintiff argues the Prosecutors are not immune because they sought "corroborative evidence before having probable cause to arrest." (Resp., Dkt. 136 at 9.) But the "corroborative

---

[6] While Plaintiff asserts "[t]here was no probable cause for the prosecution of Jerry's girlfriend" (Resp., Dkt. 136 at 4), the assertion cites nothing in support, and the complaint contains no allegations concerning the substance of any such threats.

evidence" was sought only after Plaintiff's had already confessed, and seeking corroborative evidence for prosecution is precisely the kind of activity afforded absolute immunity. (Op. Br. at 8-11.)

Plaintiff also argues the Prosecutors are not immune because they "destroyed exculpatory evidence," citing *Yarris v. County of Delaware,* 465 F.3d 129, 136 (3rd Cir. 2006). (Resp. at 10.) In *Yarris,* however, the Third Circuit specifically noted the Seventh Circuit's long-held, contrary view that a "prosecutor [is] absolutely immune from suit claiming that he destroyed and falsified evidence." *Id.,* citing *Heidelberg v. Hammer,* 577 F.2d 429, 432 (7th Cir. 1978).

Finally, Plaintiff tries in vain (Resp., Dkt. 136 at 10-14) to distinguish several cases the Prosecutors cited where immunity was accorded to conduct similar to that alleged here (Op. Br. at 9-11), but at best he offers distinctions without a difference. Those cases demonstrate the Prosecutors performed only their advocate's role once they arrived and learned that Plaintiff had confessed. *See, e.g., Hunt v. Jaglowski*, 926 F.2d 689, 693 (7th Cir. 1991) (immunity found where "[ASA] Petrocelli was not present when Hunt claims he was beaten.... and [when] Hunt alleges he gave his coerced confession"; Hunt's initial contact with Petrocelli came when Petrocelli was called after Hunt had confessed); *Andrews v. Burge*, 660 F. Supp.2d 868, 878 (N.D. Ill. 2009) (it was proper, immunized advocate's role for the prosecutor "to see and hear the defendant give the statement, rather than simply take the word of the police that the defendant has confessed").

In contrast to the Prosecutors' analogous cases, Plaintiff asserts "*Orange v. Burge* is dispositive." (Resp., Dkt. 136 at 9, citing *Orange*, 2005 WL 742641 (N.D. Ill. Mar. 30, 2005).) If *Orange* is dispositive, it is in the Prosecutors' favor because the basis for denying immunity in

that case was plaintiff's allegation that the prosecutor was "present in the interrogation rooms while Orange and Kidd were being tortured and did nothing to stop the torture and abuse." 2005 WL 742641 at \*\*2, 19.  No analogous allegations are made by Plaintiff here.

## II.     PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM IS UNTIMELY, FAILS TO STATE A CLAIM, AND IS BARRED BY PROSECUTOR IMMUNITY.[7]

Count III alleges that "one or more of the Defendants used unjust violence against Plaintiff in an attempt to coerce him to confess," that Plaintiff was denied *Miranda* warnings and legal counsel during his interrogation, and that his coerced false statements were used against him in his criminal case. (TAC ¶¶ 203-05.)

As explained above, these allegations fail to state a claim because of Plaintiff's resort to "group pleading," and there are no allegations that any Prosecutor "used unjustified violence," failed to give *Miranda* warnings, or denied Plaintiff legal counsel.

Additionally, to the extent Plaintiff alleges his statements were used against him, the prosecution of the criminal case is clearly protected by absolute immunity for all the reasons discussed *supra* in Section I. D.  The prosecutors are also entitled to qualified immunity on Count III's Fifth Amendment claim, since the alleged *Miranda* violations were not clearly established constitutional violations actionable under Section 1983.  *See* Joint Reply at 23-24.

## III.    PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS UNTIMELY, FAILS TO STATE A CLAIM, AND IS BARRED BY PROSECUTOR IMMUNITY.[8]

Plaintiff asserts he adequately alleged in Count IV that the Prosecutors "had a reasonable opportunity to intervene" and that Plaintiff's complaint "does not rely on mere conclusions."

