## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JERRY HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.   10 C 7649 |
| | ) | |
| | ) | |
| | ) | Honorable Joan Humphrey Lefkow |
| DOMINIC CAPPELLUTI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge Geraldine Soat Brown |

**JOINT REPLY MEMORANDUM OF ALL LAW ENFORCEMENT DEFENDANTS
IN SUPPORT OF THEIR MOTIONS TO DISMISS CERTAIN COUNTS OF
THE PLAINTIFF'S THIRD AMENDED COMPLAINT**

**Dated: November 17, 2011**

Attorneys for Defendants County of Lake, Michael Waller, Michael Mermel and Jeff Pavletic

/s/ James Gus Sotos
James Gus Sotos
    EMAIL: jsotos@jsotoslaw.com

/s/ Jeffrey Neil Given
Jeffrey Neil Given
    EMAIL: jgiven@jsotoslaw.com
James G. Sotos & Associates, Ltd.
550 East Devon Street, Suite 150
Itasca, Illinois 60143
Telephone:     630-735-3300
Facsimile:     630-773-0980

One of the Attorneys for Defendant Kevin Harris

/s/ William W. Kurnik
William W. Kurnik, I.D. #01550632
    EMAIL: bkurnik@khkklaw.com
Knight, Hoppe, Kurnik & Knight, Ltd.
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:     847-261-0700
Facsimile:     847-261-0714

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iv

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARDS ................................................................................................... 1

    A.  Plaintiff Ignores Important Legal Standards of
       "Plausibility". ...................................................................................................... 1

    B.  Dismissal At This Stage Is Appropriate Under
       Fed. R. Civ. P. 12(b)(6) Standards. .......................................................... 2

SUMMARY OF FACTS ................................................................................................ 3

ARGUMENT

    I.   PLAINTIFF'S FEDERAL CLAIMS ACCRUED WHEN HIS
       CONFESSIONS WERE FIRST USED TO DETAIN HIM AT HIS
       BAIL HEARING, NOT WHEN THE CRIMINAL CHARGES
       WERE DISMISSED, AND ARE TIME-BARRED. ..................................... 3

        A.  The Plaintiff Mischaracterizes Methodology Utilized in
           *Wallace* for Determining When a Federal Action Accrues. ................... 3

        B.  Characterizing Plaintiff's Claims as Analogous to the
           Common Law Tort of Malicious Prosecution is Self-Serving
           and Incorrect. ............................................................................................ 5

        C.  Applying *Wallace* as a Bar to the Plaintiff's Federal Claims
           is Consistent with Seventh Circuit Case Law. ....................................... 6

    II.  THE PLAINTIFF'S CONTINUED IMPRISONMENT UNTIL HE
       WAS RELEASED FROM CUSTODY DOES NOT CONSTITUTE
       A "CONTINUING VIOLATION" AND PLAINTIFF'S FEDERAL
       CLAIMS ACCRUED WHEN HIS CONFESSIONS WERE FIRST
       USED TO DENY BAIL, NOT WHEN HE WAS EVENTUALLY
       RELEASED FROM CUSTODY. ............................................................... 7

III.   THE PLAINTIFF'S IIED CLAIMS DID NOT ACCRUE WHEN
       THE CHARGES WERE DISMISSED, AS THE IIED CLAIM WAS
       NOT "INTERTWINED" WITH THE MALICIOUS PROSECUTION
       CLAIM, AND THE LAW ENFORCEMENT DEFENDANTS DID
       NOT ENGAGE IN ANY CONDUCT WITHIN ONE YEAR OF THE
       FILING OF THIS ACTION. .................................................................................. 10

IV.    PLAINTIFF'S UNTIMELY FEDERAL CLAIMS ARE NOT SAVED
       BY PRINCIPLES OF EQUITABLE ESTOPPEL. .................................................. 12

       A.   Defendants Concede That Under Seventh Circuit Law, the
            Federal Doctrine of Equitable Estoppel Controls. ............................... 12

       B.   Plaintiff's Claim of Equitable Estoppel Fails Under
            Federal Law. ........................................................................................ 13

            1.   Plaintiff does not plausibly plead equitable estoppel
                 Under federal law. ...................................................................... 13

            2.   Plaintiff's equitable estoppel claim fails under federal
                 case law. ...................................................................................... 15

V.     PLAINTIFF'S UNTIMELY FEDERAL CLAIMS ARE NOT SAVED
       BY PRINCIPLES OF EQUITABLE TOLLING. .................................................... 18

       A.   Plaintiff's Implausibility Arguments Are Contradicted by
            the Complaint. ..................................................................................... 18

       B.   Plaintiff's Arguments Are Contradicted by the Law. .......................... 19

VI.    PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM (COUNT I)
       SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE. .............................. 20

VII.   THE AVAILABILITY OF EXPLICIT CONSTITUTIONAL AND
       STATE LAW REMEDIES PRECLUDES PLAINTIFFS' SUBSTANTIVE
       DUE PROCESS CLAIM (COUNT II). .................................................................. 21

VIII.  PLAINTIFF'S FIFTH AMENDMENT CLAIM (COUNT III) SHOULD
       BE DISMISSED BECAUSE DEFENDANTS HAVE QUALIFIED
       IMMUNITY. ........................................................................................................ 23

IX.    PLAINTIFF'S ACCESS TO COURTS CLAIM (COUNT X) FAILS
TO STATE A CLAIM; ALTERNATIVELY, THE INDIVIDUAL
DEFENDANTS HAVE QUALIFIED IMMUNITY. ................................................. 24

    A.   The Formulaic Recitation of a Conspiracy Among the Law
Enforcement Defendants to Deny Plaintiff Access to the
Courts is Insufficient to State a Claim Upon Which Relief
May be Granted. ............................................................................................... 24

    B.   The Plaintiff Fails to Address the Substantive Argument that
Only Certain Types of Claims Can Form the Basis of a Free
Access Claim. ................................................................................................... 25

X.    THE LAW ENFORCEMENT DEFENDANTS HAVE ARGUED
THAT COUNT VI IS NOT ACTIONABLE. .......................................................... 27

CONCLUSION ................................................................................................................ 28

CERTIFICATE OF SERVICE ......................................................................................... 29

ELECTRONIC FILING SERVICE LIST .......................................................................... 30

# TABLE OF AUTHORITIES

## TABLE OF CASES:

*Albright v. Oliver*,
510 U.S. 266 (1994) ................................................................................................ 21

*Aleman v. Village of Hanover Park*,
748 F.Supp.2d 869 (N. D. Ill. 2010) ....................................................................... 10

*Andonissamy v. Hewlett-Packard Co.*,
547 F.3d 841 (7th Cir. 2008) ..................................................................................... 2

*Ashcroft v. Iqbal*,
___ U.S. ___, 129 S. Ct. 1937 (2009) ................................................................. 2, 3

*Bell Atlantic Corp. v. Twombley*,
550 U.S. 544 (2007) .................................................................................................. 2

*Brooks v. Ross*,
578 F.3d 578 (7th Cir. 2009) ..................................................................................... 2

*Cange v. Stotler and Company, Inc.*,
826 F.2d 581 (7th Cir. 1987) ................................................................................... 12

*Chavez v. Martinez*,
538 U.S. 760 (2003) ................................................................................................ 23

*Clark v. City of Braidwood*,
318 F.3d 764 (7th Cir. 2003) ................................................................................. 8, 9

*Clay v. Kuhl*,
727 N.E.2d 217 (Ill. 2000) ...................................................................................... 19

*Cook v. City of Chicago*,
 2008 WL 1883437 (N.D. IL April 25, 2008) ........................................................ 15

*Evans v. City of Chicago*,
434 F.3d 916 (7th Cir. 2006) ................................................................................... 11

*Fox v. Hayes*,
600 F.3d 819 (7th Cir. 2010) ............................................................................. 18, 21

*Griffin v. Willoughby*,
867 N.E.2d 1007 (4th Dist. 2006) ........................................................... 20

*Hargroves v. City of New York*,
694 F. Supp. 2d 198 (E.D. N.Y. 2010) ...................................................... 20

*Heck v. Humphrey*,
512 U.S. 477 (1994) ................................................................................. 18

*Hoeft v. Anderson*,
2010 WL 2720002 (W.D. Wis. July 6, 2010) ...................................... 23, 24

*Hollander v. Brown*,
457 F.3d 688 (7th Cir. 2006) ................................................................. 12