---

[7] For the same reasons as discussed *supra* in Section I. A., Count III is also time-barred.

[8] For the same reasons as discussed *supra* in Section I. A. and I. D., Count IV is time-barred and barred by absolute prosecutorial immunity.

8

(Resp., Dkt. 136 at 15.)  To the contrary, Plaintiff never alleges the Prosecutors had an opportunity to intervene in the officers' coercive conduct that preceded Plaintiff's initial confession; in fact, Waller and Pavletic did not arrive until after that confession had occurred, and Mermel was never present before Plaintiff was arrested.  Thus, as in *Beaman,* 2011 WL 832506, at *12, the failure to intervene claim should be dismissed as a "conclusory statement . . . not entitled to weight."

Moreover, while Plaintiff concedes that "neither the Seventh Circuit, nor any Northern District of Illinois court, has recognized a failure to intervene claim against a prosecutor" (*see* Op. Br. at 13), he argues no case holds such a claim is "precluded."  (Resp., Dkt. 136 at 16.)  In support, Plaintiff cites several cases discussing failure to intervene in the context of police officers, but only one case involving a prosecutor – *Wilkinson v. Ellis*, 484 F. Supp. 1072 (E.D. Pa. 1980).  (Resp., Dkt. 136 at 17.)  Notably, *Wilkinson* has not been followed by any other court in the context of prosecutors,[9] and in fact was disregarded by Judge Zagel, who opined that "[t]he only opinion that supports the prosecutor's duty to intervene is quite unpersuasive."  *Andrews*, 660 F. Supp. 2d at 876 n.6; s*ee Andrews,* No. 08 C 5874 (N.D. Ill.), Dkt. 85 at 22 (Andrews's brief citing and relying on *Wilkinson*).

Further, Plaintiff's public policy-based assertion (Resp., Dkt. 136 at 17) that "prosecutors have ethical duties to ensure that justice is carried out in a constitutional and humane manner" does not transform that obvious truth into a constitutionally-enforceable civil rights cause of action. Indeed, a prosecutor's "ethical duties" were one reason the Supreme Court has recognized

---

[9] *Putman v. Gerloff,* 639 F.2d 415 (8th Cir. 1981), which Plaintiff says "recognized" *Wilkinson*, did not involve a prosecutor.

prosecutor immunity, explaining that "a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers," which "undermines the argument that the imposition of civil liability is the only way to insure that prosecutors are mindful of the constitutional rights of persons accused of crimes." *Imbler,* 424 U.S. at 429.

Finally, since no case clearly establishes a failure to intervene claim against prosecutors, they are also entitled to qualified immunity.

## IV.  PLAINTIFF'S FEDERAL CONSPIRACY CLAIM IS UNTIMELY, FAILS TO STATE A CLAIM, AND IS BARRED BY PROSECUTOR IMMUNITY.[10]

Plaintiff's conspiracy claim (Count V) is conclusively defeated by his "clarification" that the claim is brought under subsection (2) of 42 U.S.C. §1985, which he asserts "is *clearly* the only subsection that could apply to this case" (Resp., Dkt. 136 at 19-20, emphasis in original). But subsection 2 only reaches conspiracies directed against "any party or witness *in any court of the United States.*" 42 U.S.C §1985(2) (emphasis added).  This limitation requires that the proscribed activities have a nexus "to a federal court."  *See, e.g., Coleman v. Garber*, 800 F.2d 188, 190-91 (8th Cir. 1986); *Brawer v. Horowitz*, 535 F.2d 830, 840 (3rd Cir. 1976); *Morneau v. Connecticut,* 2008 WL 2704817 at * 2 (D. Conn. July 7, 2008).  Here, Plaintiff alleges no nexus between any Defendant's acts and a federal court.