*Kucharski v. Leveille*,
526 F. Supp. 2d 768 (E.D. Mich. 2007) .................................................. 20

*Lanza v. City of Chicago*,
2009 WL 1543680 (N.D. Ill. 2009) (Magistrate Schenkier) ................. 9, 21

*Lehn v. Holmes*,
364 F.3d 862 (7th Cir. 2004) ................................................................. 26

*Lewis v. Casey*,
518 U.S. 343, 116 S.Ct. 2174 (1996) ..................................................... 25

*Limestone Development Corp. v. Village of Lemont*,
520 F.3d 767 (7th Cir. 2008) ................................................................... 8

*McCauley v. City of Chicago*,
___ F.3d ___, 2011 WL 4975644 (7th Cir., Oct. 20, 2011) ......... 2, 14, 25

*Monell v. Dep't. of Social Services of the City of New York*,
436 U.S. 658 (1978) ................................................................................. 16

*Ramirez v. City of Chicago*,
2009 WL 1904416 (N.D. IL July 1, 2009) .......................................... 16, 17

*Ray v. City of Chicago*,
629 F.3d 660 (7th Cir. 2011) ................................................................... 6

*Reyes v. City of Chicago*,
585 F.Supp.2d 1010 (N.D. IL 2008) ................................................... 12, 16

*Rosetti v. Wascher,*
2011 WL 824599 (N.D. IL March 3, 2011) ........................................................ 12

*Savory v. Lyons,*
469 F.3d 667 (7th Cir. 2006) .............................................................................. 8, 9

*Scott v. City of Chicago,*
2010 WL 1433313 (N.D. IL April 8, 2010) ....................................................... 22

*Shropshear v. Corporation Counsel of Chicago,*
275 F.3d 593 (7th Cir. 2001) ......................................................................... 12, 13

*Sornberger v. City of Knoxville, Illinois,*
434 F.3d 1006 (7th Cir. 2006) ........................................................................... 23

*Stoot v. City of Everett,*
582 F.3d 910 (9th Cir. 2009) ............................................................................. 24

*Swanson v. Citibank N.A.,*
614 F.3d 400 (7th Cir. 2010) ............................................................................... 2

*Tully v. Barada,*
599 F.3d 591 (7th Cir. 2010) ............................................................................. 20

*Tun v. Whitticker,*
398 F.3d 899 (7th Cir. 2005) ............................................................................. 22

*Wallace v. Kato,*
549 U.S. 384, 127 S.Ct. 1091 (2007) ....................................................... 3, 4, 5,
6, 18

*Washington v. Summerville,*
127 F.3d 552 (7th Cir. 1997) ............................................................................. 18

*Williams v. City of Chicago,*
2011 WL 2637238 (N.D. Ill. 2001) (J. Dow) ..................................................... 9

*Wilson v. O'Brien,*
2011 WL 759939 (N.D. Ill. 2011) ....................................................................... 5

*Wiley v. City of Chicago,*
361 F.3d 994 (7th Cir. 2004) ............................................................................. 18

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JERRY HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.    10 C 7649 |
| | ) | |
| | ) | |
| | ) | Honorable Joan Humphrey Lefkow |
| DOMINIC CAPPELLUTI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge Geraldine Soat Brown |

**JOINT REPLY MEMORANDUM OF ALL LAW ENFORCEMENT DEFENDANTS
IN SUPPORT OF THEIR MOTIONS TO DISMISS
CERTAIN COUNTS OF
THE PLAINTIFF'S THIRD AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff primarily argues that his federal claims, and his state law intentional infliction of emotional distress (hereinafter "IIED") claim, did not accrue until his charges were *nolle prossed* and he was released in 2010, and that even if the federal claims accrued earlier, his untimely lawsuit was excused by either equitable estoppel or equitable tolling.  Plaintiff also makes several arguments for why each of his federal claims is not substantively barred.

Plaintiff's arguments are unpersuasive.  For the reasons discussed below, and for the reasons contained in Defendants' opening memorandum, this Court should dismiss all of Plaintiff's federal claims and his IIED claim.

**LEGAL STANDARDS**

**A.    Plaintiff Ignores Important Legal Standards of "Plausibility".**

While Plaintiff concedes that his complaint must plausibly suggest he has a right to relief, he ignores the standards used to measure a complaint's sufficiency under the "plausibility

standard" announced in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007)*, and *Ashcroft v.

Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009).[1]  In fact, making the plausibility determination is "a

context-specific task" requiring the court "to draw on its judicial experience and common sense."

*Iqbal*, 129 S. Ct. at 1950.  Further, a plaintiff must "provid[e] some specific facts" to support the

legal claims asserted in the complaint, *Brooks v. Ross*, 578 F.3d 578, 581 (7th Cir. 2009), and

plaintiff must give enough details about the subject-matter of the case to present a story that

holds together."  *Swanson v. Citibank N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

### B.    Dismissal At This Stage Is Appropriate Under Fed. R. Civ. P. 12(b)(6) Standards.

While Plaintiff argues dismissal under Fed. R. Civ. P. 12(b)(6) would be "improper"

because Defendants' affirmative defense that his claims are untimely requires "discovery and

factual inquiry," he acknowledges he can plead himself out of court "by admitting all the

ingredients of an impenetrable defense." (Pl. Resp., Doc. #137, pp. 3-4).  Here, Plaintiff

acknowledges he filed the Third Amended Complaint specifically to allege estoppel and tolling

of the applicable statute of limitations (*see* Defendants' Joint Memo, Doc. #125, p. 14)[2], and it is

clear that a "statute of limitations defense, while not normally part of a motion under Rule

12(b)(6), is appropriate where the allegations of the complaint itself set forth everything

necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an

action is untimely under the governing statute of limitations."  *Andonissamy v. Hewlett-Packard

Co.,* 547 F.3d 841, 847 (7th Cir. 2008).  As discussed below and in the opening memorandum,

---

[1] These standards were recently reiterated in *McCauley v. City of Chicago*, __ F.3d __, 2011 WL 4975644 at *4 (7th Cir., Oct. 20, 2011), which affirmed dismissal of an implausibly-pleaded complaint.

[2] One of the arguments which the Defendants raised in the Joint Memorandum of the Law Enforcement Defendants, the free access argument in Part VI, was addressed by the Plaintiff in his response to the Lake County Prosecutor's and Lake County's Memorandum, so to avoid confusion, the docket numbers of those response memoranda are referred to.

the facts and the law undeniably demonstrate Plaintiff's federal claims are barred by the applicable statute of limitations and are not saved by equitable estoppel or equitable tolling.

## SUMMARY OF FACTS

Plaintiff asserts Defendants' summary of allegations is flawed, and instead offers a purported "Factual Clarification" that is anything but clear. (Pl. Resp., Doc. #137, pp. 2-3). Defendants stand by the factual summaries in their opening memorandum, but agree with Plaintiff that this Court should refer to the complaint's specific allegations when evaluating whether Plaintiff establishes that the requested relief is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949.

## ARGUMENT

**I. PLAINTIFF'S FEDERAL CLAIMS ACCRUED WHEN HIS CONFESSIONS WERE FIRST USED TO DETAIN HIM AT HIS BAIL HEARING, NOT WHEN THE CRIMINAL CHARGES WERE DISMISSED, AND ARE TIME-BARRED.**

### A. The Plaintiff Mischaracterizes Methodology Utilized in *Wallace* for Determining When a Federal Action Accrues.

The Supreme Court, in *Wallace*, did not, as Plaintiff contends, determine when a cause of action accrues solely by reference to the most closely analogous common law tort. "Under [common-law tort principles], it is 'the standard rule that [accrual occurs] when the plaintiff has a 'complete and present cause of action'', that is, when 'the plaintiff can file suit and obtain relief.'" (*Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 1095 (2007). The Court focused on injury, not on any analogous common law tort, when it made this broad, all-encompassing pronouncement. As was the case in *Wallace*, and as the Plaintiff apparently concedes by not arguing to the contrary, Hobbs could have filed suit as soon as he was wrongfully taken into custody and most certainly when his confession was used at the bail hearing to detain him.

The holding in *Wallace* could not be any clearer in establishing that Hobbs' claim is time-barred:

> "We hold that the statute of limitations upon a §1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, *where the arrest is followed by criminal proceedings*, begins to run at the time the claimant becomes detained pursuant to legal process." (*Id.*, 549 U.S. at 397, 127 S.Ct. at 1100) (Emphasis added).