Second, a claim under §1985(2) requires an intent to deprive a person of "the equal protection of the laws," and the Seventh Circuit has long held that a "complaint is deficient" under section 1985(2) when "it does not allege facts sufficient to support a claim that the defendants were motivated in their actions by racial or some other type of invidious, class-based

---

[10] As discussed *supra* at Section I. A. and I. D., Plaintiff's federal conspiracy claim is untimely and barred by absolute immunity.

discrimination." *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985). Plaintiff makes no such allegation here.[11]

## V.     PLAINTIFF'S STATE LAW CLAIMS ARE SUBJECT TO DISMISSAL.

### A.     Plaintiff's Malicious Prosecution Claim is Barred by Prosecutor Immunity.

Plaintiff argues that allegations of malice defeat absolute immunity, relying on *Aboufarris v. City of DeKalb*, 713 N.E.2d 804 (2d Dist. 1999). (Resp., Dkt. 136 at 23-24.) Despite acknowledging the cited case law "contrary to *Aboufarris*," Plaintiff claims *Aboufarris* is buttressed by the March 3, 2011 opinion in *Beaman*, 2011 WL 832506. (Resp. at 24.) That opinion, however, has been reconsidered and reversed. In its Report and Recommendation of June 15, 2011, the *Beaman* court re-examined *Aboufarris* and concluded "that the same absolute prosecutorial immunity applies to the state law claims as to the federal law claims." *Beaman*, No. 10-CV-1019 (C.D. Ill. June 15, 2011), Dkt. 65 at 10-19.[12]

### B.     The Conspiracy Claim is Insufficiently Pleaded and Barred by Immunity.

Plaintiff's response to the Prosecutors' contention that his state law conspiracy allegations are vague and conclusory, and insufficient to circumvent absolute immunity, is premised entirely on *Patterson v. Burge,* 328 F.Supp.2d 878 (N.D. Ill. 2004). (Resp., Dkt. 136 at 25.) In *Patterson*, the court found conspiracy allegations sufficient where they alleged that each individual defendant agreed to violate plaintiff's rights and "more than adequate[ly] identified the overt acts committed in furtherance of the conspiracy." *Id.* at 903. Here, by contrast, Plaintiff alleges no "agreement," let alone any facts from which an agreement could be

---

[11] For space and convenience, the Prosecutors adopt the Joint Reply's discussion of Plaintiff's federal malicious prosecution claim (Count VI) and access to court claim (Count X), at 24-27.

[12] The Prosecutors adopt the Joint Reply's discussion on untimeliness at 10-11, as well as the arguments above as to immunity, to support the dismissal of Plaintiff's IIED claim (Count XII).

reasonably inferred, and re-asserts the same conclusory and implausible allegations discussed *supra*. Thus, Plaintiff's vague allegations of conspiracy against the Prosecutors are insufficient to state a cause of action, and are, in any event, barred by principles of absolute immunity.

    **C.**    **Plaintiff's False-Light Claim Against Waller (Count XV) Is Barred by Absolute Privilege and Otherwise Fails to State a Claim.**

    **1.**    **Waller's press conference statement is absolutely privileged.**

In their opening brief, the Prosecutors explained that Waller's public statements that he "was not convinced that Hobbs didn't have a role in the killings" and "didn't believe the case could be proved beyond a reasonable doubt" were absolutely privileged under *Blair v. Walker*, 349 N.E.2d 385, 389 (1976), *Ware v. Carey*, 394 N.E.2d 690, 693-97 (1st Dist. 1979), and *Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. 2004). (Op. Br. at 18-20.) Plaintiff ignores both *Blair* and *Ware*, and argues the closely analogous *Patterson* case is distinguished by the Restatement 2d of Torts, which he interprets as limiting privilege to only statements that "were made preliminary to a proposed judicial proceeding. (Resp. at 26-27, citing *Atkinson v. Affronti*, 861 N.E.2d 251 (1st Dist. 2006).) Not surprisingly, Plaintiff cites no authority, and never attempts to explain how that narrow interpretation can be squared with *Blair* and *Ware,* or even *Patterson*, which said nothing about the Restatement 2d and relied on *Ware*. 328 F. Supp. 2d at 902. Under the unrebutted rationale of *Blair* and *Ware*, Waller's comments at the press conference are absolutely privileged.

    **2.**    **Waller's statement that law enforcement did nothing wrong is not "of or concerning" Plaintiff, and is a constitutionally protected opinion.**

The Prosecutors' opening brief explained that Waller's statement that "I have studied this case and I don't believe law enforcement did anything wrong," was not actionable because: (1) it was not "of or concerning" the Plaintiff, and (2) it was a constitutionally-protected opinion. (Op.