In stating its holding, the Court did not limit its applicability to a "Section 1983 claim [based upon the Fourth Amendment]"; rather, the holding stated broadly to "Section 1983 claims", in general.

The Court did, however, refer to "the common law's distinctive treatment of the torts of false arrest and false imprisonment" because there was a necessary "refinement". (*Id.*) False imprisonment has a distinctive rule that the statute of limitations does not start to run until imprisonment ended (*Id.*, 549 U.S. at 389, 127 S.Ct. at 1095-96), and because false imprisonment was defined as a detention "without legal process", the imprisonment ended and was no longer false when arraignment occurred. (*Id.*, 549 U.S. at 389, 127 S.Ct. at 1096).

Wallace's claim accrued when he was injured – when he was able to sue; but because of the "distinctive" treatment at the common law of false imprisonment claims, the statute of limitations did not commence to run until he was bound over and then held pursuant to legal process.[3] Although the Plaintiff erroneously criticizes the Defendants for failing to make an argument as to why *Wallace* should be extended beyond the Fourth Amendment context (Pl. Resp., Doc. #137, p. 17), *Wallace*, itself, demonstrates the soundness of the Defendants' position. In determining when a cause of action accrued, the Court did not limit its one-paragraph discussion to Fourth Amendment claims nor even refer to any specific constitutional

---

[3] These Defendants did devote an "exceptional amount of time" (Pl. Resp., Doc. #137, p. 14) on explaining why the deferred accrual rule of *Heck* has no application, and did so because all of the district court opinions upon which Plaintiff now relies applied the deferred accrual rule of *Heck* and not the methodology that Plaintiff urges this Court to apply. So, to that extent, the parties are in agreement that the judges did not properly analyze *Wallace*.

right in reaching its conclusion.  It looked solely to the common law tort principle that accrual occurs "when 'the plaintiff can file suit and obtain relief. . . . .'" (*Id.*, 549 U.S. at 388, 127 S.Ct. at 1095).  So whether the right at issue arises under the Fourth, Fifth or the Fourteenth Amendments, the analysis is the same – when a plaintiff can file suit and obtain relief, he must do so within two years.

> **B.**     **Characterizing Plaintiff's Claims as Analogous to the Common Law Tort of Malicious Prosecution is Self-Serving and Incorrect.**

Relying upon the opinion of Judge Kocoras in *Wilson v. O'Brien*, 2011 WL 759939 (N.D. Ill. 2011) (Pl. Resp., Doc. #137, p. 15), the Plaintiff maintains that that opinion alleges facts "legally indistinguishable from those in [Hobbs'] coerced confession claim".  But even the most casual review of the opinion shows the contrary.

Judge Kocoras rejected the defendants' contention that under *Sornberger*, the statute of limitations commenced to run when the confession was first used to detain the plaintiff, because unlike Wilson, Sornberger "had the charges against her dropped", and "crucially", Sornberger was not convicted.  (*Id.*, at p. 6).  And the differences between *Wilson* and the case at bar are even noted in the block quote upon which the Plaintiff relies distinguishing *Wilson* from Hobbs in that the confession "was later introduced against him at trial" and "that statement led to his conviction for a crime that he did not commit".  (Pl. Resp., Doc. #137, p. 15).

Plaintiff claims that his action is akin to malicious prosecution because he does not seek damages in Count I for being unlawfully detained "prior to being held over for legal process [*sic*]", but "'targets the wrongful institution of legal process against him and requests damages for the full duration of his imprisonment.'"  (Pl. Resp., Doc. #137, p. 16).  This same statement of the damages claim in *Wallace*, as a basis arguing for accrual occurred when Wallace was released from custody, was rejected in *Wallace* because those damages were unavailable.  "[A]t

common law damages for detention after issuance of process or arraignment would be attributable to a tort other than the unlawful arrest alleged in petitioner's complaint . . . ." (549 U.S. at 391, 127 S.Ct. at 1097). Damages for detention after arraignment or issuance of legal process "must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." (549 U.S. at 390, 127 S.Ct. at 1096).

If the damages sought are recoverable under the tort of malicious prosecution and if, as the Plaintiff contends, favorable termination is an element, then it is nothing more than a "federal malicious prosecution" claim which, as the Plaintiff concedes, is not actionable under Section 1983.

Plaintiff asserts that the lack of conviction is irrelevant because the coerced confession claim "*did not exist* until it *accrued upon his release* . . . ." (Pl. Resp., Doc. #137, p. 16). This assertion is circuitous. Under *Wallace*, his claim did exist upon bail being denied because under common law principles, he was injured.

### C. Applying *Wallace* as a Bar to the Plaintiff's Federal Claims is Consistent with Seventh Circuit Case Law.

Plaintiff suggests that *Wallace* should not be applied because its grant of *certiorari* was limited to a Fourth Amendment claim. (Pl. Resp., Doc. #137, p. 17). That does not limit the holding of the Court nor foreclose the extension of its reasoning, rationale and principles beyond the Fourth Amendment context. That the Seventh Circuit refused to apply *Wallace* and applied *Heck* to a *Brady* claim (Pl. Resp., Doc. #137, p. 17) lends no support for the Plaintiff's argument. A *Brady* claim is a claim that involves fair <u>trial</u> rights, and there is no *Brady* claim if there is no trial. *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011). A *Brady* claim does not cover pre-trial damages because the claim does not challenge the legality of the <u>detention</u>. In the Seventh Circuit opinion upon which Plaintiff relies, there was an "extant" conviction; and since a *Brady* claim involves a challenge to a conviction, the *Heck* bar applies.

The opinions of other judges in this district upon which the Plaintiff relies (Pl. Resp., Doc. #137, pp. 17-18), were addressed and distinguished by the Defendants in their opening brief and those reasons will not be repeated.

II.   **THE PLAINTIFF'S CONTINUED IMPRISONMENT UNTIL HE WAS RELEASED FROM CUSTODY DOES NOT CONSTITUTE A "CONTINUING VIOLATION" AND PLAINTIFF'S FEDERAL CLAIMS ACCRUED WHEN HIS CONFESSIONS WERE FIRST USED TO DENY BAIL, NOT WHEN HE WAS EVENTUALLY RELEASED FROM CUSTODY.**

Plaintiff relies upon the "continuing violation" doctrine and argues that under that doctrine, the federal claims arising out the Plaintiff's continued detention did not accrue until he was released from custody in August 2010 relying upon a Seventh Circuit decision in *Heard* which involved an Eighth Amendment claim for failing to provide medical care. (Pl. Resp., Doc. #137, p. 19). However, Seventh Circuit decisions handed down since *Heard*, including a subsequent decision authored by the same judge that authored *Heard*, Judge Posner, makes clear that the doctrine has no application in this case. A claim accrues when a plaintiff is immediately aware of his claim and his injury was the lingering or natural consequence of the denial of bail. (Pl. Resp., Doc. #137, p. 18). Recognizing that that theory may be unavailing, the Plaintiff maintains that his coerced confession was used against him on three occasions – the initial bond hearing, the hearing on his motion to suppress, and the hearing on his motion for bond review – and since the last use was within two years of filing this action, he has a cause of action for injuries accruing as a result of that last use. His contention that the last use was a "discreet act" must be rejected for the obvious reason that the officers are not alleged to have engaged in any actions or activity after the hearing on the motion to suppress, and they were not involved in a hearing for bond review.

"[T]he doctrine of continuing violation is one governing accrual, not tolling, and is therefore governed by federal law." *Clark v. City of Braidwood*, 318 F.3d 764, 766 (7th Cir. 2003) (citing *Heard*).

> "[The] doctrine does not save an otherwise untimely suit when 'a single event gives rise to continuing injuries' because in such a case 'the plaintiff can bring a single suit based on an estimation of his total injuries.'" (*Id.*, at 767).

In the Seventh Circuit, the doctrine has been limited to applications in which an individual does not become aware of his right of action until some later event occurs, for example, a hostile environment claim, as stated by the Court in *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006):

> "This court has applied the continuing violation doctrine when the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events."