12

Br. at 21-22.)  Plaintiff does not even address the "of or concerning" requirement, and offers no discussion or authority in support of his bare assertion that the statement is one of "fact" rather than opinion.  (Resp., Dkt. 136 at 27.)

## VI.  THE STATE LAW CLAIMS MUST BE DISMISSED UNDER RULE (12)(b)(1) BASED ON THE ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY.

The Prosecutors' opening brief explained that both federal and state cases have held that state law claims against prosecutors, similar to Plaintiff's claims, are barred by the Eleventh Amendment and sovereign immunity and must be brought in the Illinois Court of Claims, because prosecutors are state officials and the claims against them are treated as claims against the State.  (Op. Br. at 22-24; *see also*, *Ramirez v. City of Chicago*, 2009 WL 1904416 (N.D. Ill. July 1, 2009) (holding in an analogous case that the Court of Claims has exclusive jurisdiction over a malicious prosecution claim against a prosecutor.)  As Plaintiff notes, some courts have held otherwise, and the Illinois Supreme Court has not definitively ruled.  (Resp., Dkt. 136 at 28-30.)  Also, *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990), holds that sovereign immunity does not apply when the State's agent acted "in violation of statutory or constitutional law or in excess of his authority."  Relying on *Healy*, Plaintiff argues the Prosecutors acted "outside the scope of their authority" and "in violation of Illinois and constitutional law and in a manner not ordinarily within their normal function in the State."  (Resp., Dkt. 136 at 29, 30.)

Plaintiff's argument is a mere formulaic recitation of *Healy*, and is squarely defeated by Plaintiff's own allegations, as well as by Seventh Circuit case law finding that plaintiffs' state law claims (including malicious prosecution) were not dependent on alleged constitutional violations and that defendants' actions were within the scope of their authority and employment for purposes of sovereign immunity.  *Richman v. Sheahan*, 270 F.3d 430, 442 (7th Cir. 2001);

13

*Brooks*, 578 F.3d at 580. Here, Plaintiff's malicious prosecution claim similarly is not dependent on the alleged constitutional violations; that claim could be brought separately regardless of any federal claims. Furthermore, the Prosecutors' alleged conduct is not in excess of their authority or beyond the scope of their employment; Plaintiff alleges no reason of personal animus or frolic for the Prosecutors' actions, which instead were acts "of the general kind [they are] authorized to perform, and [were] motivated, at least in part, by a purpose to serve the principal." *Richman*, 270 F.3d at 442; *cf. Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997) (overzealous coercion of confessions "squarely within" the scope of employment).[13] Even more telling, Plaintiff's own pleaded claim for indemnification depends on the Prosecutors acting in the scope of their employment. *See* 745 ILCS 10/9-102 (indemnification is provided for actions "within the scope of his employment").

## VII. THE INDEMNIFICATION CLAIM AGAINST LAKE COUNTY (COUNT XVI) MUST BE DISMISSED.[14]

Plaintiff's argument with regard to sovereign immunity – that the Prosecutors acted in excess of and outside the scope of their authority –  raises a new reason why his indemnification claim should be dismissed. If Plaintiff is correct (which he is not, as explained above), then he cannot seek indemnification based on a statute requiring the employee to be within the scope of employment, as does 745 ILCS 10/9-102. Therefore, if this Court finds the Prosecutors acted in excess of and outside the scope of their authority for purposes of sovereign immunity, it must

---

[13] To the extent *Fields v. City of Chicago* holds otherwise (Resp. at 29-31), it misconstrued *Richman* and *Brooks*; *Fields* is currently on appeal in the Seventh Circuit and is scheduled for oral argument on December 6, 2011. *Fields v. City of Chicago* 10 C 1168, 2011 WL 1326231 (N.D. Ill. Apr. 4, 2011), *appeal docketed*, No. 11-2035 (7th Cir. May 5, 2011).