The other situation in which the doctrine has been applied is "when the state actor has a policy or practice that brings with it a fresh violation each day". (*Id.*)

While the Plaintiff believes that *Heard* supports his position, consistent with the above quoted authorities, that case has been construed by the Seventh Circuit as one in which a right of action did not become immediately apparent. In *Limestone Development Corp. v. Village of Lemont*, 520 F.3d 767, 801 (7th Cir. 2008), and referring to his earlier opinion in *Heard*, Judge Posner described the doctrine as allowing suits to be delayed "until a series of wrongful acts *blossoms* into an injury on which suit can be brought." "It is thus a doctrine not about continuing, but about a cumulative, violation." (*Id.*) (Emphasis added).

In *Savory*, a prisoner, who was denied access to physical evidence for DNA testing, had argued that his claim was not time-barred under the continuing violation doctrine because the continued refusal to give him access to evidence made his claim timely. The Court rejected that

contention. His continued inability to gain access to the evidence was not a "fresh act", but rather "the natural consequence of the discreet act that occurred when Peoria first denied access to the evidence." (469 F.3d at 673).

In deciding whether to apply the continuing violation theory, this Court must determine whether the Plaintiff's continued detention was the result of "a fresh act each day" or whether it was the result of "a discreet act that took place" upon his denial of bond. (469 F.3d at 673). The last "fresh act" committed by any of these Defendants occurred when several of the Defendants testified at the hearing on the motion to suppress, assuming that giving testimony can be the basis of liability. There was no fresh act on the part of any of these Defendants after that date. The Plaintiff's continued detention was the "lingering consequence" or the "natural consequence", at the latest, when the officers testified at the motion to suppress hearing if not the consequence of the initial denial of bail. *Accord Clark v. City of Braidwood*, 318 F.3d 764 (7th Cir. 2003) ("discreet act" resulted in a continuing inability to develop property); *Williams v. City of Chicago*, 2011 WL 2637238 (N.D. Ill. 2001) (J. Dow) (doctrine inapplicable to continued detention on coerced confession distinguishing *Heard*); *to the same effect*, *Lanza v. City of Chicago*, 2009 WL 1543680 (N.D. Ill. 2009) (Magistrate Schenkier).

For these same reasons, the contention of the Plaintiff that the courtroom uses were "a 'series of discreet acts, each of which is independently actionable'" must be rejected. Assuming that testifying at the motion to suppress hearing may have been a discreet act, there were only two discreet acts on the part of these Defendants which *may* have been independently actionable.

The Plaintiff maintains that no "unfairness" results to any of the Law Enforcement Defendants because "by using" the coerced confession at the hearing in December 2008, these Defendants were on notice of that claim. This argument fails, however, because there is no allegation that the individual Law Enforcement Defendants "used" the confession.

**III.    THE PLAINTIFF'S IIED CLAIMS DID NOT ACCRUE WHEN THE CHARGES WERE DISMISSED, AS THE IIED CLAIM WAS NOT "INTERTWINED" WITH THE MALICIOUS PROSECUTION CLAIM, AND THE LAW ENFORCEMENT DEFENDANTS DID NOT ENGAGE IN ANY CONDUCT WITHIN ONE YEAR OF THE FILING OF THIS ACTION.**

The Plaintiff dismisses the argument of the Law Enforcement Defendants that *Brooks* controls and relies instead on several district court opinions, one of which is that the Plaintiff asserts is directly on point, *Gvozden* (Pl. Resp., Doc. #137, pp. 21-22).   The district court opinions upon which the Plaintiff relies all cite to and rely upon the other and are factually distinguishable as one judge in this district has observed.   Referring to most of the decisions upon which Plaintiff relies, the Court, in *Aleman v. Village of Hanover Park*, 748 F.Supp.2d 869, 892 (N. D. Ill. 2010) stated:

> "These decisions are in opposite.   In each of these cases, the defendant officers' tortious conduct was alleged to have continued throughout the length of the plaintiff's prosecution, including testifying against the plaintiff at trial. Hence, those were continuing violation cases in which the last injury was suffered or the last tortious act was committed, when the case ended.   Here, the officers are not alleged to have engaged in such continuous tortious conduct."

The Law Enforcement Defendants are not alleged to have engaged in any conduct after the suppression hearing held in 2007.   That this is a critical distinction is clearly shown in *Gvozden*, which the Plaintiff claims is directly on point.   In that decision, the plaintiff had alleged that her IIED claim was "intertwined with the allegations in her malicious prosecution claim" (2011 WL 1118704, at p. 10).   Referring to an opinion of the Seventh Circuit applying Indiana law, Judge Dow emphasized that in that case, the plaintiff alleged misconduct "'through all stages of the investigation and trial' and that it was the conviction that led to the mental anguish.'"   (*Id.*)   In the case before him, Judge Dow concluded that the IIED claim accrued when the charges were dismissed because the plaintiff claimed misconduct "throughout the investigation and trial" and that the claims were, therefore, "inextricably intertwined".   (*Id.*)

Moreover, the district court opinions upon which the Plaintiff relies did not undertake any analysis of the continuing violation doctrine. One cannot claim that simply because a malicious prosecution claim is brought along with an IIED claim means that the two are intertwined and that the latter is tolled until the criminal charges are dismissed without even referring to the doctrine.

In *Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006), the Seventh Circuit addressed the continuing violation principles in connection with an assertion by the plaintiff that his IIED claim was tolled until the criminal charges were dismissed. The plaintiff had witnessed Chicago police officers kill an individual and he appeared on television charging them with murder. He said that in response, the police engaged in a campaign of harassment, including initiating various prosecutions, to get the witness to change his story. The charges were dismissed and suit was filed less than one year later.

Regarding the plaintiff's contention, in *Evans*, that the IIED claim accrued when the charges were dismissed, the Court first commented that he had failed to consider Illinois law that a cause of action accrues when the plaintiff sustains injury. (434 F.3d at 934). The Court could find nothing in either state or federal law that tolled the state or federal claims until the charges were dismissed. (*Id.*) The Court addressed the continuing violation doctrine mentioned in *Heard* (*id.*) and noted that under Illinois law, "'the statute of limitations is only held in abeyance until the date of the last injury suffered or when the tortious acts cease.'" (*Id.*) Applying what it referred to as this "common sense rule", the Court focused upon when "the last, confirmed interaction" between the plaintiff and police officers occurred, not when the charges were dismissed and held that the IIED claim was time-barred.

Since the last discreet act in which any of the Defendant Officers is alleged to have engaged was testifying at the suppression hearing, the IIED claim is time-barred.

11

IV. **PLAINTIFF'S UNTIMELY FEDERAL CLAIMS ARE NOT SAVED BY PRINCIPLES OF EQUITABLE ESTOPPEL.**

    A. **Defendants Concede That Under Seventh Circuit Law, the Federal Doctrine of Equitable Estoppel Controls.**

Relying on *Hollander v. Brown,* 457 F.3d 688, 694 (7th Cir. 2006), Defendants initially argued Illinois law applied to the equitable estoppel issue. Plaintiff's response asserts "[t]he law in the Seventh Circuit is clear: Federal courts adopting a state statute of limitations for a federal claim must 'apply the federal doctrine of equitable estoppel.'" (Pl. Resp., Doc. #137, p. 5, citing *Shropshear v. Corporation Counsel of Chicago,* 275 F.3d 593 (7th Cir. 2001)). Defendants concede that under *Shropshear,* federal law applies. However, the law on this issue is not "clear"; in fact, whether Illinois or federal principles apply has confused the courts as well as Defendants. For example, in *Rossetti v. Wascher,* 2011 WL 824599 at *3 (N.D. IL March 3, 2011), Judge Hart stated "[t]he applicable limitation period, as well as any related tolling or estoppel doctrine, is governed by Illinois law." And in *Reyes v. City of Chicago,* 585 F. Supp. 2d 1010, 1016 (N.D. IL 2008), Judge Bucklo cited *Hollander* and applied Illinois law in dismissing untimely Section 1983 claims that were not saved by equitable estoppel allegations. Defendants concede their error, but believed their position was warranted by existing law.[4]

---

[4] While this Court must follow *Shropshear*, there is good reason for the Seventh Circuit to overrule that case and hold that Illinois law governs both equitable estoppel and equitable tolling. Indeed, *Shropshear* itself recognized the question "has divided the other courts to consider it," and noted "whether this circuit's rule distinguishing between the two tolling doctrines should be overruled is a matter that we leave to another day." 275 F.3d at 598. In *Cange v. Stotler and Company, Inc.,* 826 F.2d 581, 599-600 (7th Cir. 1987), a case cited by *Shropshear*, Judge Easterbrook's concurrence articulated several reasons why the law does not allow a court to pick a tolling rule from state law and an estoppel rule from federal law. The issue is important, and would categorically dispose of the equitable estoppel claim here, since Plaintiff does not dispute that Illinois law holds that threatened retaliation for filing a lawsuit does not constitute equitable estoppel. (Def. Joint Memo, Doc. #125, pp. 17-18.) Defendants note and preserve this issue for potential appeal.