[14] Plaintiff has abandoned Count XVII for *Respondeat Superior.* (Resp., Dkt. 136 at 31; Dkt. 139.)

dismiss the indemnification claim. Furthermore, if this Court finds the prosecutors acted within

the scope of their authority and employment, the 9-102 claim must still be dismissed because the

State, and not the County, is their employer. *Biggerstaff v. Moran,* 671 N.E.2d 781, 784 (1st

Dist. 1996). Instead, indemnification would fall under 5 ILCS 350/2, governing "representation

and indemnification of State employees" who act within the scope of their State employment.

**CONCLUSION**

For the foregoing reasons, and for the reasons discussed in the opening brief, the Joint

Memorandum, and the Joint Reply, the claims against the Prosecutor Defendants and Lake

County in Counts I, III, IV, V, VI, X, XI, XII, XIII, XIV, XV and XVI should be dismissed.

Dated: November 7, 2011                                  RESPECTFULLY SUBMITTED,

                                                    /s/James G. Sotos
                                                    James G. Sotos, Attorney No. 06191975
                                                    *One of the Attorneys for the State's*
                                                    *Attorney Defendants and Lake County*

James G. Sotos
Elizabeth A. Ekl
Jeffrey N. Given
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon Avenue, Suite 150
Itasca, Illinois 60143
(630) 735-3300 (telephone)
(630) 773-0980 (facsimile)
jsotos@jsotoslaw.com

15

<u>**CERTIFICATE OF SERVICE**</u>

I certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, and that I electronically filed a complete copy of the foregoing **Reply in Support of Prosecutor Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint** with the Clerk of the Court on **Monday, November 7, 2011** using the CM/ECF system, which will send notification of such filing to the attached service list.

/s/James G. Sotos
James G. Sotos, Attorney No. 06191975
*One of the Attorneys for the State's Attorney*
*Defendants and Lake County*

16

**SERVICE LIST**
**Hobbs v. Cappelluti, et al.**
**Case No. 10-cv-7649**

**Attorneys for Plaintiff**
Kathleen T. Zellner
Douglas H. Johnson
Anne Zellner Nolte
Kathleen T. Zellner & Associates.
2215 York Road, Suite 504
Oakbrook, IL 60523
(630) 955-1212
(630) 955-1111 (Fax)
kathleen.zellner@gmail.com
anne@kathleenzellner.com
bobo106466@aol.com

**Attorneys for Defendants Andrew Jones and Village of Vernon Hills**
William C. Barasha
Michael E. Kujawa
Judge, James & Kujawa, Ltd.
422 North Northwest Highway, Suite 200
Park Ridge, IL 60068
(847) 292-1200
(847) 292-1208 (Fax)
wbarasha@judgeltd.com
mkujawa@judgeltd.com

**Attorneys for Defendant Kevin Harris**
William W. Kurnik
Amanda M. Hillmann
Knight, Hoppe, Kurnik & Knight, Ltd.
5600 North River Road, Suite 600
Rosemont, IL 60018-5114
(847) 261-0700
(847) 261-0714 (Fax)
bkurnik@khkklaw.com
ahillmann@khkklaw.com

**Attorneys for Defendants Domenic Cappelluti, Charles Schletz, William Valko and The City of Waukegan**
Thomas G. DiCianni
Pedro Fregoso, Jr.
Ellen K. Emery
Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, IL 60603
(312) 782-7606
tdicianni@ancelglink.com
pfregoso@ancelglink.com
eemery@ancelglink.com

**Attorneys for Defendant City of Zion**
Clifford G. Kosoff
Julie A. Hofherr Bruch
Benjamin M. Jacobi
O'Halloran, Kosoff, Helander & Geitner, P.C.
650 Dundee Road, Suite 475
Northbrook, IL 60062
(708) 291-0200
ckosoff@okgc.com
jbruch@okgc.com
bjacobi@okgc.com

**Attorneys for Defendants Garth Glassburg, Kelly Lawrence and Northeastern Illinois Regional Crime Laboratory**
Cary James Collins
Thomas Steven Radja, Jr.
Collins & Radja
2200 West Higgins Road
Suite 145
Hoffman Estates, IL 60195
(708) 519-0010
cjcollins4@aol.com
radjat2@aol.com