### B. Plaintiff's Claim of Equitable Estoppel Fails Under Federal Law.

Plaintiff argues that federal principles of equitable estoppel defeat Defendants' motion to dismiss. (Pl. Resp., Doc. #137, pp. 5-9.) To the contrary, Plaintiff fails to plausibly allege equitable estoppel even under federal law; moreover, federal law also defeats Plaintiff's claim for equitable estoppel.

### 1. Plaintiff does not plausibly plead equitable estoppel under federal law.

In *Shropshear*, the Seventh Circuit explained that "deliberate or otherwise blameworthy conduct by *the defendant* that causes the plaintiff to miss the statutory deadline can be the basis for a defense of equitable estoppel." *Shropshear*, 275 F.3d at 597 (emphasis added). Equitable estoppel applies only "if *the defendant* takes active steps to prevent the plaintiff from suing in time," *id.* at 595 (emphasis added), and requires that "once the circumstance giving rise to the estoppel is removed . . . the filing of the suit cannot be delayed indefinitely." *Id.* at 597.

In this case, Plaintiff does not meet *Twombley* and *Iqbal* standards for alleging a plausible claim for equitable estoppel under *Shropshear*. Plaintiff alleges that he was "too intimidated to file a civil lawsuit" and "did not believe it was safe to file a lawsuit while he was incarcerated." (Third Amended Complaint ("TAC"), ¶185.) As Defendants previously explained, however, Plaintiff's conclusory allegations do not rise "above the speculative level" and fail to provide enough specific facts and details to present "a story that holds together" because only Defendants Schletz and Jones are alleged to have directly threatened Plaintiff's life, and those alleged threats (which had nothing to do with filing a lawsuit) could only have been made or carried out while they and Plaintiff were alone together in the interrogation room. (Def. Joint Memo, Doc. #125, pp. 14-20).

Plaintiff's response argues that Defendants have inaccurately understated what was said and done during the interrogation, but even if this Court accepted Plaintiff's un-pleaded assertion that the entire interrogation (TAC, ¶¶82-145) was life threatening, the interrogation ended on May 10, 2005, and Plaintiff does not allege any Defendant made any threats to Plaintiff's life at any time after the interrogation ended, nor does Plaintiff allege that any Defendant at any time made any threat to retaliate if Plaintiff filed a lawsuit. (*Id*.) Thus, Plaintiff does not provide "a story that holds together" about why he did not file a lawsuit after the interrogation ended and his claim had accrued.

To avoid dismissal, Plaintiff puts much weight on his allegation that "his life had been threatened during the interrogation *and throughout the prosecution*." (TAC, ¶185, emphasis added). But, the only allegation of any post-interrogation "threat" is that in August 2006:

> Jerry's counsel, Keith Grant, was intimidated by Defendant Mermel.
> Grant told Jerry, "It is not safe for you to testify at the suppression hearing."

(TAC ¶157.) This conclusory allegation, however, does not plausibly establish a claim for relief under equitable estoppel. Plaintiff does not allege that his life was threatened by Mermel; all he alleges is that his attorney Grant was "intimidated," but nowhere does Plaintiff allege in what way Grant was intimidated, how Mermel caused that intimidation, or that the intimidation was intended to keep Plaintiff from filing a lawsuit. Moreover, even if Grant and Plaintiff were intimidated at the 2006 suppression hearing, Plaintiff fails to allege how that intimidation kept him from filing a lawsuit after the hearing ended and before he was released in 2010.[5]

---

[5] In *McCauley,* the Seventh Circuit stated that "making the plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." __ F.3d __, 2011 WL 4975644 at *4. This Court's likely experience and common sense is that if any Defendant had threatened his or Plaintiff's safety, Grant would have reported that threat to the judge.

### 2.    Plaintiff's equitable estoppel claim fails under federal case law.

*Shropshear* itself demonstrates why Plaintiff's equitable estoppel claim fails.  There, plaintiff claimed public officials demolished his home in violation of due process, and he sued them almost three years after the demolition, though he "waited more than a year to inquire whether his lawyer had filed suit and another five months after that to file suit himself." *Id*. at 594-95.  The district court dismissed the case as time-barred.  *Id*. at 494.  Affirming, the Seventh Circuit rejected the equitable estoppel claim for two reasons.  First, "the alleged misconduct that caused [Shropshear's] delay in suing was not committed by the public officials whose alleged violation of the Constitution gave rise to his suit," *id*. at 498; though Shropshear also named his lawyer and another private entity that delayed his suit as additional defendants, "it would be bootstrapping to allow the limitations on the defense of equitable estoppel to be circumvented in such a way." *Id*.  Second, "once the obstacles strewn by the defendant to the plaintiff's suing have been cleared away," plaintiff must exercise due diligence in bringing a lawsuit, which "Shropshear did not." *Id.* at 599.

Like the plaintiff in *Shropshear*, Plaintiff's attempt to plead equitable estoppel must fail because his allegations do not plausibly state what each Defendant did to keep Plaintiff from suing in time, and especially because Plaintiff has not plausibly demonstrated that he used (or could not use) due diligence once the threats to his life in the interrogation room ended in 2005.

Plaintiff relies heavily on *Cook v. City of Chicago,* 2008 WL 1883437 (N.D. IL April 25, 2008), which he claims is "directly analogous."  (Pl. Resp., Doc. #137, pp. 6-9.)  In fact, *Cook* is instructively distinguishable.  In *Cook*, the court found equitable estoppel applied because the plaintiff alleged the defendant officer, as well as an investigator, made specific threats that if plaintiff complained about the treatment he received from the officer, plaintiff would be fired, have drugs planted on him, and go to jail.  *Id.* at **1, 2.  The City was also equitably estopped

because the court found plaintiff had plausibly pleaded that the officer's and investigator's threats were the actions of the City itself under *Monell v. Dep't. of Social Services of the City of New York*, 436 U.S. 658 (1978). Unlike the plaintiff in *Cook*, Plaintiff here has not alleged that at any time during or after the interrogation, any Defendant made any threat to retaliate if Plaintiff ever brought a lawsuit or otherwise complained. *Cook* is thus factually inapposite, and demonstrates why Plaintiff has failed to plead equitable estoppel. *See also, Reyes,* 585 F. Supp. 2d at 1015 (rejecting equitable estoppel claim because "[u]nlike in *Cook*, here there are no allegations describing any steps taken by defendants after the initial incident that prevented plaintiffs from filing a lawsuit.")

Directly on point to this case is *Ramirez v. City of Chicago*, 2009 WL 1904416 (N.D. IL July 1, 2009). There, plaintiff sued prosecutors and some of the same police officers who were named as defendants in *Cook*, and he sought to excuse his untimely federal claims by arguing a variety of theories, including equitable estoppel; as Plaintiff does here, he alleged the police officers had "unique power over individuals, including the power to abuse their authority," and as a result he was prevented from filing his lawsuit until the officers were indicted and "he no longer feared future torment." *Id*. at *5. Also as here, plaintiff contended *Cook* was "virtually identical," but the court distinguished *Cook* and rejected plaintiff's claim of equitable estoppel.[6]

In *Ramirez*, the court found that plaintiff "has not included any allegations in his amended complaint or in his answer to suggest that Defendants ever made any contact with Ramirez after the day of the arrest or that any Defendants ever made any threat expressly or impliedly to Ramirez to discourage him from bringing the claims in the instant action." *Id*. Thus, "unlike in *Cook,* Ramirez's allegations do not suggest that Defendant Officers or any of

---

[6] In granting the motion to dismiss on statute of limitations grounds, the *Ramirez* court rejected plaintiff's arguments that Rule 12(b)(6) was inapplicable, and also found that the untimely claims were not saved by allegations of equitable tolling and fraudulent concealment. Id. at **3, 4. As with equitable estoppel, the *Ramirez* court's analysis on these issues is equally applicable in this case.

Defendants made any threats to Ramirez to discourage him from bringing complaints about the police action. . . . Ramirez's allegations do not suggest any threats of retribution by Defendants if Ramirez chose to bring the instant claims." *Id.* at *6. The court concluded Ramirez had no "reasonable basis to feel inhibited" in bringing his Section 1983 claims, which therefore were untimely. *Id.* at *5.

As did the plaintiff in *Ramirez*, Plaintiff here invokes equitable estoppel by asserting that "no reasonable person would challenge a group with such unchecked power and authority until his safety was assured and he was free from their control." (Pl. Resp., Doc. #137, p. 9). Nothing in Plaintiff's complaint, however, supports this bold assertion; he alleges no facts either that Defendants had "unchecked power and authority," or that no reasonable person in jail under circumstances like Plaintiff's would sue the persons responsible for his arrest and prosecution. To the contrary, this Court's experience and common sense undoubtedly confirm that incarcerated plaintiffs, with or without the help of attorneys, regularly (and timely) bring lawsuits against the officers who arrest them, the lawyers who prosecute them, and the correctional officials who house them.

As noted by the Defendants (Def. Joint Memo, Doc. #125, p. 17), to excuse Plaintiff's untimely filing here would too easily open the floodgates to others who would also claim "fear of reprisal" to justify their late filings. As stated by the court in *Ramirez*, plaintiff:

> Failed to point to any precedent that holds that a general fear of police reprisal is sufficient to equitably toll claims brought against police officers for misconduct. In fact, if that were true, all any plaintiff bringing a Section 1983 claim against law enforcement would ever have to do to successfully bring an untimely claim would be to assert a generalized fear of reprisal.

2009 WL 1904416 at *5.

For all these reasons, and as explained in Defendants' opening memorandum, Plaintiff cannot save his untimely federal claims with his implausibly-pleaded claim of equitable estoppel.

## V.    PLAINTIFF'S UNTIMELY FEDERAL CLAIMS ARE NOT SAVED BY PRINCIPLES OF EQUITABLE TOLLING.

Plaintiff's Response also argues that his untimely federal claims are excused because he did not learn until his release in 2010 that case law he was relying on for not bringing his lawsuit earlier had been overruled in 2007.  These equitable tolling arguments are even more implausible than the arguments Plaintiff made for equitable estoppel; they are without support in either the Third Amended Complaint or the law, and they do not save his untimely claims.

### A.    Plaintiff's Implausibility Arguments Are Contradicted By The Complaint.

The central assertion of Plaintiff's equitable tolling argument is that he did not bring his claims until he was released in 2010 because (1) until then, he believed his claims could not have been brought under the principles of *Heck v. Humphrey*, 512 U.S. 477 (1994), as expressed in *Washington v. Summerville,* 127 F.3d 552 (7th Cir. 1997) and *Wiley v. City of Chicago,* 361 F.3d 994 (7th Cir. 2004), and (2) he was prevented from learning that those cases had been overruled by *Wallace v. Kato*, 549 U.S. 384 (2007).  (Pl. Resp., Doc. #137, pp. 9-13).[7]

Plaintiff's equitable tolling arguments are not just implausible; they are absurd.  Plaintiff fails *Twombley* and *Iqbal* standards of plausibility because he does not "present a story that holds together" – indeed, Plaintiff's story defies both common sense and his own allegations.  In his brief, Plaintiff asserts his "reliance on *Summerville* and *Wiley* was appropriate" (Pl. Resp., Doc. #137, p. 12), but nowhere in his complaint does Plaintiff actually allege he did not file his

---

[7] As an initial matter, this Court need not accept Plaintiff's conclusory allegations that he could not file a lawsuit until after *Wallace* was decided.  During the same time period Plaintiff was arrested and jailed, other plaintiffs were bringing federal claims alleging their confessions were coerced even though their cases had not yet been resolved favorably.  For instance, in *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010), plaintiff was arrested and charged in October 2004 with the murder of his young daughter, and he claimed his confession was coerced by actions similar to those alleged here; further, the charges were dropped and he was released from jail in June 2005, the day after test results showed that his DNA did not match DNA from the crime scene.  *Id.* at 827-32.  Nonetheless, the jailed plaintiff in *Fox* (represented by Plaintiff's counsel here) brought a lawsuit in November 2004, which was then stayed until his criminal case was resolved.  *See Fox*, 04 C 7309 (N.D. IL), Dkt. Nos. 1-22.

lawsuit earlier because of his reliance on case law. Even more telling, while Plaintiff's brief would have this Court believe he did not file suit earlier because he relied on the complex *Heck* principles expressed in *Wiley* and *Summerville*, Plaintiff's Third Amended Complaint alleges his "formal education ended after the seventh grade" and his "vocabulary and understanding of the meaning of words was at the seventh grade level." (TAC ¶71.) Nor can Plaintiff plausibly claim he understood and relied on *Wiley* and *Summerville,* when he conversely alleges his seventh grade education kept him from understanding a *Miranda* waiver form he was "tricked into signing." (TAC ¶79.) Furthermore, Plaintiff cannot argue his understanding of *Wiley* and *Summerville* came from a lawyer, because Plaintiff asserts he was not allowed to see any lawyers with regard to his civil claim. (Pl. Resp., Doc. #137, pp. 11-12).[8] Finally, Plaintiff's equitable tolling claim is contradicted by his equitable estoppel claim; in the latter he argues he was too afraid to file a lawsuit, while in the former he argues *Wiley* and *Summerville*, not fear, prevented him from bringing a lawsuit.

### B. Plaintiff's Arguments Are Contradicted by the Law.

Plaintiff agrees with Defendants that Illinois controls the issue of equitable tolling. (Pl. Resp., Doc. #137, p. 10).[9] Plaintiff also agrees that equitable tolling suspends the limitations period only if the defendant has "actively misled the plaintiff" or "if the plaintiff has been prevented from asserting his or her rights in some extraordinary way." (*Id.*, citing *Clay v. Kuhl,* 727 N.E.2d 217, 223 (Ill. 2000)). Plaintiff ignores, however, that Illinois law has defined

---

[8] Plaintiff's brief claims that "Defendants kept Jerry in isolation in order to 'keep him from lawyers' who could inform him, among other things, that the law had changed (TAC, ¶184)." (Pl. Resp., Doc. #137, p. 12.) In fact, Paragraph 184 nowhere alleges "Defendants" did anything regarding Plaintiff's conditions of confinement; as his brief acknowledges, it was "jailors" who controlled the jail. (Pl. Resp., Doc. #137, p. 13; *see also,* Def. Joint Memo, Doc. #125, p. 28) (explaining that Plaintiff's "access to court" claim fails because of conclusory and formulaic allegations).

[9] Plaintiff, however, does not address the fact that the Seventh Circuit, this Court, and Illinois courts have all observed it is still unclear whether Illinois recognizes equitable tolling as a doctrine that is distinct from equitable estoppel. (*See* Def. Joint Memo, Doc. #125, p. 16).

"extraordinary barriers" only to "include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." (Def. Joint Memo, Doc. #125, p. 16). Plaintiff cites no Illinois cases for his bald assertion that "*Wallace* was an 'extraordinary circumstance' that equitably tolled his §1983 claims until February 21, 2007."[10] Furthermore, "reasonable diligence" is required for equitable tolling (*Griffin v. Willoughby*, 867 N.E.2d 1007, 1016 (4th Dist. 2006)), and Plaintiff has neither pleaded nor explained how he exercised due diligence either before or after *Wallace*. For all these reasons, Plaintiff cannot rely on equitable tolling to save his untimely federal claims.

## VI.  PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM (COUNT I) SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE.

In their opening memorandum, Defendants explained that Count I should be dismissed because it appeared duplicative of Counts II and/or III. (Def. Joint Memo, Doc. #125, pp. 21-22). In response, Plaintiff now clarifies that Count I is a procedural due process claim, and therefore does not duplicate the substantive due process claim in Count II. (Pl. Resp., Doc. #137, p. 24.) Plaintiff fails, however, to distinguish his procedural due process claim in Count I from his procedural due process claim in Count III, and Count I should therefore still be dismissed as duplicative.

"[T]he plaintiff must identify the precise constitutional right or rights relied on." *Tully v. Barada*, 599 F.3d 591, 595 (7th Cir. 2010). Count I is a procedural due process claim titled "Coerced Confession: Fourteenth Amendment." Count III is titled "Procedural Due Process: 5th

_____

[10] The only cases Plaintiff offers in support are *Hargroves v. City of New York,* 694 F. Supp. 2d 198 (E.D. N.Y. 2010) and *Kucharski v. Leveille*, 526 F. Supp. 2d 768 (E.D. Mich. 2007). Not only do these cases not involve Illinois law, they are also highly distinguishable. For instance, in both cases it was clear the plaintiffs had actually relied on pre-*Wallace* law in not suing prior to their convictions being reversed. Also, both plaintiffs had sued after their convictions were reversed but before *Wallace* was decided, so their lawsuits had been timely until *Wallace* would have made them untimely. Those facts led the *Hargroves* and *Kucharski* courts to find equitable tolling, but there are no similar facts here.

and 14th Amendments," and includes a Fourteenth Amendment procedural due process claim for his coerced confession that is "distinct" from his Fifth Amendment claim. (Pl. Resp., Doc. #137, p. 25). Thus, as explained in Defendants' opening memorandum, the Fourteenth Amendment procedural due process "coerced confession" claim in Count I appears identical to the Fourteenth Amendment procedural due process "coerced confession" claim in Count III, and Plaintiff does not explain otherwise. Thus, Count I duplicates Count III and should be dismissed.

## VII. THE AVAILABILITY OF EXPLICIT CONSTITUTIONAL AND STATE LAW REMEDIES PRECLUDES PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM (COUNT II).

Defendants' opening memorandum (Def. Joint Memo, Doc. #125, pp. 22-23) explained the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision-making in this uncharted are scarce and open-ended," and that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 271-72, 273 (1994) (citation omitted). Defendants also cited *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010), to demonstrate that "the Supreme Court has long counseled against shoehorning into the more generalized protections of the Fourteenth Amendment claims for which another amendment provides more specific protection." Finally, Defendants cited *Lanza v. City of Chicago*, 2009 WL 1543680 (N.D. IL June 2, 2009) to show how *Albright* was applied in an analogous case to bar a substantive due process claim. (Def. Joint Memo, Doc. #125, p. 23).

In response, Plaintiff does not cite or discuss either *Albright* or *Fox*, and instead asserts that "no other constitutional amendment provides adequate relief." (Pl. Resp., Doc. #137, pp. 26, 28), Plaintiff argues his substantive due process claim survives because it is distinct from his

separate Fifth Amendment claim, relying on *Scott v. City of Chicago,* 2010 WL 1433313 (N.D. IL April 8, 2010), which Plaintiff argues is more analogous to this case than *Lanza*.

To the contrary, *Lanza* is more persuasive and consistent with *Albright* than is *Scott*. Even if this Court disagrees, however, Count II must still be dismissed because it is precluded by Plaintiff's procedural due process "coerced confession" claim in Counts I and III. Plaintiff does not explain how the identical procedural due process claims in Counts I and III are distinct from Count II's substantive due process claim, nor does he explain why those explicit procedural due process claims do not provide adequate protection and relief. Instead, Plaintiff asks this Court to create a new substantive due process claim, when the Supreme Court and the Seventh Circuit have contrarily held "the scope of substantive due process is very limited." *See, e.g., Tun v. Whitticker,* 398 F.3d 899, 902-03 (7th Cir. 2005) (recognizing that the court has declined to impose substantive due process liability "in a number of situations in which we find the officials' conduct abhorrent").

Defendants also explained in their opening memorandum that another reason Count II should be dismissed is because *Fox* held "a plaintiff cannot invoke the substantive due process clause where state laws provide an adequate post-deprivation remedy for the complained-of conduct," and dismissed a substantive due process claim where it was "nothing more than a hybrid" of federal constitutional law and state law malicious prosecution claims. (Def. Joint Memo, Doc. #125, pp. 23-24). Plaintiff again does not expressly cite or discuss *Fox*, which is dispositive on this point. Instead, Plaintiff implicitly tries to distinguish *Fox* by arguing that here, he pleads an Illinois law claim for IIED in addition to malicious prosecution, thereby creating a different hybrid than the kind rejected in *Fox*. (Pl. Resp., Doc. #137, pp. 30-32). Plaintiff offers no case law support for his argument, and his brief makes clear there is no meaningful distinction between his malicious prosecution and IIED claims, which he admits are

"parallel." (Pl. Resp., Doc. #137, p. 22). *Fox* refused to recognize a "hybrid" substantive due process claim incorporating federal constitutional law and a state law malicious prosecution claim; in light of *Albright,* it is highly improbable the Seventh Circuit would create a hybrid substantive due process claim incorporating federal constitutional law and Plaintiff's parallel IIED claim, which "incorporates all the allegations constituting his malicious prosecution claim." (Pl. Resp., Doc. #137, p. 21). Count II should therefore be dismissed.

## VIII. PLAINTIFF'S FIFTH AMENDMENT CLAIM (COUNT III) SHOULD BE DISMISSED BECAUSE DEFENDANTS HAVE QUALIFIED IMMUNITY.

Defendants explained in their opening memorandum that they are entitled to qualified immunity on Plaintiff's Fifth Amendment claim because in May 2005, the failure to give him a *Miranda* warning, and the use of his non-*Mirandized* confession in pre-trial proceedings, were not clearly established as the bases for a constitutional violation compensable by damages under Section 1983 – such a claim was not clearly established until *Sornberger v. City of Knoxville, Illinois,* 434 F.3d 1006 (7th Cir. 2006). (Def. Joint Reply, Doc. #125, pp. 24-28).

Plaintiff responds that the Supreme Court "has long found the use of a coerced confession against a defendant at trial to be a constitutional violation." (Pl. Resp., Doc. #137, p. 34). While that may be true, and while such violations might have resulted in the prophylactic exclusion of evidence obtained in violation of *Miranda*, it was not until *Chavez v. Martinez*, 538 U.S. 760, 768 (2003) that the Supreme Court held a violation of the Fifth Amendment provided a limited basis for civil liability under Section 1983, although "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." Further, it was not until *Sornberger* that the Seventh Circuit ruled such "use" was met by introducing the compelled statements in a pre-trial proceeding. See *Hoeft v. Anderson,* 2010 WL 2720002 at *5 (W.D. Wis. July 6, 2010).

Plaintiff tries to distinguish *Hoeft* by arguing Defendants "intended" to use his compelled statement at trial, thereby eliminating the need to examine whether and when the statement was actually used. (Pl. Resp., Doc. #137, pp. 33-37, relying on *Stoot v. City of Everett,* 582 F.3d 910 (9th Cir. 2009)). Plaintiff's reliance on *Stoot* is unavailing: Beyond the fact that *Stoot* is non-binding precedent for this Court, the affirmance of *Hoeft*'s dismissal indicates the Seventh Circuit would not agree with *Stoot*. Although the Seventh Circuit did not reach the qualified immunity issue in *Hoeft*, it ruled there was no constitutional violation because the non-*Mirandized* statement was never introduced into evidence at any court proceeding, thereby suggesting that the question of whether there was an *intention* to use the statement is irrelevant. *Hoeft v. Anderson*, 409 Fed. Appx. 15, 2011 195538 at *2 (C.A.7 (Wis.)) (*per curiam*, non-precedential decision).

### IX. PLAINTIFF'S ACCESS TO COURTS CLAIM (COUNT X) FAILS TO STATE A CLAIM; ALTERNATIVELY, THE INDIVIDUAL DEFENDANTS HAVE QUALIFIED IMMUNITY.

#### A. The Formulaic Recitation of a Conspiracy Among the Law Enforcement Defendants to Deny Plaintiff Access to the Courts is Insufficient to State a Claim Upon Which Relief May be Granted.

In responding to the argument of the Law Enforcement Defendants that the conspiracy allegations are insufficient under *Iqbal* and *Twombly*, Plaintiff mischaracterizes the argument as one attacking "group pleading". (Pl. Resp., Doc. #137, p. 21). While there may be group pleading, the attack is more fundamental. It is not that the Plaintiff has failed to identify which Defendant did what, but rather has failed to supply any "how" or "what" any Defendant did to deny the Plaintiff a lawyer or access to a law library that affected his ability to file a civil rights claim while he was in the custody of the Lake County Sheriff at the Lake County Jail. (Def. Joint Memo, Doc. #125, p. 28). Simply stating that because the Defendants interrogated the Plaintiff that "the Defendants clearly led to Jerry being held in isolation, which in turn denied

him access to the [legal materials]" (Pl. Resp., Doc. #137, p. 21) tells us nothing. "The degree of specificity required [by *Twombly* and *Iqbal*] is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" (*McCauley v. City of Chicago*, ___ F.3d ___, 2011 WL 4975644 at *4 (7th Cir. 2011)). "The required level of factual specificity rises with the complexity of the claim." (*Id.*)

Where a loan applicant maintained that she was denied a loan based upon race by under-valuing her home, a claim was stated by simply saying that. (*McCauley*, at *5). However, a great deal more specificity is required when one is alleging a "vast conspiracy among members of several different law enforcement agencies to maliciously prosecute him for exercising his constitutional rights." (*McCauley, Id.*) As a review of the recent Seventh Circuit decision in *McCauley* will bear out, this case falls in the latter category and the allegations amount to nothing more than the "formulaic recitation" condemned in both *Iqbal* and *Twombly*.

### B. The Plaintiff Fails to Address the Substantive Argument that Only Certain Types of Claims Can Form the Basis of a Free Access Claim.

As a second basis for requesting that Count X be dismissed, these Defendants, relying upon the lead case, *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174 (1996), argued that civil rights suits unrelated to current conditions of confinement are not the type of "ancillary claims upon which to base a denial of access claim"; and only where denial of access to a law library has impacted a claim challenging current conditions of confinement can a claim be stated. (Def. Memo, Doc. #125, pp. 29-30). The Plaintiff ignores this argument and simply responds by saying that he has sufficiently alleged a "quantum of detriment" (Pl. Memo in Opp., Doc. #136, p. 22).

Ignored by the Plaintiff is a Seventh Circuit decision upon which the Defendants rely, *Lehn v. Holmes*, 364 F.3d 862 (7th Cir. 2004) (Def. Joint Memo, Doc. #125, pp. 29-30) where the Court, referring to *Lewis* said that "the Supreme Court made clear that the right of access to the courts is limited to certain types of claims." (*Id.*, 364 F.3d at 869). None of the cases upon which the Plaintiff relies (Pl. Resp., Doc. #137, p. 22) addressed this aspect of stating a right of access claim. In *Jackson*, Judge Holderman cited *Lehn* but did not acknowledge the limiting language quoted above but dismissed the claim for failing to identify the causes of action that were affected. The *Ortiz* Court dismissed for failure to state a claim so there was no need to discuss the types of claims upon which the cause of action could be based although, in fact, a conditions of confinement claim – practice of religion – was involved. Nor was the issue broached in *Bridges* and the action was dismissed for failure to state a claim because there was no underlying claim that implicated the plaintiff's access (557 at 553-54). The Court did, however, refer to *Lehn*, but not the limiting language referred to above. And in *Parker*, while a conditions of confinement claim was being advanced, the case was dismissed because the claim was frivolous. Plaintiff's reference to the Supreme Court decision in *Christopher v. Harbury* is of no assistance, as the case was dismissed for failing to identify the underlying claim that was compromised.

Defendants do not argue that the Plaintiff has failed to identify his derivative or ancillary claims or that he has not adequately stated that his ability to bring those claims was impacted. Rather, the argument is that the claims identified, his ability to bring the other claims which are the subject of this litigation, are not the type of ancillary claims upon which this theory of liability can be maintained. (Def. Joint Memo, Doc. #125, p. 30). The argument is legally correct and not addressed for obvious reasons.

In response to Defendants' claim of entitlement to qualified immunity on Count X, the Plaintiff states that the actions of these Defendants during the interrogation negate immunity. (Pl. Resp., Doc. #137, p. 22). But in connection with immunity on the access claim, the focus is on the acts, albeit unidentified, that resulted in the Plaintiff being denied the necessary legal assistance.

### X. THE LAW ENFORCEMENT DEFENDANTS HAVE ARGUED THAT COUNT VI IS NOT ACTIONABLE.

In a footnote, the Plaintiff maintains that the Defendants have not moved to dismiss Count VI, the federal malicious prosecution claim (Pl. Resp., Doc. #137, p. 21, n. 1). Because the Plaintiff pled the cause of action only for preservation for appellate review and acknowledged that it did not state a claim under current Seventh Circuit case law, these Defendants felt that it was necessary to simply address the argument briefly in one sentence and in a footnote. (Def. Joint Memo, Doc. #125, p. 2, n. 1).

## CONCLUSION

The Defendants request that the federal claims, Counts I through V and the state claim of Count VII be dismissed on the basis that those claims are time-barred by the applicable statute of limitations. The Defendants also request that Count I be dismissed as duplicative, Count II be dismissed because it is precluded by other claims, the Fifth Amendment claim alleged in Count III be dismissed on the basis of qualified immunity. Count VI should be dismissed for failure to state a claim, and Count X should be dismissed for failure to state a claim or on the basis of qualified immunity.

**Dated: November 17, 2011**

Attorneys for Defendants County of Lake, Michael Waller, Michael Mermel and Jeff Pavletic

One of the Attorneys for Defendant Kevin Harris

/s/ James Gus Sotos
James Gus Sotos
    EMAIL: jsotos@jsotoslaw.com

/s/ William W. Kurnik
William W. Kurnik, I.D. #01550632
    EMAIL: bkurnik@khkklaw.com

/s/ Jeffrey Neil Given
Jeffrey Neil Given
    EMAIL: jgiven@jsotoslaw.com

James G. Sotos & Associates, Ltd.
550 East Devon Street, Suite 150
Itasca, Illinois 60143
Telephone:  630-735-3300
Facsimile:  630-773-0980

Knight, Hoppe, Kurnik & Knight, Ltd.
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:    847-261-0700
Facsimile:    847-261-0714

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, one of the attorneys of record herein, hereby certifies that on November 17, 2011, the foregoing **JOINT REPLY MEMORANDUM OF ALL LAW ENFORCEMENT DEFENDANTS IN SUPPORT OF THEIR MOTIONS TO DISMISS CERTAIN COUNTS OF THE THIRD AMENDED COMPLAINT OF THE PLAINTIFF** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification of such filing to the following:

**SEE ATTACHED**
**ELECTRONIC FILING SERVICE LIST**

/s/ William W. Kurnik
WILLIAM W. KURNIK, Attorney I.D. #01550632

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for Defendant KEVIN HARRIS
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:      847-261-0700
Facsimile:      847-261-0714
E-Mail:         BKurnik@khkklaw.com

6156 MTD TAC JOINT REPLY

## ELECTRONIC FILING SERVICE LIST

### (August 25, 2011)

**William Charles Barasha,** wbarasha@judgeltd.com, cbednarek@judgeltd.com, jkoop@judgeltd.com

**Julie Ann Hofherr Bruch,** jbruch@okgc.com,docket@okgc.com

**Cary James Collins,** cjcollins4@aol.com

**Thomas George DiCianni,** tdicianni@ancelglink.com, dhincks@ancelglink.com

**Elizabeth A. Ekl,** eekl@jsotoslaw.com, bazari@jsotoslaw.com, jkeith@hscblaw.com, ckinowski@jsotoslaw.com

**Ellen Kornichuk Emery,** eemery@ancelglink.com, jhicks@ancelglink.com

**Pedro Fregoso, Jr.,** pfregoso@ancelglink.com, jhicks@ancelglink.com

**Jeffrey Neil Given,** jgiven@jsotoslaw.com, jkeith@jsotoslaw.com, dburkhart@jsotoslaw.com

**Amanda Marie Hillmann,** ahillmann@khkklaw.com

**Benjamin Matthew Jacobi,** bjacobi@okgc.com, docket@okgc.com

**Douglas Henry Johnson,** boblo6466@aol.com

**Clifford Gary Kosoff,** ckosoff@okgc.com, docket@okgc.com

**Michael E. Kujawa,** mkujawa@judgeltd.com, cbednarek@judgeltd.com, jkoop@judgeltd.com

**William W. Kurnik,** bkurnik@khkklaw.com

**Anne Zellner Nolte,** anne@kathleenzellner.com

**Thomas Steven Radja, Jr.** radjat2@aol.com, radja@tsr-law.com

**James Gus Sotos,** jsotos@jsotoslaw.com, ckinowski@jsotoslaw.com

**Kathleen T. Zellner,** kathleenzellner@gmail.com

6156 MTD TAC JOINT REPLY